**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

ENERGY AND POLICY INSTITUTE,

     Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY,

     Defendant.

No. 3:22-cv-00220-TAV-DCP

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Chris Irwin
BPR No. 025478

Zehava Robbins
*Pro Hac Vice*
D.C. Bar No. 242265

Allison Kole
*Pro Hac Vice*
D.C. Bar No. 1031724

*Attorneys for Plaintiff*

May 16, 2023

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

STANDARD OF REVIEW ........................................................................................ 5

ARGUMENT ............................................................................................................ 6

   I.    TVA Improperly Withheld Records Under Exemption 5. ................................ 7

      A.      TVA Improperly Withheld Records Under the Attorney-Client Privilege. ............... 8

      B.      TVA Improperly Withheld Records Under the Deliberative Process Privilege........ 10

      C.      TVA Improperly Redacted the Insurance Contract Under the Government Confidential Commercial Information Privilege. .................................................... 11

      D.      TVA Improperly Applied the Required Foreseeable-Harm Analysis in Deciding to Withhold Records ................................................................................................ 14

   II.    TVA Unlawfully Withheld Records Pursuant to Exemption 4. ....................... 15

      A.      Information Withheld by TVA Is Not Commercial or Financial in Nature. ............ 16

      B.      TVA Has Not Shown That All Withheld Material Was Obtained from A Person. .. 19

      C.      TVA Erroneously Withheld Information That Is Not Confidential. ........................ 21

      D.      TVA Must Release Records Absent Evidence of Foreseeable Harm from Disclosure. 23

   III.    TVA Has Failed to Demonstrate Any Privacy Interest in Business Email Addresses.. 24

   IV.    TVA Failed to Reasonably Segregate and Provide Non-Exempt Portions of Records. 24

      CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Akron Standard Div. of Eagle-Picher Industries, Inc. v. Donovan*, 780 F.2d 568 (6th Cir. 1986) 6, 8

*Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978 ................................17

*Am. Civil Liberties Union of Mich. v. Fed. Bureau of Investigation*, 734 F.3d 460 (6th Cir. 2013) .................................................................................................................................................6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................................................5

*Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392 (D.C. Cir. 1980) ..............19

*Besson v. U.S. Dep't of Commerce*, 480 F. Supp. 3d 105 (D.D.C. 2020) ........................17, 19, 24

*Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262 (S.D.N.Y. 2009) ...............................................................................................................................................12

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143 (2d Cir. 2010) ......19

*Cause of Action Inst. v. Export-Import Bank of U.S.*, No. 19-1915, 2022 WL 252028 (D.D.C. Jan. 27, 2022) ....................................................................................................................20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................................................5

*Cincinnati Enquirer v. Dep't of Justice*, 45 F.4th 929 (6th Cir. 2022) ....................................6, 25

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 58 F.4th 1255 (D.C. Cir. 2023)................................................................................................................17, 18, 21

*Climate Investigations Ctr. v. U.S. Dep't of Energy*, 331 F. Supp. 3d 1 (D.D.C. 2018)..............18

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144 (D.C. Cir. 2001).....16, 22

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109 (D.D.C. 2015) ...................19

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90 (D.D.C. 2019)..............................................................................................................7, 14, 16, 21

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976)........................................................................16

*Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989)..................2, 24

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001)..............passim

*Ecological Rights Found. v. EPA*, 541 F. Supp. 3d 34 (D.D.C. 2021) ........................................16

*EEOC v. Burlington Northern*, 615 F. Supp. 2d 717 (W.D. Tenn. 2009)....................................11

*Falcone v. Internal Revenue Serv.*, 479 F. Supp. 985 (E.D. Mich. 1979)....................................9

*Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340 (1979) ...........................12

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019)........................................16, 21

*Getman v. NLRB*, 450 F.2d 670 (D.C. Cir. 1971) ................................................................17, 18

*Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34 (D.D.C. 2019)..................................................................................................................................15

*In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 83 (D.D.C. 2008) ..........................20

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93 (D.D.C. 2019) .................14

*Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252 (D.D.C. 2004)........................25

*Klepper v. First Am. Bank*, 916 F.2d 337 (6th Cir. 1990).............................................................5

*Lucaj v. Fed. Bureau of Investigation,* 852 F.3d 541 (6th Cir. 2017 ........................................7, 11

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020)...............................14, 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, (1986) ...................................5

*Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)...................8

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) .........................................................................7, 21

*Nat. Res. Def. Council, Inc., v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384 (S.D.N.Y. 2014)......12

*Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004).................................................2

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) .................................17

*Nat'l Bus. Aviation Ass'n v. FAA*, 686 F. Supp. 2d 80, 86-87 (D.D.C. 2010) .............................17

*Niemeier v. Watergate Special Prosecution Force*, 565 F.2d 967 (7th Cir. 1977) .......................9

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) .........................................................8, 9, 10

*Norwood v. FAA*, 580 F. Supp. 994 (W.D. Tenn. 1984) .......................................................8, 25

*Pub. Citizen Health Research Group v. Food & Drug Admin.*, 185 F.3d 898 (D.C. Cir. 1999) ...6, 15, 16, 19

*Pub. Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280 (D.C. Cir. 1983)16, 17, 19

*Pub. Citizen v. U.S. Dep't of Health & Human Serv.*, 975 F. Supp. 2d 81, 105–06 (D.D.C. 2013) .........................................................................................................................................17, 18

*Renewable Fuels Ass'n v. EPA*, 519 F. Supp. 3d 1 (D.D.C. 2021) .............................................22

*Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 3 F.4th 350 (D.C. Cir. 2021).........................................................................................................................14, 23

*Roth v. U.S. Dep't of Justice*, 642 F.3d 1161 (D.C. Cir. 2011) .................................................6

*Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534 (6th Cir. 2000) ........................................passim

*S. Alliance for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60 (D.D.C. 2012) ..........20

*S. Envtl. Law Ctr. v. Tenn. Valley Auth.*, No. 3:22-CV-00108-DCLC-DCP, 2023 WL 2387360 (E.D. Tenn. Mar. 7, 2023) ...............................................................................17, 20, 21

*Schell v. U.S. Dep't of Health & Human Serv.*, 843 F.2d 933 (6th Cir. 1988) ............................11

