

Tennessee Valley Authority, 400 West Summit Hill Drive, Knoxville, Tennessee 37902-1401

Sherry A. Quirk
Executive Vice President and General Counsel

May 28, 2020

Contract No. 15140

Vendor # 540505857-01

Makram B. Jaber, Esq.
McGuireWoods LLP
2001 K Street, NW
Washington, D.C. 20006-1040

Dear Mr. Jaber:

This records the agreement between the Tennessee Valley Authority ("TVA") and McGuire Woods LLP (the "Firm") under which the Firm, upon request, will provide TVA advice on environmental matters.

1. The Firm's services will be provided when and as specifically requested by me or other attorneys on my staff that I may designate at a later time. Services provided by the Firm will be at rates agreed to in advance of the services provided.

2. The Firm is authorized to, and will, monitor and keep TVA apprised of Clean Air Act (CAA) developments covering all major CAA regulatory programs, including without limitation: (i) climate change and greenhouse gas regulation; (ii) hazardous air pollutant control requirements and standard revision; (iii) regional haze and development of regulatory plans for the next ten-year planning period; (iv) establishment and implementation of national ambient air quality standards; (v) actions to address interstate transport of air pollution; (vi) monitoring, recordkeeping, reporting, and compliance testing; (vii) implementation of the Title V operating permits program; (viii) New Source Review permitting requirements; (ix) compliance with new source performance standards; and (x) EPA guidance and regulations concerning air quality models. These services are intended to assist TVA with the development and implementation of environmental regulations, an important aspect of its functioning, and, accordingly, will be overseen by TVA's in-house attorneys. The Firm will provide these services (b) (4) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. TVA will make payment for such services through funds transferred to the Firm from an account currently established with the law firm of Hunton Andrews & Kurth (HAK) for CAA developments work. No funds paid by TVA for keeping it apprised of CAA developments will be used by the Firm for any CAA or other litigation. TVA will have no obligation to make payment for any such invoices until thirty (30) days after the funds with HAK have been transferred to an account with the Firm.

3. Unless otherwise specified by TVA and excepting the CAA work set forth in Section 2 above, TVA shall reimburse the Firm for actual expenses, such as copying, courier service, miscellaneous out-of-pocket expenses incurred in connection with its services, and if travel is requested by TVA, travel expenses will be reimbursed in amounts not in excess of what would be allowed under, and otherwise in accordance with, TVA travel regulations (a copy of which will be provided upon request) as well as federal travel regulations.

1

Makram B. Jaber, Esq.
McGuire Woods, LLP
Page 2
May 28, 2020

4. The Firm will undertake, to the extent feasible, to perform work for the benefit of TVA during any period of travel for which the Firm is billing fees under this agreement.

   The Firm shall not utilize the services of subcontractors or agents except upon prior written approval by TVA. The Firm will be reimbursed for the cost of any approved subcontractors or agents at the Firm's actual cost.

   TVA does not guarantee that any minimum quantity of services will be requested under this agreement. The total amount payable under this agreement shall not exceed $150,000, unless this agreement is later supplemented by TVA.

   Please keep accurate records and books of accounts that will facilitate auditing, by TVA and TVA's representatives, of payments and reimbursements hereunder. TVA and its representatives may audit such records and books on reasonable notice during regular business hours.

5. The Parties may agree that payment for any services will be made from the account established with the Firm through funds transferred from HAK. The Firm will not invoice TVA for the applicable services until the funds with HAK have been transferred to the Firm. For all other services, payments by TVA will be made within 45 days after receipt and approval by TVA of a proper invoice submitted not more often than once monthly. The invoice should include the names of persons whose services are being billed to TVA, the corresponding hourly rate, the number of hours of services, the dates of performance, and a precise description of the corresponding task performed. The invoice should also include related travel performed, the dates of travel; details and receipts to support transportation and subsistence; and miscellaneous items of expense and corresponding costs. On any overdue amount, interest shall be computed and paid in accordance with the Prompt Payment Act, 31 U.S.C. §§ 3901-3907. Invoices should be sent to the email address listed below for Nathaniel A. Winchester:

   > Nathaniel A. Winchester
   > Tennessee Valley Authority
   > Office of the General Counsel
   > 400 West Summit Hill Drive, WT 6A-K
   > Knoxville, Tennessee 37902-1401
   > Email: nawinchester@tva.gov
   > Phone: (865) 632-6150

6. This is a contract for personal services entered into under the authority of the TVA Act, 16 U.S.C. §§ 831-831ee. To the extent applicable, this agreement incorporates by reference the Equal Opportunity clause, 41 C.F.R. § 60-1.4, the Anti-kickback Procedures, 18 C.F.R. § 1316.3, and the Drug-Free Workplace provision, 18 C.F.R. § 1316.7. In addition, execution of this agreement constitutes execution by the Firm of the certifications set forth in **Exhibit A**, Certification for Contracts, Grants, Loans, and Cooperative Agreements.

7. Unless and until otherwise instructed by TVA, all communications between the Firm and any person with respect to any matter undertaken pursuant to this agreement shall be regarded as confidential, privileged, and in anticipation of litigation. The Firm (including any person acting on behalf of the Firm) shall not disclose to anyone, without written permission from TVA, the nature or content of any oral or written

Makram B. Jaber, Esq.
McGuire Woods, LLP
Page 3
May 28, 2020

communications, or other documents submitted to the Firm (including business records or documents), nor shall the Firm permit inspection of any papers, documents, technical data, or other items without obtaining prior permission from TVA.

8. Unless and until otherwise instructed by TVA, all work papers, records, samples, or other documents, information materials, including computer files, of any type received, collected, or prepared in connection with this agreement, regardless of their nature or whether they were created by the Firm or provided by TVA (confidential material) shall be treated as confidential and may be shared only with those members, employees, and representatives of the Firm who are identified in this agreement by name and position as providing services to TVA. No confidential material shall be shared with a member, employee, or representative of the Firm who is not listed in this agreement or working under the direction or supervision of the addressee above without a prior written request by the Firm identifying such member, employee, or representative and prior written approval to that request by TVA.

9. The Firm has no other work which presents a potential conflict of interest and will immediately inform me or my representative should a conflict or potential conflict arise. For purposes of this agreement, your client is TVA and not any affiliates or commonly owned entities of TVA, or any employees, agents, officers, or directors of TVA, or any branch, department or agency of the United States government, other than TVA.

10. TVA has the right, at any time, to terminate any request for services and will be obligated to pay for only those services actually provided and costs incurred up to the date of termination. This agreement shall continue in effect until terminated by either party giving written notice to the other party. Unless terminated earlier by either party, the Firm's representation of TVA will terminate upon the Firm's submission of its final invoice for fees and costs incurred under this agreement. This agreement may be modified at any time upon written agreement of TVA and the Firm.

If the aforementioned arrangements meet with your approval, please indicate acceptance on behalf of the Firm in the space provided and email a signed copy to Nathaniel Winchester at nawinchester@tva.gov.

Sincerely,

*[signature]*

Sherry A. Quirk

Enclosure

Accepted and agreed to this 28th day of May, 2020.

**MCGUIRE WOODS**

By: *[signature]*
Makram B. Jaber

99284141

**Exhibit A**
**Certification for Contracts, Grants,**
**Loans, and Cooperative Agreements**

The Firm certifies, to the best of its knowledge and belief, that:

(1)  No Federal appropriated funds have been paid or will be paid by or on behalf of the Firm to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)  If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Firm shall complete and submit Standard Form-LLL, "Disclosure of Lobbying Activities," in accordance with its instructions.

(3)  The Firm shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by 31 U.S.C. 1352. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.