*See Brown v. Perez*, 835 F.3d 1223 (10th Cir. 2016)..............................................................15

*Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231, 234 (2d Cir. 2022) ..................................21, 23

*Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980)........................................................................24

*Taylor Woodrow Int'l v. U.S. Dep't of Navy*, 1989 WL 1095561 (W.D. Wash. Apr. 5, 1989)....12

*TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2022 WL 2383543 (S.D. Ohio July 1, 2022)..................................................................................................................................9

*Trentadue v. Integrity Comm.*, 501 F.3d 1215 (10th Cir. 2007)...............................................11

*U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136 (1989).....................................................15

*U.S. Fish and Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) .................................10

*United Tech. Corp. v. DOD*, 601 F.3d 557 (D.C. Cir. 2010) ....................................................23

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973 ....................................................................6

## STATUTES

5 U.S.C. § 552(a)(4)(B) ..........................................................................................................5, 6

5 U.S.C. § 552(a)(8)(A) ...........................................................................................................14

5 U.S.C. § 552(a)(8)(A)(i) .....................................................................................................7, 23

5 U.S.C. § 552(b) ....................................................................................................................6, 24

5 U.S.C. § 552(b)(4) ......................................................................................................15, 21, 23

5 U.S.C. § 552(b)(5 ....................................................................................................................7

5 U.S.C. § 552(b)(6) ................................................................................................................24

## OTHER AUTHORITIES

H.R. Rep. No. 114-391 .............................................................................................................23

S. Rep. No. 114-4 ............................................................................................................................23

Sean Reilly, E & E News, "Emails, docs show TVA's ties to fight against federal regs,"
    https://www.eenews.net/articles/emails-docs-show-tvas-ties-to-fight-against-federal-regs/
    (Sept. 13, 2021) .........................................................................................................................1

Zack Colman, Politico, "Industry group tied to EPA air chief dissolves,"
    https://www.politico.com/story/2019/05/10/epa-air-chief-3238271 (May 10, 2019). ................1

**RULES**

Fed. R. Civ. P. 56(a) ......................................................................................................................5

## INTRODUCTION

From 1987 to 2019, Defendant Tennessee Valley Authority ("TVA") was a member of the Utility Air Regulatory Group ("UARG") run by the law firm Hunton Andrews Kurth ("Hunton"). UARG included electric utilities and trade groups and engaged in litigation, advocacy, and regulatory knowledge sharing with its members. *See* Amend. Answer, ¶¶ 15-16, ECF No. 21 at 2. According to TVA, UARG was "established to advance the interests of its members at the federal level in air quality regulation matters." *Id.* ¶ 5. Starting in the late 1970s, UARG aimed to shape federal environmental policy and sued the government to block the rollout of Clean Air Act rules.[1] TVA previously disclosed that it paid $7.3 million to UARG between 1987 and 2001, *id.* at ¶¶ 5-6, 15-16, but has denied that those funds went to lobbying or litigation efforts.[2] Despite TVA's claims, Plaintiff Energy and Policy Institute ("EPI") found evidence that TVA paid $3.5 million in legal fees to UARG between 2015 and 2018. Decl. of Daniel Tait ¶ 4 (hereinafter "Tait Decl."). UARG disbanded in 2019, Amend. Answer ¶¶ 17-20, but the attorneys who ran the project are now at McGuire Woods leading the Climate Legal Group, which provides similar services, such as Clean Air Act monitoring. *See* Tait Decl. ¶ 8, Exhibit B at 1-3. TVA is a member of the Climate Legal Group. *Id.* TVA is also now a member of the Power Generators Air Coalition ("PGen"), which is connected to McGuire Woods, and a TVA staff member was a founding board member. Tait Decl. ¶ 12, Exhibit C at 5.

---

[1] *See* Zack Colman, Politico, "Industry group tied to EPA air chief dissolves," https://www.politico.com/story/2019/05/10/epa-air-chief-3238271 (May 10, 2019).

[2] Sean Reilly, E&E News, "Emails, docs show TVA's ties to fight against federal regs," https://www.eenews.net/articles/emails-docs-show-tvas-ties-to-fight-against-federal-regs/ (Sept. 13, 2021). In 2017, Congress sent an inquiry to TVA about its involvement with UARG, which former U.S. House Energy and Commerce Committee Chair Frank Pallone, Jr., described as a "litigation group dedicated to defeating public health and welfare regulation." *Id.* (quoting a 2017 Letter of Inquiry to TVA from Energy and Commerce Chair Frank Pallone (D-N.J.)).

1

The public has a right to know what agencies are up to, particularly when there is evidence that they are working with third parties attempting to shape federal policy. EPI asks the court to enforce that right as it is secured within the Freedom of Information Act ("FOIA"). Even if TVA argues that these utility groups are not engaged in lobbying or litigation on its behalf, and therefore payments made and services received should be of no interest to EPI, FOIA gives requesters a right to access records to help citizens check "what the Government is up to." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).

In the present case, TVA has invoked Exemptions 4, 5, and 6 in an impermissibly broad manner and, in doing so, has withheld the very type of information meant to be readily available to the scrutinizing public. Through its first FOIA request, EPI seeks records related to TVA's association with a third party that may increase costs to ratepayers and impact the quality of air regulation. In its second FOIA request, EPI seeks to understand risks to communities around TVA facilities by examining its insurance policy. Tait Decl. ¶ 13. Records requests regarding whether a government agency is working in connection with other utilities to undermine U.S. policy and whether communities are properly protected near TVA facilities are the exact types of inquiries that fulfill the purpose of the Act.

## BACKGROUND

<u>FOIA Request 109</u>

On April 13, 2021, Daniel Tait, a Research and Communications Manager at EPI, sent a FOIA request to TVA seeking copies of electronic records located within TVA's Office of Environment/Environment & Energy Policy relating to McGuire Woods, the Clean Air Act Monitoring Service, and the Climate Legal Group ("FOIA Request 109"). Amend. Answer Exhibit 1, ECF No. 21-1 at 1-2. The request also sought any correspondence, including text

messages, emails, and attachments, between Allison Wood, Aaron Flynn, and/or Makram Jaber of McGuire Woods and any representative of TVA working within the Office of Environment/Environment & Energy Policy. *Id.* at 2. The timeframe for the request was March 1, 2020, through the date of the request.

In response to this FOIA request, EPI received some documents redacted pursuant to Exemptions 4, 5, and 6, while 157 email messages and some attachments were withheld in full under the same exemptions. Amend. Answer Exhibit 3, ECF No. 21-3 at 1. TVA provided only definitions of the exemptions as explanation for the withholdings. *Id.*

EPI appealed this determination on April 7, 2022, pointing out the legally inadequate justifications, the failure to apply the foreseeable-harm standard, the failure to adequately segregate and produce non-exempt material, and the implausibility that the sweeping application of these exemptions could be legally justifiable. ECF No. 21-4 at 2. On appeal, TVA's Vice President of Communications and Public Relations defended the agency's decision to not segregate exempt information for all 157 records withheld in full. ECF No. 21-5 at 1. The determination also claimed that a foreseeable-harm analysis was done but that the "statute does not specifically require TVA to state that it did so." ECF No. 21-5 at 2. The agency declined to provide an index of records and claimed exemptions and provided no additional specific justification for the reasons why material was withheld. ECF No. 21-5 at 1.

On June 23, 2022, EPI filed a complaint for declaratory and injunctive relief, claiming that TVA unlawfully withheld records requested under FOIA by misapplying Exemptions 4, 5, and 6 and the foreseeable-harm standard, neglecting to provide adequate justification for its withholdings, and failing to segregate and provide disclosable portions of records. First Amend. Cmplt., ECF No. 19 at 1.

3

FOIA Request 208

On September 16, 2021, Mr. Tait submitted a FOIA request for a copy of "in-effect" insurance policies for multiple coal-fired power plants ("FOIA Request 208"). ECF No. 21-6 at 3. After discussions with TVA's FOIA officer, Mr. Tait revised his request to seek only the overall liability and operations policy for TVA assets. *Id.* at 1; Tait Decl. ¶ 14. On May 20, 2022, TVA provided a redacted copy of the requested policy, withholding 25 pages in full and releasing 24 pages with redactions. ECF No. 21-8 at 1. The agency claimed redacted terms were confidential commercial information under Exemption 4 and stated that "the redacted information would have the foreseeable harm of placing the submitter at a competitive disadvantage in the commercial insurance market." *Id.* TVA also claimed material was protected under "the government confidential commercial privilege" of Exemption 5 and that "[r]elease of the redacted information would harm TVA's ability to negotiate the best value and lowest feasible cost for TVA ratepayers." *Id.*

On July 11, 2022, EPI filed an administrative appeal challenging the agency's decision to withhold records, the adequacy of its justification, and the segregability and foreseeable-harm analyses. ECF No. 21-9 at 2-4. On August 4, 2022, TVA denied the appeal, stating that the insurance company asserted that material was "confidential commercial and financial information, or otherwise considered competitively sensitive." ECF No. 21-10 at 1-2. TVA also attempted to justify its use of the government confidential commercial information privilege:

> In this case, if the contractual terms of the policy were made public, it could affect the future pricing and placement of coverage in the insurance markets. The pool of insurers is limited due to the highly specialized nature of the coverage, and the release of some of the terms could discourage insurers from underwriting TVA's risk or hinder TVA's ability to obtain favorable terms for the coverage of its assets and operations.

ECF No. 21-10 at 2.

On September 8, 2022, EPI amended its complaint to include TVA's response to FOIA Request 208. ECF No. 19 at 6-7. In light of the Act's strong presumption of disclosure, TVA has not met its burden in justifying the withholding of any of the requested material. *Id*. The agency has also applied Exemptions 4, 5, and 6 too broadly, failed to provide all segregable material, and failed to appropriately apply the foreseeable-harm standard. *Id*.

## STANDARD OF REVIEW

An agency's denial of a FOIA request in whole or in part is reviewed by a district court *de novo*. 5 U.S.C. § 552(a)(4)(B). Generally, on a motion for summary judgment, a moving party is entitled to judgment in its favor if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 601 (1986). If the moving party meets its burden, the nonmoving party must show sufficient evidence to create a genuine issue of material fact in order to prevail. *Celotex*, 477 U.S. at 322; *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

FOIA cases present unusual circumstances, however. Because district courts typically dispose of FOIA cases on summary judgment before discovery is conducted, a plaintiff is put in the "peculiar" position of challenging the agency's application of exemptions without knowing the actual content of the documents. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2000); *see also Am. Civil Liberties Union of Mich. v. Fed. Bureau of Investigation*, 734 F.3d 460,

465 (6th Cir. 2013). Thus, under the FOIA, the agency bears the burden of demonstrating that all withholdings are lawful. 5 U.S.C. § 552(a)(4)(B); *Cincinnati Enquirer v. Dep't of Justice*, 45 F.4th 929, 932 (6th Cir. 2022). This burden does not shift even when the requester files the motion for summary judgment. *Pub. Citizen Health Research Group v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999).

## ARGUMENT

Under the FOIA, an agency may withhold responsive records only if a specific statutory exemption applies. *Akron Standard Div. of Eagle-Picher Industries, Inc. v. Donovan*, 780 F.2d 568, 571 (6th Cir. 1986) (citations omitted); *see also Rugiero*, 257 F.3d at 543 (citing *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001)). These exceptions are to be narrowly construed in accordance with the Act's "dominant objective" of "disclosure, not secrecy." *Klamath*, 532 U.S. at 8. The burden is on the agency to justify the withholding of records under a specific exemption, 5 U.S.C. § 552(a)(4)(B), and the agency must provide a specific, detailed explanation of why the exemption applies. *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011). *See also ACLU of Mich.*, 734 F.3d at 465 (requiring "detailed affidavits and a descriptive index with 'a relatively detailed analysis' of 'manageable segments' of the documents" (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973))).

In addition, an agency must provide "any reasonably segregable portion of a record" that otherwise contains some exempt information. 5 U.S.C. § 552(b). *See also Rugiero*, 257 F.3d at 553 ("[A]n agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure."); *Cincinnati Enquirer*, 45 F.4th at 938. Finally, an agency must consider the foreseeable harm of disclosure. Under the FOIA Improvement Act of 2016, agencies may withhold records "only if the agency reasonably foresees that disclosure

6

would harm an interest protected by an exemption described in [FOIA] subsection (b)." 5 U.S.C. § 552(a)(8)(A)(i). *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (holding that "general explanations" and "boiler plate language" did not satisfy the heightened standard of the foreseeable-harm requirement).

## I. TVA Improperly Withheld Records Under Exemption 5.

TVA has provided no legal basis for its impermissibly broad application of Exemption 5, which specifies that only "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure. 5 U.S.C. § 552(b)(5). Exemption 5 incorporates civil evidentiary privileges, such as the attorney-client privilege, attorney work-product privilege, and the deliberative process privilege. *Rugiero*, 257 F.3d at 550 (citing *Klamath*, 532 U.S. at 8-9). To qualify, however, a record must "satisfy two conditions: (1) its source must be a Government agency, and (2) it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8 (2001); *see also Lucaj v. Fed. Bureau of Investigation,* 852 F.3d 541, 546 (6th Cir. 2017) (rejecting "consultant corollary" argument to expand definition of inter- or intra-agency material to documents sent to foreign government by agency).

Courts have typically found that the first condition has not been met if the "memorandums or letters" withheld originated or were intended for use outside of the agency. *See Klamath*, 542 U.S. at 12-13 (declining to extend consultant corollary exception to communications with tribes); *Lucaj*, 852 F.3d at 546 (6th Cir. 2017). Moreover, in keeping with the purpose of the Act, FOIA's exemptions are "explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal citations and quotation

marks omitted). *See also Klamath*, 532 U.S. at 8; *Akron Standard*, 780 F.2d at 571 ("[D]isclosure rather than secrecy is the dominant objective of the Act.").

In response to EPI's FOIA requests, TVA has invoked Exemption 5 to redact and withhold records pursuant to the attorney-client privilege, the deliberative process privilege, and the government confidential commercial information privilege. These invocations are inappropriate for the reasons discussed below.

### A.     TVA Improperly Withheld Records Under the Attorney-Client Privilege.

In response to FOIA Request 109, TVA asserted that it was withholding records pursuant to Exemption 5's attorney-client privilege. ECF No. 21-3 at 1. A document withheld pursuant to the attorney-client privilege must involve "confidential communications between an attorney and his client" and relate to "a legal matter for which the client has sought professional advice." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). "To demonstrate that the attorney-client privilege justifies withholding documents, the [agency] must establish that 'the information in those documents was communicated to or by an attorney as part of a professional relationship in order to provide the [agency] with advice on the legal ramifications of its actions.'" *Norwood v. FAA*, 580 F. Supp. 994, 1002 (W.D. Tenn. 1984) (quoting *Mead Data*, 566 F.2d at 253). The agency must also show that the information is confidential, supplied to or by an agency's attorneys "with the expectation of secrecy and not known by or disclosed to any third party." *Norwood*, 580 F. Supp. at 1002. Not all documents produced or shared in an attorney-client relationship can be lawfully withheld pursuant to the FOIA, however, and it is well established that the inclusion of an agency or outside attorney on a communication is not sufficient to shield a record from disclosure under Exemption 5. *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975); *Mead Data*, 566 F.2d at 253; *Falcone*

8

*v. Internal Revenue Serv.*, 479 F. Supp. 985, 989 (E.D. Mich. 1979) ("[T]he privilege must be limited to communications essential to the purpose of the privilege. . .").

Documents prepared by an attorney in contemplation of litigation regarding case theories and litigation strategy, for instance, would fall within the attorney-client privilege. *See Sears, Roebuck & Co.*, 421 U.S. at 154. Courts have found, however, that documents that are statements of policy and interpretations adopted by the agency are not privileged because they "are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public." *Falcone*, 479 F. Supp. at 990 (quoting *Niemeier v. Watergate Special Prosecution Force*, 565 F.2d 967, 974 (7th Cir. 1977)). Litigation update emails have also been held to be not protected by attorney-client privilege where they are not "for the purpose of rendering legal advice, in confidence," and instead are sent to multiple clients who are not being represented in the same litigation. *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2022 WL 2383543, at *4-5 (S.D. Ohio July 1, 2022) ("[W]hile legal advice may be a purpose of the communication, it also resembles the kind of ordinary business development that attorneys often undertake for prospective or current clients, keeping them informed of litigation trends within their industry to convey expertise.").

In FOIA Request 109, EPI sought records "regarding TVA's involvement with an outside entity(ies) housed within the law firm of McGuire Woods," using the keywords "Clean Air Act Monitoring Service," "Climate Legal Group," and "McGuireWoods." ECF No. 21-1. EPI has previously obtained documents from TVA related to its involvement with UARG. Tait Decl. ¶¶ 3-6. A contract between TVA and McGuire Woods provided to EPI in 2021 indicates a role for McGuire Woods similar to that of Hunton and UARG, stating that the firm will "monitor and keep TVA apprised of Clean Air Act (CAA) developments covering all major CAA regulatory

9

programs" and that none of the funds paid by TVA for this service will be used "for any CAA or other litigation," even if an amended version of the contract otherwise allowed TVA to use McGuire Woods for litigation services. *Id.* ¶ 8, Exhibit B at 1-3. McGuire Woods attorney Makram Jaber has also previously stated that the Clean Air Act Monitoring Service and the Climate Legal Group "are focused exclusively on keeping [their] clients abreast of legal and regulatory developments." Reilly, "Emails, docs show TVA's ties to fight against federal regs," *supra* n.2.

Thus, to the extent that TVA is claiming attorney-client privilege for communications or documents that simply summarize recent legal cases or regulations and that are not specifically provided in anticipation of litigation, that claim is inappropriate and those records should be disclosed. Any communications or other documents that were shared with any third parties, even if they are also clients of McGuire Woods, are not confidential and also therefore not exempt under Exemption 5's attorney-client privilege.

### B. TVA Improperly Withheld Records Under the Deliberative Process Privilege.

TVA also asserted Exemption 5's deliberative process privilege in response to FOIA Request 109, stating that the exemption "protects confidential pre-decisional information." ECF No. 21-3 at 1. The deliberative process privilege protects only inter- and intra-agency "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears, Roebuck & Co.,* 421 U.S. at 149. *See also U.S. Fish and Wildlife Service v. Sierra Club, Inc.,* 141 S. Ct. 777, 783 (2021) (holding that "in-house drafts" shared only between government agencies are protected under the deliberative process privilege). As explained above, courts have typically found that "memorandums or letters" that originated or were intended for use outside of the

agency cannot be withheld under Exemption 5. *See Klamath*, 542 U.S. at 12-13; *Lucaj*, 852 F.3d at 546. An agency must also demonstrate that any record withheld pursuant to the deliberative process privilege is both "predecisional," generated prior to an agency decision, and "deliberative," or part of the exchange of the agency consultation process. *Rugiero*, 257 F.3d at 550 (quoting *Schell v. U.S. Dep't of Health & Human Serv.*, 843 F.2d 933, 940 (6th Cir. 1988)). "Factual materials are generally not privileged unless they are inextricably intertwined with policy-making processes," and the privilege is to be construed as narrowly as possible without compromising efficient government operations. *EEOC v. Burlington Northern*, 615 F. Supp. 2d 717, 720 (W.D. Tenn. 2009) (quoting *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007)).

Here, where EPI has requested communications between TVA and McGuire Woods attorneys, no document—draft or otherwise—that is shared as part of those communications can be withheld as an internal predecisional deliberative record. In addition, to the extent that TVA is withholding internal records that have not been shared with McGuire Woods or any other non-government third party, TVA should have made efforts to ensure that the records were directly related to an agency decision-making process and released purely factual materials. *See infra*, Part IV. TVA does not appear to have done so, given that all documents withheld pursuant to the deliberative process privilege have been withheld in full.

### C. TVA Improperly Redacted the Insurance Contract Under the Government Confidential Commercial Information Privilege.

Finally, in response to FOIA Request 208, TVA invoked a government confidential commercial information privilege in redacting multiple portions of the contract responsive to the request. That privilege is rarely applicable and is misapplied here. While Exemption 5 does

"incorporate[] a qualified privilege for confidential commercial information, at least to the extent that this information is generated by the Government itself in the process leading up to awarding a contract," such privilege expires "as soon as the contract is awarded." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 (1979). In addition, this Exemption 5 privilege "is necessarily confined to information generated by the Federal Government itself." *Id. See also Klamath*, 542 U.S. at 12-13 (to qualify under Exemption 5, source must be government agency). In recognizing this limited privilege, the Supreme Court "certainly did not intend to create a sweeping new privilege for any sensitive information, the immediate release of which would significantly harm the Government's monetary functions or commercial interests." *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 281-82 (S.D.N.Y. 2009). In fact, the Court specifically noted that "there is no absolute privilege for trade secrets and similar confidential information." *Merrill*, 443 U.S. at 362 (internal quotation omitted).

Even where courts have found "unusual" and "rare" circumstances in which the privilege should not be terminated after a contract is awarded, they have still found "a presumption against invoking the privilege after the contract is awarded" and stated that the privilege "should not be asserted lightly." *Nat. Res. Def. Council, Inc., v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 411-13 (S.D.N.Y. 2014) (holding that government "establish[ed] that its commercial interests would suffer concrete and particular harm by the forced disclosure under FOIA of bidding information" because of unique circumstances surrounding coal leases, where sole "applicant's only competition is the government's internal estimate of fair market value"). *See also Taylor Woodrow Int'l v. U.S. Dep't of Navy*, 1989 WL 1095561, at *3 (W.D. Wash. Apr. 5, 1989) (privilege continued to apply because of unique contractual situation in which negotiations

12

continued after contract was awarded and "opportunity to take unfair advantage of the government agency continue[d] to exist").

The government confidential commercial information privilege does not apply here. FOIA Request 208 was for an executed contract that had already been awarded. Thus, at the very least, there is a presumption against invoking the privilege, if not complete expiration of it. If TVA would like to assert this privilege, TVA must demonstrate the "unique," "unusual," and "rare" circumstances that would justify allowing the privilege to continue to apply. TVA instead originally put forth only a conclusory statement that release of the redacted portions of the contract "would harm TVA's ability to negotiate the best value and lowest feasible cost for TVA ratepayers." Amend. Answer Exhibit 8, ECF No. 21-3 at 1. In response to EPI's administrative appeal, TVA added that "[t]he pool of insurers is limited" and that "the release of some of the terms could discourage insurers from underwriting TVA's risk or hinder TVA's ability to obtain favorable terms for the coverage of its assets and operations." ECF No. 21-5 at 2. This is counterintuitive.

Disclosure of this information would create more competition between insurance companies that would ensure better value and lower costs for the government and ratepayers, even with a limited pool of insurers. And if there is only one option—the insurance company that has already contracted with TVA and is the other party to this contract—then that insurance company is surely already aware of the terms in the contract. Any insurance company that would contract with TVA would also become aware of the government's required terms and risks before signing a contract; it should make no difference if those terms and risks are available to companies sooner. Furthermore, it is unclear how this assertion applies to such innocuous information as the dates the policy is in effect and the name of the person at TVA to whom

notice and payment should be made. Finally, TVA's application of both Exemption 4 and this privilege to the same material is disingenuous. To the extent TVA is withholding any information not generated by the government, it cannot be redacted on the basis of the government confidential commercial information privilege or any other Exemption 5 privilege.

### D.     TVA Improperly Applied the Required Foreseeable-Harm Analysis in Deciding to Withhold Records.

Under the FOIA Improvement Act of 2016, agencies must release a record, even if it falls within a FOIA exemption, unless "(I) the agency reasonably foresees that disclosure would harm an interest protected by exemption; or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). Speculation about potential harm fails to meet this "heightened standard." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019). *See also Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (holding that "general explanations" and "boiler plate language" do not satisfy the foreseeable-harm requirement). To meet its burden, an agency must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021). Additionally, in the context of the deliberative process privilege, an agency "cannot simply rely on 'generalized' assertions that disclosure 'could' chill deliberations" and instead must focus on the particular withheld records and determine that disclosure "'would' chill future internal discussions." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020).

Thus, even if the attorney-client, deliberative process, or government confidential commercial information privilege applies to these withheld records, TVA has the burden of demonstrating that there is specific and nonspeculative foreseeable harm to an interest protected

by each privilege that would be caused by release of the specific information in the records. TVA has not met this burden for any of the records redacted or withheld pursuant to Exemption 5.

## II.     TVA Unlawfully Withheld Records Pursuant to Exemption 4.

Exemption 4 permits an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). As discussed above, although EPI is the moving party, the agency bears the burden in a FOIA lawsuit of justifying the application of any exemptions, all of which must be narrowly applied. 5 U.S.C. § 522 (a)(4)(B) (stating that in FOIA litigation, "the burden is on the agency to sustain its action"); *Pub. Citizen* (1999), 185 F.3d at 905 (finding Public Citizen was required to show only that there was "no dispute about an issue of fact material to the FDA's burden of demonstrating that [the submitter] would suffer substantial competitive harm from the disclosure"). As with all exceptions to the rule of disclosure, the government must provide detailed and legally sufficient grounds to withhold agency records pursuant to Exemption 4.[3] For each record withheld, TVA must prove every component of Exemption 4 and show that release of the withheld record would cause foreseeable harm to the submitters, which in this case are McGuire Woods, the Climate Legal Group, and PGen.

The government has some limitations, however, in what it can present to support the applicability of Exemption 4.[4] *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016)

---

[3] Because TVA is a member of the Climate Legal Group, these records originating from the email accounts or desks at McGuire Woods are agency records. *See U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 144 (1989) ("To restrict the term 'agency records' to materials generated internally would frustrate Congress' desire to put within public reach the information available to an agency in its decision-making processes.").

[4] In Exemption 4 cases, courts have found hearsay regarding out-of-court statements by third parties inadmissible. *See Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (permitting reliance on agency affidavits to justify the

(finding contents of letter from third party would be inadmissible at trial and could not be considered on summary judgment). Also, the government cannot submit general assertions about industry practice as evidence of whether information is customarily kept confidential and must provide admissible proof specific to the submitter's practices. *See Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001). As with all FOIA exemption claims, conclusory assertions like those provided in both appeal determinations are insufficient to justify blocking the release of public records. *See Pub. Citizen* (1999), 185 F.3d at 906.

Finally, after providing adequate support for each Exemption 4 element, an agency must "explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as causing 'genuine harm to [the third party's] economic or business interests.'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 113 (quoting *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2369 (2019)).

### A. Information Withheld by TVA Is Not Commercial or Financial in Nature.

TVA has failed to provide evidence that the withheld communications with special-interest advocacy groups that represent it are commercial or financial. *See generally Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Courts apply the plain meaning of "commercial" or "financial" in determining whether Exemption 4 was properly applied, although "not every bit of information submitted to the government" can be withheld. *Pub. Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citations omitted). Information within records is commercial if it serves a "commercial function" or is of a "commercial nature."

---

reasonableness of the agency's search but refusing to consider third-party statements objecting to disclosure); *Ecological Rights Found. v. EPA*, 541 F. Supp. 3d 34, 49 (D.D.C. 2021).

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (quoting *Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978)).

For instance, "records that actually reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or relate to the income-producing aspects of a business" are considered commercial by courts. *Pub. Citizen* (1983), 704 F.2d at 1290. But not all information relating to business ventures falls within the protection of Exemption 4. *See Getman v. NLRB*, 450 F.2d 670, 673 (D.C. Cir. 1971) (names and addresses of employees not "financial" or "commercial" under Exemption 4); *Besson v. U.S. Dep't of Commerce*, 480 F. Supp. 3d 105, 113 (D.D.C. 2020) (finding that employee names could not be withheld despite submitter's insistence that competitors could poach staff or devise its business strategy by looking at skills of its employees); *Pub. Citizen v. HHS*, 975 F. Supp. 2d 81, 105–06 (D.D.C. 2013) (rejecting assertion that person's name, title, and responsibilities were "commercial" under Exemption 4); *Nat'l Bus. Aviation Ass'n v. FAA*, 686 F. Supp. 2d 80, 86-87 (D.D.C. 2010) (aircraft registration numbers not sufficiently "commercial" to qualify for Exemption 4).

Nor is evidence that the disclosure of records may inflict commercial harm, for instance through public critique or scrutiny, sufficient to categorize information as "commercial." *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 58 F.4th 1255, 1266-67 (D.C. Cir. 2023). Instead, "[i]nformation protected by Exemption 4 must be commercial in its own right." *S. Envtl. Law Ctr. v. Tenn. Valley Auth.*, No. 3:22-CV-00108-DCLC-DCP, 2023 WL 2387360, *13 (E.D. Tenn. Mar. 7, 2023) (finding persuasive submitter statements describing commercial nature of withheld details of future natural gas pipelines). For example, in *Citizens for Responsibility and Ethics in Washington*, 48 F.4th at 1266-67, the D.C. Circuit found that the Bureau of Prisons did not provide sufficient evidence to prove that information about contractors

17

who supplied the government with lethal injection drugs was commercial or financial, despite the agency's concerns that disclosure of this information would harm the Bureau's ability to find contractors willing to supply such drugs in the future. The court explained that Exemption 4 does not protect against all commercial harm and "it would stretch Exemption 4 to cover nearly any information that a business and the government agreed to keep secret, vitiating FOIA's ability to shine light on public contracting." *Id.* at 1267.

In response to FOIA Request 109, TVA withheld portions of communications, entire attachments, and other documents in full pursuant to Exemption 4. *See* ECF No. 21-3 at 1; ECF No. 21-5 at 1. Based upon the scope of the request, the partially released documents, and public statements about the relationship between the Climate Legal Group, PGen, McGuire Woods, and TVA, the agency has taken an impermissibly broad approach in applying Exemption 4. For example, for the records released in part, TVA provides no reasonably specific reason why email addresses are commercial or financial or otherwise qualify for an exemption. ECF No. 21-3 at 1. Yet TVA asserts that both Exemption 4 and 6 apply to numerous records, including email addresses. *See* Tait Decl., Exhibit A at 9, 11, 18, 21. Without some special circumstance, names and email addresses—particularly business email addresses of those contracting with the government—cannot be withheld pursuant to either Exemption 4 or 6. *See Getman*, 450 F.2d at 673; *Pub. Citizen v. HHS*, 975 F. Supp. 2d at 105; *Climate Investigations Ctr. v. U.S. Dep't of Energy*, 331 F. Supp. 3d 1, 27 (D.D.C. 2018) (rejecting agency's general assertion of privacy interest in its application of Exemption 6 to contractor names).

In reviewing the text of those records released in part, it is apparent that TVA's understanding of the meaning of "commercial" information is overbroad. For example, TVA withheld the majority of the text of an email to TVA coordinating "the first meeting of the Power

Generators Air Coalition." Tait Decl., Exhibit A at 25. *See also id.* at 29-30 (email between TVA

and McGuire Woods with subject line "Re: Climate Change Legal Group: Possible Change in

Meeting Time and Possible New Member"). Correspondence sent to coordinate a meeting

between McGuire Woods and the agency is not commercial in nature. Instead, records indicating

relationships with and influence of outside parties are the very kinds of information that should

be disclosed under the FOIA.

Similarly, in response to FOIA Request 208, TVA misconstrues the meaning of

"commercial or financial" information in redacting TVA's overall liability policy. *See Pub.

Citizen* (1983), 704 F.2d at 1290. TVA applies Exemption 4 (and Exemption 5) to names of

representatives, dates of the policy coverage period, and what appears to be an index of the

contents of the policy, among other unidentifiable redacted information. Tait Decl. ¶ 14, Exhibit

D at 1-2, 25-49. Thus, for both FOIA requests, TVA cannot demonstrate that withheld material

"actually reveal basic commercial operations." *Pub. Citizen* (1983), 704 F.2d at 1290. *See also

Besson*, 480 F. Supp. 3d at 113.

### B. TVA Has Not Shown That All Withheld Material Was Obtained from A Person.

Exemption 4's requirement that information be "obtained from a person" means that

Exemption 4 protects only data generated outside of the federal government. *See, e.g.*,

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 148 (2d Cir. 2010)

(quoting *Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 403-04 (D.C. Cir.

1980)). The government must provide a sufficiently detailed explanation to show that material

was obtained from a non-government person. *Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133

F. Supp. 3d 109, 125 (D.D.C. 2015) ("Without adequate information about whether an author is

affiliated with GM, Chrysler, or Treasury, the Court cannot determine if the information within a

19

particular document was 'obtained from a person' and qualifies for withholding under Exemption 4."). Just because the government may have used information from outside the agency to generate a record does not mean that that record is "obtained from a person." *See In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 83, 102-03 (D.D.C. 2008) ("[T]he mere fact that information was the product of negotiations between a 'person' and the agency does not make that information 'obtained from a person' under Exemption 4."); *Cause of Action Inst. v. Export-Import Bank of U.S.*, No. 19-1915, 2022 WL 252028, at *17 (D.D.C. Jan. 27, 2022) (finding that credit limit information, recipient of credit, and name of exporter, though generated by outside sources, was material created within EXIM and not "obtained from a person").

Upon an adequate showing by the agency that material was "obtained from a person," FOIA requesters can offer evidence that the agency "substantially reformulated," co-authored, or made significant alterations to withheld information, making it no longer eligible for Exemption 4 protection. *S. Alliance for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012). *Cf. S. Envtl. Law Ctr.*, 2023 WL 2387360, at *19 (concluding that Plaintiff failed to show that contract language was significantly altered by agency).

TVA does not establish that all withheld material was obtained from a person. *See Ctr. for Auto Safety v. Dep't of Treasury*, 133 F. Supp. 3d at 125. The records show at least one instance where TVA withheld a document for a presentation that was made in part by TVA. The text of an email from Makram Jaber of McGuire Woods to Carolyn Kora of TVA and another party (name redacted) states the following: "I suggest that you go through the presentation. To make it easy, I suggest that Carolyn do slides 2-9 and [redacted] slides 10-17. What do you think?" Tait Decl., Exhibit A at 50 of 55. TVA has failed to prove the second prong of

Exemption 4, and evidence suggests that TVA is erroneously attempting to shield information that may have been generated by the government.

### C. TVA Erroneously Withheld Information That Is Not Confidential.

TVA's denials discuss only the third prong of Exemption 4, whether the information is "confidential," yet the agency still fails to meet its burden for that prong and stretches the meaning of the requirement. Information is confidential for the purpose of Exemption 4 only when it is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Argus Leader*, 139 S. Ct. at 2366.

The Supreme Court's decision in *Argus Leader* neither overturned FOIA's longstanding presumption of openness nor rewrote the rule that FOIA exemptions must be "narrowly construed." *Milner*, 562 U.S. at 565 (citations omitted). Instead, under *Argus Leader*, courts may look to "*Critical Mass* and its progeny" to determine what is customarily and actually treated as private and therefore "confidential." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 109. Recently, the Second Circuit defined "confidential" as "held in confidence and not disclosed to any member of the public by the person to whom it belongs." *Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231, 234 (2d Cir. 2022). Agencies need to prove each element of Exemption 4 and be careful not to "conflate[] the 'commercial' and 'confidential' inquiries under Exemption 4." *Citizens for Responsibility & Ethics in Wash.*, 58 F.4th at 1266.

Additionally, and as this Court has previously told TVA, "the text of Exemption 4 does not refer to the government's interests." *S. Envtl. Law Ctr.*, 2023 WL 2387360, at *7. *See also* 5 U.S.C. § 552(b)(4); *Citizens for Responsibility & Ethics in Wash.*, 58 F.4th at 1264. The confidentiality inquiry centers on "how the particular party customarily treats the information,

not how the industry as a whole treats the information." *Ctr. for Auto Safety v. NHTSA*, 244 F.3d at 148. *See also Renewable Fuels Ass'n v. EPA*, 519 F. Supp. 3d 1, 10 (D.D.C. 2021).

In response to FOIA Request 109, TVA offers no explanation beyond reciting the definition of Exemption 4: "FOIA exemption 4 protects confidential commercial and financial information submitted to the government by an outside source." ECF No. 21-3 at 1. On appeal, the agency makes reference to the foreseeable-harm standard as it relates to Exemption 4, ECF No. 21-5 at 2, but does not provide evidence that information withheld is "confidential" under the Act.

For FOIA Request 208, TVA appears to not have received any evidence about how the insurer customarily or actually treats the redacted information as private and instead allowed the company to simply assert a legal conclusion to justify redactions taken. TVA stated:

> "[T]he insurance company was notified of your request and was given the opportunity to request the redaction of the information that it deemed to be confidential commercial and financial information, or otherwise considered competitively sensitive. The insurance company did so and confirmed this assertion in its response."

ECF No. 21-10 at 1-2. Additional conclusory statements in the appeal determination also fail to provide evidence to support redaction. *Id.* at 1.

Just as for the first two prongs of the Exemption 4 analysis, TVA does not provide a legally adequate justification to overcome the FOIA's presumption of disclosure, and evidence in the record suggests that TVA's interpretation of what is "confidential" was impermissibly broad. Tait Decl., Exhibit A at 21 (redacting names and email addresses), 29 (email from McGuire Woods to TVA about "Possible Change in Meeting Time and Possible New Member"), 42-43 (email from McGuire Woods to multiple parties at TVA regarding an upcoming coalition meeting). EPI therefore challenges TVA's application of Exemption 4 to withheld records,

including documents withheld in full.

**D.    TVA Must Release Records Absent Evidence of Foreseeable Harm from Disclosure.**

Although TVA mentions that it conducted a foreseeable-harm analysis, it fails to adequately connect the release of records with a foreseeable harm to an interest protected by Exemption 4. ECF No. 21-5 at 2. In 2016, Congress passed FOIA Amendments which were, in part, intended to curb the overuse of exemptions by agencies. S. Rep. No. 114-4 (2015), as reprinted in 2016 U.S.C.C.A.N. 321, 322. An agency can withhold information only if it shows that the information falls within one of FOIA's nine enumerated exemptions, which are to be narrowly applied, and if it demonstrates that the requirements of the foreseeable-harm standard are met. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I)-(II); *Seife*, 43 F.4th at 239; *Reporters Comm. v. FBI*, 3 F.4th at 369. This independent burden was imposed on agencies by Congress and provides that the government must release records unless "(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i)(I)-(II).

To satisfy its burden, TVA must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reporters Comm. v. FBI*, 3 F.4th at 369 (quoting H.R. Rep. No. 114-391, at 9). Mere "generalized assertions" will not suffice. *Id.* (quoting *Machado Amadis*, 971 F.3d at 371). Moreover, any harm claimed by TVA is irrelevant to this inquiry, as the exemption protects only the submitter's interests. *See* 5 U.S.C. § 552(b)(4); (a)(8)(A)(i)(I). Exemption 4 also does not protect a submitter from embarrassment or "reputational injury." *United Tech. Corp. v. DOD*, 601 F.3d 557, 564 (D.C. Cir. 2010). TVA has not provided evidence from the Climate Legal

Group or PGen that the release of records from 2020 will cause them harm. Nor has TVA provided evidence demonstrating that release of an insurance contract will harm the insurer.

### III. TVA Has Failed to Demonstrate Any Privacy Interest in Business Email Addresses.

TVA also asserts that names and email addresses of those corresponding with the government and an advocacy coalition should be protected under Exemption 6. Exemption 6 provides that agencies may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Once a court determines that an agency has shown that withheld materials are personal, medical, or similar files, it must balance the privacy interest against the public interest in disclosure. *DOJ v. Reporters Comm.*, 489 U.S. at 776. The D.C. Circuit has explained that "Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships," and "it was not intended to shield matters of such clear public concern as the names of those entering into contracts with the federal government." *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980). The risk that a person might be asked questions or face embarrassment from disclosure is not a protected privacy interest under FOIA. *See Besson*, 480 F. Supp. 3d at 117. Here, the public interest outweighs any cognizable privacy interest in names of parties doing business with the government and their business email addresses.

### IV. TVA Failed to Reasonably Segregate and Provide Non-Exempt Portions of Records.

Finally, TVA unlawfully withheld 157 email messages and attachments in their entirety, claiming Exemptions 4, 5, and 6 applied. ECF No. 21-3 at 1. An agency must provide "any reasonably segregable portion of a record" that otherwise contains some exempt information. 5 U.S.C. § 552(b). *See Rugiero*, 257 F.3d at 553 (noting that agency improperly relied on

conclusory statements and did not "describe the process by which it determined that all reasonably segregable material had been released or state why some materials are not reasonably segregable"); *Cincinnati Enquirer*, 45 F.4th at 938; *Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004) (agency cannot withhold document "without describing the mix of privileged and non-privileged information and explaining why it would not be possible to simply redact the privileged materials"); *Norwood*, 580 F. Supp. at 1002 (FAA did not meet its "burden of proving that factual materials in the documents for which it claim[ed] deliberative process privilege are so inextricably intertwined with the agency's deliberative processes as to be inseverable.").

Based upon the topic of FOIA Request 109, it is implausible that the agency found no reasonably segregable portions of the 157 emails withheld in full after conducting a proper review on administrative appeal. For example, none of the documents provided by TVA so far have been partially redacted pursuant to the attorney-client or deliberative process privilege, meaning that all documents that TVA is withholding under these Exemption 5 privileges are being withheld in full. TVA must therefore produce any reasonably segregable portions of these otherwise exempt records or explain the process by which it determined that the remaining 157 documents withheld in full are not reasonably segregable. Any factual information that is not "inextricably intertwined" with exempt portions of records must be provided.

**CONCLUSION**

For the foregoing reasons, EPI requests that the Court order TVA to release the requested public records.

Respectfully Submitted,

By:    */s/ Zehava Robbins*
Zehava Robbins
*Pro Hac Vice*
D.C. Bar No. 242265
Public Records Counsel
Essential Information, Inc.
1718 Connecticut Ave. NW
Washington, DC 20009
(202) 643-6267
zrobbins@essential.org

Chris Irwin
BPR# 025478
PO Box 9682
Knoxville, TN 37940
(865) 257-4029
christopherscottirwin@yahoo.com

Allison Kole
*Pro Hac Vice*
D.C. Bar No. 1031724
Counsel
Essential Information, Inc.
1718 Connecticut Ave. NW
Washington, DC 20009
(202) 596-7540
akole@essential.org

*Attorneys for Plaintiff*