UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

ENERGY AND POLICY INSTITUTE,
Plaintiff,

v.                                            No. 3:22-cv-00220-TAV-DCP

TENNESSEE VALLEY AUTHORITY,
Defendant.

---

**CONSOLIDATED BRIEF IN SUPPORT OF TENNESSEE VALLEY AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

David D. Ayliffe
Director, Litigation
Lane E. McCarty
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

Attorneys for Tennessee Valley Authority

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

BACKGROUND ............................................................................................................................1

    I.       The Freedom of Information Act ("FOIA") ...........................................................1

    II.      The FOIA Improvement Act.....................................................................................3

    III.    EPI's FOIA Request 109 .........................................................................................4

    IV.    EPI's FOIA Request 208 .........................................................................................7

STANDARD OF REVIEW ...........................................................................................................8

ARGUMENT.................................................................................................................................9

    I.       TVA's Decision to Withhold Exempt Information in Response to FOIA
           Request 109 Should Be Upheld. ............................................................................10

          A.     TVA Properly Withheld Information of McGuireWoods, the CLG
               and PGen Pursuant to FOIA Exemption 4.................................................10

          B.     TVA Properly Withheld Information Protected by the Attorney-
               Client Privilege Pursuant to FOIA Exemption 5 ......................................17

          C.     TVA Properly Withheld Personally Identifiable Information
               Pursuant to FOIA Exemption 6................................................................21

          D.     Disclosure of the Requested Information Would Cause Foreseeable
               Harm. ........................................................................................................23

    II.      TVA's Decision to Withhold Exempt Information in Response to FOIA
           Request 208 Should Be Upheld. ............................................................................26

          A.     TVA Properly Withheld Information of AEGIS Pursuant to FOIA
               Exemption 4.............................................................................................27

          B.     TVA Properly Withheld Confidential Commercial Information of
               the Government Pursuant to FOIA Exemption 5.......................................30

          C.     Disclosure of the Requested Information Would Cause Foreseeable
               Harm. ........................................................................................................33

    III.    TVA Has Properly Released All Reasonably Segregable Information .................35

CONCLUSION.............................................................................................................................35

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

*Am. Airlines v. Nat'l Mediation Bd.*,
588 F.2d 863 (2d Cir. 1978) ................................................................................. 13

*Am. Small Bus. League v. U.S. Dep't of Def.,*
411 F.Supp.3d 824 (N.D. Cal. 2019) ............................................................. 24, 33

*Baker & Hostetler LLP v. Dep't of Com.*,
473 F.3d 312 (D.C. Cir. 2006) ...................................................................... 13, 28

*Cent. Intel. Agency v. Sims*,
471 U.S. 159 (1985) .............................................................................................. 2

*Carney v. U.S. Dep't of Just.*,
19 F.3d 807 (2d Cir. 1994) ..................................................................................... 9

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*,
133 F.Supp.3d 109 (D.D.C. 2015) ....................................................................... 15

*Ctr. for Investigative Reporting v. U.S. Customs and Border Prot.,*
436 F.Supp.3d 90 (D.D.C. 2019) .................................................................... 24, 33

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003) ............................................................................... 2

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice,*
567 F.Supp.3d 204 (D.D.C. 2021) ....................................................................... 28

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*,
58 F.4th 1255 (D. D.C. 2023) .............................................................................. 13

*Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.,*
554 F.3d 1046 (D.C. Cir. 2009) ........................................................................... 22

*Critical Mass Energy Project v. NRC*,
975 F.2d 871 (D.C. Cir. 1992) ................................................................... 2, 3, 25

*Fed. Open Mkt. Com. Of the Fed. Rsrv. Sys. v Merrill*,
443 U.S. 340 (1979) ............................................................................... 3, 31, 34

*Fisher v. United States*,
425 U.S. 391 (1976) ............................................................................................. 25

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ................................................................................. *passim*

*Gellman v. Dep't of Homeland Sec.*,
No. 16-CV-635 (CRC), 2020 WL 1323896 (D.D.C. Mar. 20, 2020) .............................. 16

*Gov't Land Bank v. Gen. Servs. Admin.,*
671 F.2d 663 (1st Cir. 1982) ................................................................................ 31

*Gulf & W. Indus., Inc. v. United States,*
615 F.2d 527 (D.C. Cir. 1979)......................................................................................... 29

*Hack v. U.S. Dep't of Energy,*
538 F.Supp. 1098 (D.D.C. 1982) ..................................................................................... 34

*Heights Comm. Cong. v. Veterans Admin.,*
732 F.2d 526 (6th Cir. 1984) .......................................................................................... 22

*Hunton & Williams v. U.S. Dep't of Justice,*
590 F.3d 272 (4th Cir. 2010) .......................................................................................... 18

*In re Lindsey,*
148 F.3d 1100 (D.C. Cir. 1998) ...................................................................................... 25

*In re Sealed Case,*
121 F.3d 729 (D.C. Cir. 1997)......................................................................................... 35

*Jones v. FBI,*
41 F.3d 238 (6th Cir. 1994) .............................................................................................. 9

*Joseph W. Diemert, Jr. & Assocs. Co., L.P.A. v. F.A.A.,*
218 F. App'x 479 (6th Cir. 2007) ............................................................................... 3, 21

*Jud. Watch, Inc. v. Export-Import Bank,*
108 F.Supp.2d 19 (D.D.C. 2000) ...................................................................................... 2

*Landfair v. U.S. Dep't of Army,*
645 F.Supp. 325 (D.D.C. 1986)....................................................................................... 28

*Lepelletier v. FDIC,*
164 F.3d 37 (D.C. Cir. 1999)............................................................................................. 3

*M/A Com Info. Sys., Inc. v. U.S. Dep't of Health and Hum. Servs.,*
656 F.Supp. 691 (D.D.C. 1986)....................................................................................... 14

*McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.,*
180 F.3d 303 (D.C. Cir. 1999)......................................................................................... 14

*Miller Anderson Nash Yerke & Weiner v. U.S. Dep't of Energy ,*
499 F.Supp. 767 (D. Ore. 1980)....................................................................................... 17

*Nat'l Ass'n of Home Bldgs v. Norton,*
309 F.3d 26 (D.C. Cir. 2002)........................................................................................... 22

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,*
879 F.2d 873 (D.C.Cir.1989)........................................................................................... 22

*Nat'l Day Laborer Organizing Network v. U.S. Immigr. & Customs Enf't,*
811 F.Supp.2d 713 (S.D. N.Y. 2011)............................................................................... 22

*Nat'l Lab. Rel. Bd. v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975)..................................................................................................... 3, 17

*Nat'l Parks & Conservation Ass'n v. Morton*,
498 F.2d 765 (D.C. Cir. 1974) .................................................................................... 2

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
402 F.Supp.2d 211 (D.D.C. 2005) ............................................................................. 35

*N.Y. Times Co. v. U.S. Food and Drug Admin.*,
529 F.Supp.3d 260 (S.D.N.Y. 2021) .......................................................................... 23

*Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health*,
209 F.Supp.2d 37 (D.D.C. 2002) ............................................................................... 29

*Pub. Citizen Health Rsch. Grp. v. U.S. Health and Hum. Serv.*,
975 F.Supp.2d 81 (D.D.C. 2013) ............................................................................... 27

*Pub. Emps. for Env't Resps. v. EPA*,
211 F.Supp.3d 227 (D.D.C. 2016) ............................................................................. 18

*Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*,
567 F.Supp.3d 97 (D.D.C. 2021) ........................................................................... 9, 35

*Rocky Mountain Wild Inc. v. U.S. Forest Serv.*,
No. 18-cv-03065-MEH, 2021 WL 825985 (D. Col. Mar. 4, 2021) ................................ 31

*Rugiero v. U.S. Dep't of Justice*,
257 F.3d 534 (6th Cir. 2001) ................................................................................... 8, 9

*Schell v. U.S. Dep't of Health & Hum. Servs.*,
843 F.2d 933, 937 (6th Cir. 1988) ............................................................................. 21

*Smith v. Dep't of Labor*,
798 F.Supp.2d 274 (D.D.C. 2011) ............................................................................. 23

*S. All. for Clean Energy v. U.S. Dep't of Energy*,
853 F.Supp.2d 60 (D.D.C. 2012) ............................................................................... 29

*S. Env't L. Ctr. v. TVA*,
No. 322CV00108DCLCDCP, 2023 WL 2387360 (E.D. Tenn.) (Mar. 7, 2023) ....... *passim*

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106, 1117 (D.C. Cir. 2007) ........................................................................ 35

*Tax Analysts v. IRS*,
117 F.3d 607, 618 (D.C. Cir. 1997) ............................................................................ 18

*Taylor-Woodrow Int'l v. U.S. Dep't of Navy*,
No. C88-429R, 1989 WL 1095561 (W.D. Wash. Apr. 5, 1989) .................................... 31

*TERA II, LLC v. Rice Drilling D, LLC*,
No. 2:19-cv-2221, 2022 WL 2383543 (S.D. Ohio July 1, 2022) ................................... 21

*U.S. Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) .................................................................................................. 21

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
   510 U.S. 487 (1994).................................................................................................. 21

*U.S. Dep't of Justice v. Reps. Comm. for Freedom of Press*,
   489 U.S. 749 (1989).................................................................................................. 22

*United States v. Weber Aircraft Corp.*,
   465 U.S. 792 (1984).................................................................................................. 18

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981).......................................................................................... *passim*

*Varnum LLP v. U.S. Dep't of Labor,*
   No. 1:18-cv-1156, 2021 WL 1387773 (W.D. Mich. Mar. 15, 2021) .............................. 16

*Zirvi v. U.S. Nat'l Insts. of Health*,
   No. CV 20-7648, 2022 WL 1261591 (D.N.J. Apr. 28, 2022) ......................................... 28

**Statutes, Regulations**                                                                      **Page**

5 U.S.C. § 551 ............................................................................................................ 15

5 U.S.C. § 552 ..................................................................................................... *passim*

18 C.F.R. § 1301.1 ...................................................................................................... 9

18 C.F.R. § 1301.7 ................................................................................................... 4, 5

18 C.F.R. § 1301.8 ............................................................................................... 2, 5, 7

18 C.F.R. § 1301.9 .................................................................................................. 6, 8

**Other Authorities**                                                                          **Page**

S. Rep. No. 89-813 (1965)........................................................................................... 3

**INTRODUCTION**

Plaintiff Energy and Policy Institute ("EPI") brought this suit against Defendant Tennessee Valley Authority ("TVA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that TVA unlawfully withheld information in response to two separate FOIA requests. FOIA request 21-FOI-00109 ("FOIA Request 109") sought records relating to law firm McGuireWoods LLC's ("McGuireWoods") legal representation of TVA. FOIA request 21-FOI-00208 ("FOIA Request 208") sought TVA's excess liability insurance policy with Associated Electric & Gas Insurance Services ("AEGIS").

EPI's summary judgment motion challenges TVA's application of the FOIA exemptions, TVA's withholdings, and TVA's assessments of foreseeable harm. However, as detailed below, in the declarations supporting the applicable FOIA exemptions and TVA's withholdings, and in the *Vaughn* Index for FOIA Request 109, TVA carefully considered the responsive documents and has disclosed all responsive, non-exempt information as to both FOIA Requests. TVA has also properly applied and explained the applicable FOIA exemptions, provided non-exempt and reasonably segregable information in response to EPI's FOIA Requests, and demonstrated the foreseeable harm that would result if the exempt information were publicly disclosed. Because EPI can present no evidence to the contrary, EPI's summary judgment motion (Doc. 24) should be denied. Moreover, because TVA has satisfied its FOIA obligations and has met its burden to support application of the FOIA exemptions, TVA's summary judgment motion should be granted.

**BACKGROUND**

**I.      The Freedom of Information Act ("FOIA")**

FOIA allows for the public to access certain records from federal agencies, including TVA, 5 U.S.C. § 552, and "represents a balance struck by Congress between the public's right to know

and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003). While FOIA requires disclosure under certain circumstances, "Congress recognized [ ] that public disclosure is not always in the public interest[.]" *Cent. Intel. Agency v. Sims*, 471 U.S. 159, 166–67 (1985). Agency records that fall within one of the nine enumerated exemptions, 5 U.S.C. § 552(b)(1)–(9), are exempt and therefore need not be disclosed. And "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement.'" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up).

Of the nine exemptions recognized by FOIA, three exemptions—Exemptions 4, 5 and 6— are relevant here.[1] Under Exemption 4, FOIA does not apply to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4); *see also* 18 C.F.R. § 1301.8 (TVA regulations implementing Exemption 4). This exemption helps to safeguard the interests of both the government and submitters of information. *See, e.g., Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767-70 (D.C. Cir. 1974) (concluding that the legislative history of the FOIA "firmly supports the inference that [Exemption 4] is intended for the benefit of persons who supply information as well as the agencies which gather it"), *abrogated on other grounds by Argus Leader*, 139 S. Ct. 2356; *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 877–78 (D.C. Cir. 1992). The plain language of Exemption 4 ensures that

---

[1] TVA withheld some information responsive to each FOIA Request under more than one FOIA Exemption. *See generally* Declaration of Buddy Eller ("Eller Decl."). The Court may find that information is exempt under multiple FOIA exemptions. *See, e.g., Jud. Watch, Inc. v. Export-Import Bank*, 108 F.Supp.2d 19, 35-36, 38 (D.D.C. 2000) (documents subject to Exemptions 4 and 5). But where one exemption applies that alone is sufficient to justify withholding the material at issue. *See* 5 U.S.C. § 552(b).

federal agencies are able to obtain necessary and reliable commercial and financial information from outside the government and protects submitters of information from the competitive disadvantages that would result from disclosure. *Critical Mass*, 975 F.2d at 877–78. And the legislative history of Exemption 4 confirms that Congress intended to protect information "which would customarily not be released to the public by the person from whom it was obtained." *See* S. Rep. No. 89-813, at 9 (1965).

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption protects records that ordinarily would be privileged in the civil discovery context. *See Nat'l Lab. Rel. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-49 (1975). This includes documents protected by the attorney-client privilege, *see Sears, Roebuck*, 421 U.S. at 149, and the privilege for confidential commercial information of the government, *see Fed. Open Mkt. Com. Of the Fed. Rsrv. Sys. v Merrill*, 443 U.S. 340, 363 (1979).

Exemption 6 serves to protect personal privacy, permitting an agency to withhold "personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). If the threshold requirement of "personnel and medical files and similar files" is met, the court must balance the "individual's right to privacy" and the "public's right of free access to government information or public records." *Joseph W. Diemert, Jr. & Assocs. Co., L.P.A. v. F.A.A.,* 218 F. App'x 479, 482 (6th Cir. 2007); *see also Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) (same).

## II.     The FOIA Improvement Act

Enacted in 2016, the FOIA Improvement Act ("FIA") provides that an agency may withhold information pursuant to a FOIA exemption "only if . . . the agency reasonably foresees

that disclosure would harm an interest protected by" an exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). "Congress added the foreseeable harm requirement to the FIA to foreclose the withholding of material unless the agency can articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld." *S. Env't L. Ctr. v. TVA*, No. 322CV00108DCLCDCP, __F.Supp.3d__, 2023 WL 2387360, at *12 (E.D. Tenn. Mar. 7, 2023) (cleaned up). "The agency must provide a focused and concrete demonstration of why disclosure of the particular type of material will, in the specific context of the agency action at issue, actually impede those same agency [actions] going forward." *S. Env't L. Ctr.*, 2023 WL 2387360, at *12 (cleaned up). Moreover, the question for the Court is only whether the "disclosure would cause foreseeable harm [to those interests protected by the exemption] and not the gravity of harm potentially caused by disclosure." *Id.* at *12 (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)).

### III.    EPI's FOIA Request 109

On April 13, 2021, EPI submitted FOIA Request 109 to TVA seeking records relating to McGuireWoods' legal representation of TVA as well as correspondence between TVA personnel and McGuireWoods attorneys who represent TVA in various legal matters. (Declaration of Buddy Eller ("Eller Decl.") ¶ 8.) TVA's FOIA Officer identified 369 documents, consisting of emails and attachments, responsive to FOIA Request 109. (Eller Decl. ¶ 9.) After review, TVA's FOIA Officer concluded that some of the responsive documents, or portions thereof, were exempt from disclosure under FOIA Exemption 4, 18 C.F.R. § 1301.7(a)(4), because they contain commercial or financial information of McGuireWoods that is privileged or confidential; were exempt from disclosure under FOIA Exemption 5, *id.* § 1301.7(a)(5), because they contain information subject to the attorney-client privilege, the deliberative process privilege, and/or the government confidential commercial information; and/or were exempt from disclosure under FOIA Exemption

6, *id.* § 1301.7(a)(6), because they contain personally identifiable information of individuals the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. (Eller Decl. ¶ 10.)

As required by TVA's FOIA regulations, 18 C.F.R. § 1301.8, TVA's FOIA Officer notified McGuireWoods of FOIA Request 109 and provided them with copies of the responsive documents. (*Id.* ¶ 11; Declaration of Makram Jaber ("Jaber Decl.") ¶ 10 & Attach. 1.) McGuireWoods objected to the disclosure of certain documents in full and others in part because the documents contain privileged or confidential commercial or financial information of McGuireWoods, the Climate Legal Group (the "CLG)" and the Power Generators Air Coalition ("PGen"), groups which retained McGuireWoods to provide legal services. (Eller Decl. ¶ 12; Jaber Decl. ¶ 11 & Attach. 2.) McGuireWoods objected to the disclosure of this information pursuant to FOIA Exemption 4. McGuireWoods also noted that the vast majority of the responsive documents contain information protected by an attorney-client privilege held jointly by TVA and other members of a group, namely, the CLG and PGen, and objected to the disclosure of such information. McGuireWoods also objected to the disclosure of personally identifiable information contained in the responsive documents. (Eller Decl. ¶ 12; Jaber Decl. ¶ 11, Attach. 2.)

Based on McGuireWoods' good-faith explanation of its objections and TVA's own determination that certain information was exempt under FOIA Exemptions 4, 5 and 6, and because TVA foresaw that disclosure was likely to harm interests protected by FOIA Exemptions 4, 5 and 6, TVA determined that it would withhold the exempt documents and information. (Eller Decl. ¶ 13.) On March 22, 2022, TVA responded to FOIA Request 109, provided EPI with the non-exempt documents and information, and informed EPI that additional documents and information were being withheld under Exemptions 4, 5 and 6 of FOIA. (*Id.* ¶ 14.)

On April 7, 2022, EPI administratively appealed TVA's initial determination regarding FOIA Request 109. (*Id.* ¶ 15.) On May 6, 2022, TVA affirmed the FOIA Officer's initial determination and denied EPI's appeal with a statement of reasons explaining the basis for the denial, 18 C.F.R. § 1301.9. (*Id.* ¶¶ 16-23.) On June 23, 2022, EPI filed this lawsuit challenging TVA's final determination that the withheld documents and information were properly withheld under FOIA. (Compl., Doc. 1; Am. Compl., Doc. 19.)

On January 13, 2023, TVA provided EPI with a draft *Vaughn* index for the documents responsive to FOIA Request 109. (Eller Decl. ¶ 25 & Attach. 1; *see also* Doc. 22 at PageID#175.) TVA also disclosed to EPI 181 additional documents, either in whole or in part, for which McGuireWoods had withdrawn objections and for which TVA had no separate objections. (Eller Decl. ¶ 25.) On January 27, 2023, EPI advised TVA that it would consider narrowing the documents at issue to a list of 83 documents TVA had withheld in full or in part in response to FOIA Request 109. (*Id.* ¶ 26.) TVA provided the list of 83 documents to McGuireWoods to allow it to re-review the documents to see if any additional information could be disclosed. (*Id.*) In response to this re-review, McGuireWoods advised that there were six additional documents for which it was withdrawing its objections, and for which TVA had no separate objections. (*Id.*) Accordingly, on April 4, 2023, TVA disclosed the six additional documents to EPI, provided it with a revised draft *Vaughn* index, and provided it with additional information regarding the information being withheld and the bases for the withholdings. (*Id.* ¶ 27 & Attach. 2.)

On April 14, 2023, EPI provided TVA with a list of 10 additional documents responsive to FOIA Request 109 that EPI contended were still at issue. (*Id.* ¶ 28.) TVA added those 10 documents to the at issue list and, on April 24, 2023, asked EPI whether it would agree to a

6

stipulation narrowing the documents at issue to the 93 documents identified by EPI. (*Id.*) On May 2, 2023, EPI advised TVA that it would not agree to narrow the documents at issue. (*Id.*)

Subsequently, TVA asked McGuireWoods to re-review the withheld documents. (*Id*. ¶ 29.) McGuireWoods did so and advised TVA that it was withdrawing objections in whole or in part to four documents. In light of McGuireWoods' withdrawal of objections to those documents, for which TVA had no separate objections, TVA disclosed the documents on June 9, 2023. (*Id.*)

## IV.     EPI's FOIA Request 208

On September 16, 2021, as amended by a subsequent email sent on February 15, 2022, EPI submitted FOIA Request 208 seeking TVA's "liability (operations)" insurance policy. (Eller Decl. ¶ 33.) TVA's FOIA Officer identified the following insurance policy underwritten by AEGIS as responsive to FOIA Request 208: Excess Liability Insurance Policy No. XL5045111P ("TVA-AEGIS Policy"). (*Id.* ¶ 34.) At that time, TVA had reason to believe that the TVA-AEGIS Policy was exempt from disclosure under FOIA Exemptions 4 and 5 because it contained commercial or financial information belonging to AEGIS that was privileged or confidential as well as information protected by the government confidential commercial information privilege (*Id.* ¶ 35; Declaration of Kirk Kelley ("Kelley Decl.") ¶ 11.)

As required by TVA's FOIA regulations, 18 C.F.R. § 1301.8, TVA's FOIA Officer notified AEGIS of FOIA Request 208 and provided AEGIS with a redacted copy of the TVA-AEGIS Policy. (Eller ¶ 36; Declaration of Martin Gaffney ("Gaffney Decl.") ¶ 5 & Attach. 1.) AEGIS responded with a written statement objecting to the disclosure of the redacted sections of the TVA-AEGIS Policy as "confidential commercial and financial information [of AEGIS], or otherwise considered competitively sensitive." (Eller Decl. ¶ 37; Gaffney Decl. ¶ 6 & Attach. 2.)

TVA considered AEGIS' objection and, based on that objection and TVA's own determination that certain information in the TVA-AEGIS Policy was exempt under FOIA Exemptions 4 and 5, and because TVA foresaw that disclosure was likely to harm interests protected by FOIA Exemptions 4 and 5, TVA determined that it would withhold that information pursuant to the applicable FOIA exemptions. (Eller Decl. ¶ 38.) On May 20, 2022, TVA responded to EPI, providing it with a redacted copy of the TVA-AEGIS Policy and informing EPI that sections of the Policy were being withheld under FOIA Exemptions 4 and 5. (*Id.* ¶ 39.)[2]

On July 11, 2022, EPI administratively appealed TVA's initial determination as to FOIA Request 208. (*Id.* ¶ 40.) On August 4, 2022, TVA affirmed the FOIA Officer's initial determination and denied EPI's appeal with a statement of reasons explaining the basis for the denial, 18 C.F.R. § 1301.9. (*Id.* ¶¶ 41-47.) On September 8, 2022, EPI filed the Amended Complaint challenging TVA's determination that the confidential commercial and financial information of AEGIS and TVA in the TVA-AEGIS Policy was properly withheld under Exemptions 4 and 5. (Am. Compl., Doc. 19.)

### STANDARD OF REVIEW

In FOIA cases, "district courts typically dispose of [such] cases on summary judgment before a plaintiff can conduct discovery." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) (cleaned up). The court must first determine whether the agency has made "reasonable efforts to search for the records" requested by the plaintiff, *see* 5 U.S.C. § 552(a)(3)(C),[3] and if an agency's search locates records responsive to a request, the court determines whether the

---

[2]    A copy of the redacted TVA-AEGIS Policy is included in Attachment 2 to the Gaffney Declaration.

[3]    EPI's Amended Complaint does not challenge the adequacy of TVA's search with regard to either FOIA Request.

government has properly withheld records or information under any of FOIA's exemptions, *see* 5 U.S.C. § 552(a)(4)(B).

An agency bears the burden of justifying its non-disclosure, and it sustains this burden by submitting detailed affidavits identifying the documents and information at issue and the reasons why a claimed exemption applies. *See* 5 U.S.C. § 552(a)(4)(B); *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994). An agency may meet this burden by relying on declarations of government officials, which are accorded a presumption of good faith. *See Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994); *Carney,* 19 F.3d at 812 (same). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Rugiero*, 257 F.3d at 544 (citation omitted). "The Court may grant summary judgment based solely on the agency's declarations if they are not contradicted by contrary record evidence or by evidence of the agency's bad faith." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F.Supp.3d 97, 108 (D.D.C. 2021).

## ARGUMENT

TVA has complied with FOIA and TVA's FOIA regulations, 18 C.F.R. §§ 1301.1–.12, with respect to the FOIA Requests and has met its burden by providing reasonable justifications explaining why the information was properly withheld under FOIA Exemptions 4, 5 and 6. (Eller Decl. ¶¶ 8-49.) TVA describes the basis for the application of the Exemptions to each FOIA Request below and in the Declarations of Buddy Eller, Maria Gillen and Kirk Kelley of TVA, the Declaration of Makram Jaber of McGuireWoods, and the Declaration of Martin Gaffney of AEGIS. Additional information on the exemptions and withholdings with regard to FOIA Request 109 is set forth in the *Vaughn* Index that is Attachment 3 to the Eller Declaration. Further, as

9

explained below and in the accompanying declarations, disclosure of the information withheld would foreseeably harm important interests protected by the applicable FOIA exemptions.

**I.     TVA's Decision to Withhold Exempt Information in Response to FOIA Request 109 Should Be Upheld.**

**A.     TVA Properly Withheld Information of McGuireWoods, the CLG and PGen Pursuant to FOIA Exemption 4.**

TVA properly withheld commercial or financial information that is privileged or confidential submitted to TVA by McGuireWoods as part of McGuireWoods' legal representation of TVA, including the law firm's representation of TVA on an individual matter, the Clean Air Act ("CAA") Regulatory and Compliance matter, and representation of TVA as a member in two client groups: the CLG and PGen. (Jaber Decl. ¶¶ 4-7, 14-24.)

The documents responsive to FOIA Request 109 relate to McGuireWoods' only product—the provision of legal services and the law firm's methods and approach for providing legal services. (*Id.* ¶¶ 14-15.) All documents responsive to FOIA Request 109 arose in the context of either an established attorney-client relationship between McGuireWoods and TVA, an established attorney-client relationship between McGuireWoods and the CLG or PGen, or a prospective attorney-client relationship. (*Id.*) McGuireWoods keeps all confidential information exchanged between its lawyers and its clients or prospective clients, such as the information at issue here, closely held and private. (*Id.*) Maintaining the confidentiality of this information is important to McGuireWoods' business and competitive interests, as well as McGuireWoods' ethical duties as a law firm. (*Id.*) The information related to the CLG and PGen is also commercially valuable and confidential as to each group, respectively, as the CLG and PGen each have a commercial interest in their activities, operations, and membership. (*Id.*)

10

McGuireWoods routinely treats the following types of information relating to its client groups as privileged and/or confidential: (a) the identity of McGuireWoods' clients who are members of its client groups, unless the members of the client group or the client group have otherwise made them public; (b) attorney-client communications reflecting counsel's selection of legal and regulatory developments and actions relevant to the client group; legal analysis of, commentary on, and guidance for these selected developments and actions; and the significance of these legal and regulatory developments for members' operations, including for compliance; (c) information about the formation, operations, budget, scope, and substantive content communicated between attorneys for these client groups and their members; (d) information on McGuireWoods' business strategy related to the attorneys' fees it charges for these legal services; and (e) the identity of potential members of McGuireWoods' client groups. (*Id.* ¶ 24.)

Accordingly, upon TVA's review of McGuireWoods' objection to production of these records, TVA withheld or redacted confidential commercial of financial information from the following categories of documents pursuant to FOIA Exemption 4:

***Documents related to the CLG***, including, (a) CLG updates and (b) operational communications. (Jaber Decl. ¶¶ 26-33.) These documents include attorney analysis, advice, commentary, and guidance on climate-related regulatory and litigation developments tailored to the common interests of the CLG members. (*Id.* ¶¶ 27-29.) The documents also include information relating to the CLG's choice of counsel, the identity of members and potential members of the CLG (and prospective clients of McGuireWoods), attorneys' fees, and discussions about the content of the CLG By-Laws. (*Id.* ¶ 31.) Disclosure of this information would disclose McGuireWoods' confidential advice to the CLG about the CLG's operations, membership, and

dues, information which is also confidential as to the CLG, (*id.* ¶¶ 27-29, 31), and such disclosure would be competitively harmful to McGuireWoods and the CLG, (*id.* ¶¶ 29, 31).

***Documents related to PGen***, including, (a) communications with clients regarding formation and incorporation of PGen, (b) communications with PGen (post-incorporation), and (c) communications with prospective clients. (*Id.* ¶¶ 34-39.) These documents include legal advice provided by McGuireWoods to PGen about PGen's formation, incorporation, PGen's purpose, strategy, scope, governance (voting), operations (website and naming discussion), budget, and dues. (*Id.* ¶ 35.) The documents also consist of draft articles of incorporation, draft by-laws, draft structures and procedures, draft talking points, draft and final informational slides intended for potential PGen members, budget templates, proposed dues structures for PGen members, and lists of potential PGen members, and PGen's strategy about outreach to potential members. (*Id.* ¶¶ 34-39.) Disclosure of the withheld information would reveal the details of McGuireWoods's legal advice regarding the formation and incorporation of PGen, including McGuireWoods' strategy with respect to the operations and processes of PGen, (*id.* ¶¶ 35, 38), and such disclosure would be competitively harmful to McGuireWoods and PGen, (*id.* ¶¶ 37, 38).

***Documents related to the CAA Regulatory Information and Compliance matter***, including, (a) retention negotiations and (b) legal communications. (*Id.* ¶¶ 41-43.)[4] These documents include confidential communications related to contract negotiations such as McGuireWoods' proposed rate to TVA for this matter as well as legal advice and guidance McGuireWoods provided to TVA. (*Id.* ¶¶ 42-43.) The documents also include confidential financial information such as corporate bank account information. (*Id.* ¶ 42.) Disclosure of these

---

[4]     FOIA Request 109 did not request documents related to the Utility Air Regulatory Group ("UARG") and none of the documents responsive to FOIA Request 109 relate to that group.

documents would reveal privileged and confidential information related to McGuireWoods' legal representation of TVA (*id.* ¶ 42), and be competitively harmful to McGuireWoods, (*id.).*

The withheld information described above and in the Jaber Declaration satisfies the requirements of Exemption 4, that is "commercial or financial information [and] obtained from a person and privileged or confidential[,]" 5 U.S.C. § 552(b)(4).

***The withheld and redacted information is commercial or financial.*** The term "commercial or financial" in Exemption 4 "reaches . . . broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006); *see also, e.g., Am. Airlines v. Nat'l Mediation Bd*., 588 F.2d 863, 870 (2d Cir. 1978) ("'[c]ommercial' surely means [information] . . . dealing with commerce").

The withheld information of McGuireWoods relates to the commercial relationship between McGuireWoods, a law firm in the business of providing legal services to its clients, and its clients, which include TVA, the CLG and PGen, as well as prospective clients. (Jaber Decl. ¶¶ 4, 6-8, 14-16, 34, 37, 38.) The withheld information also relates to the commercial operations of the CLG and PGen. (*Id.* ¶ 15.) Courts have found this type of information—pertaining to the exchange of services and the making of a profit—to be commercial or financial information under Exemption 4. *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 58 F.4th 1255, 1265 (D. D.C. 2023) (Exemption 4 covers information that, "in and of itself, demonstrably pertains to the exchange of goods or services or the making of a profit"). Moreover, records that reveal the "basic commercial operations" for a company, such as "rates, terms, pricing and business strategy," as well as information which constitutes a company's "playbook" of its projects, is commercial information. *S. Env't L. Ctr.*, 2023 WL 2387360, at *7-8; *M/A Com Info. Sys., Inc. v.*

*U.S. Dep't of Health and Hum. Servs.*, 656 F.Supp. 691, 692 (D.D.C. 1986) (draft documents showing accounting and other internal procedures are commercial information); *McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 180 F.3d 303, 306-07 (D.C. Cir. 1999) (line-item pricing information of submitter is confidential commercial or financial information).

Here, the withheld information reveals the basic commercial operations of McGuireWoods, a law firm, as well as its approach as to how it provides these legal services to its clients. (Jaber Decl. ¶ 15; *see generally, id.* ¶¶ 26-43.) The withheld information also reveals the basic operations of how the CLG and PGen operate, potential members, and how the groups provide services to their members. (*Id.* ¶¶ 15-17.) Finally, disclosure of this information would cause competitive harm to McGuireWoods, the CLG and PGen and expose them to competitive disadvantages. (*Id.* ¶¶ 23, 31, 37, 38, 42.)

EPI's claim that the information is not commercial is based on the incorrect premise that these records "relate[] to TVA's association with a third party" and "indicat[e] relationships with and influence of outside parties," such as "business email address of those contracting with the government." (Doc. 25 at PageID#190, 206-07.) This misconstrues the relationship between McGuireWoods, TVA, the CLG, and PGen. McGuireWoods provides legal services to the CLG, PGen, and TVA, and the documents responsive to FOIA Request 109 are exchanged in the course of those legal services. (Jaber Decl. ¶ 4; Declaration of Maria Gillen ("Gillen Decl.") ¶¶ 2, 6-21).)

EPI's piecemeal selection of disclosed information also does not show the information is not commercial. (Doc. 25 at PageID##206-07 (discussing No. 356).)[5] The disclosed portion of Doc. No. 356 pertains to scheduling a PGen meeting. The withheld portions of No. 356 pertain to the identity of potential PGen members and prospective clients of McGuireWoods and information

---

[5]    (*See* Eller Decl., Attach. 3, *Vaughn* Index at Doc. No. 356.)

14

about PGen incorporation and operations, all of which is exempt because it constitutes information about the legal services provided and operations of McGuireWoods and PGen, and is information these entities consider confidential, private and closely held. (Jaber Decl. ¶¶ 35-38.) Thus, this email does not show that the information is not commercial; rather, it illustrates how non-exempt factual information was segregated and disclosed from exempt information.

*The withheld or redacted information was obtained from a person.* The phrase "obtained from a person" includes information obtained from corporations as well as a wide range of other entities. *See* 5 U.S.C. § 551(2) ("'person' includes an individual, partnership, corporation, association, or public or private organization other than an agency"). Information is "obtained from a person" for purposes of Exemption 4 if "such information was supplied to the agency by a person." *Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F.Supp.3d 109, 123 (D. D.C. 2015). Limited liability corporations, like McGuireWoods, are considered "persons" for purposes of Exemption 4. *See* 5 U.S.C. § 551(2). The withheld or redacted information was provided to TVA by McGuireWoods in the course of McGuireWoods' legal representation of TVA, the CLG and PGen. McGuireWoods is therefore a "person" for purposes of Exemption 4.

EPI's sole argument that McGuireWoods is not a "person" is because the text of an email, described in the *Vaughn* Index at No. 365,[6] reflects Mr. Jaber asking Carolyn Koroa, a TVA employee, to go through a pre-incorporation PGen presentation titled "FINAL slides for

---

[6]     The document EPI attached to the Tait Declaration (Doc. 27-1 at PageID#273), is a copy of the document from TVA's initial response to EPI's FOIA Request 109. On January 13, 2023, as part of TVA's additional production of documents, TVA produced this same document to EPI with several redactions removed, including the name of the slide presentation. *See* Attach. 1, hereto; (Eller Decl., Attach. 3, *Vaughn* Index at Doc. No. 365.)

Informational Meeting on PGAC"[7] that Mr. Jaber forwarded to Ms. Koroa. Mr. Jaber suggests that Ms. Koroa "go through the presentation" and "do" a particular subset of slides. In short, Mr. Jaber was simply asking Ms. Koroa to review a particular set of slides, and thus, this email simply illustrates one way in which McGuireWoods, a person under Exemption 4, submitted information to TVA.

***The withheld or redacted information is privileged or confidential.*** "Commercial or financial" information is considered "confidential" under Exemption 4 "whenever it is customarily kept private, or at least closely held, by the person imparting it." *Argus Leader*, 139 S. Ct. at 2363. Information is customarily kept private under Exemption 4 if it is not "readily available" outside of the agency and is "closely held" by its owner. *See Varnum LLP v. U.S. Dep't of Labor,* No. 1:18-cv-1156, 2021 WL 1387773, at *4-5 (W.D. Mich. Mar. 15, 2021); *see also Gellman v. Dep't of Homeland Sec.,* No. 16-CV-635 (CRC), 2020 WL 1323896, at *11 (D.D.C. Mar. 20, 2020) (when there is "no suggestion in the record that [documents] are readily available outside of the agency. They are thus 'closely held' by the vendor").

The withheld information identified above is confidential because McGuireWoods typically keeps this information private and closely held. (Jaber Decl. ¶¶ 14-24.) Most importantly, this information is kept confidential because, as a law firm, McGuireWoods has an ethical duty to maintain the confidentiality of information exchanged with clients and prospective clients. (*Id.* ¶¶ 8, 14-15.) If clients or prospective clients do not have an expectation that McGuireWoods will keep their communications confidential, there is likely to be an adverse effect on McGuireWoods' current clients' decisions to retain McGuireWoods as counsel and a chilling effect on prospective

---

[7] PGAC, or Power Generators Air Coalition, was one of the ways in which the incorporators of PGen used to refer to this group before it was incorporated.

16

Case 3:22-cv-00220-TAV-DCP   Document 31   Filed 06/12/23   Page 22 of 43
PageID #: 376

clients who may be considering McGuireWoods as their legal counsel. (*Id.* ¶¶ 16-17.) It also will have an adverse effect on the CLG and PGen's existence—their ability to attract and retain members. (*Id.* ¶ 16.) The withheld information has also been designated as confidential in confidentiality agreements within the CLG and PGen's governing documents and McGuireWoods, along with the members of the CLG and PGen (including TVA), are bound by these agreements. (*Id.* ¶¶ 18-21.) McGuireWoods and TVA made similar promises of confidentiality in the legal services contract with regard to the CAA Regulatory and Compliance matter. (*Id.* ¶ 22.) McGuireWoods also advises clients not to disseminate or share confidential information, utilizes password protected document sharing systems/websites, and designates documents which contain confidential and privileged information as such, whether in the subject line, a heading, or a watermark on a draft document. (*Id.* ¶ 17; *see, e.g.,* Eller Decl., Attach. 3, *Vaughn* Index. Nos. 001, 032, 042, 055, 205.)

Information is also "privileged or confidential" for purposes of Exemption 4 if the information is privileged by virtue of the attorney client privilege. *Miller Anderson Nash Yerke & Weiner v. U.S. Dep't of Energy*, 499 F.Supp. 767, 770-71 (D. Ore. 1980). The documents with withheld information responsive to FOIA Request 109 are both privileged and confidential. Thus, the withheld information easily satisfies the *Argus Leader* definition of "confidential."

### B. TVA Properly Withheld Information Protected by the Attorney-Client Privilege Pursuant to FOIA Exemption 5

The information withheld in response to FOIA Request 109 also includes information protected by the attorney-client privilege, which falls within FOIA Exemption 5. *See Sears, Roebuck*, 421 U.S. at 149. The attorney-client privilege protects "communications between attorneys and clients." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). Animating this exemption for the attorney-client privilege is the desire to not "force the United States into a

17

uniquely disadvantaged litigation posture." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010). The Supreme Court agrees: "[To allow a party to] obtain through the FOIA material that is normally privileged would create an anomaly in that the FOIA could be used to supplement civil discovery. We have consistently rejected such a construction of the FOIA." *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801 (1984).[8]

McGuireWoods provides legal representation to TVA through TVA's membership in the CLG, PGen, and individually through the CAA Regulatory Information and Compliance matter. (Jaber ¶ 4; Gillen ¶ 2.) TVA personnel who seek legal advice and counsel from McGuireWoods attorneys, including those representing the CLG and PGen, are "clients" for purposes of the attorney-client privilege. (Jaber Decl. ¶¶ 5-8; Gillen Decl. ¶ 2.) Communications between the CLG members and attorneys, the PGen members and attorneys, and TVA personnel and McGuireWoods attorneys, relate to legal advice and guidance and are confidential pursuant to confidentiality agreements. (Jaber Decl. ¶¶ 18-22 (describing confidentiality agreements and obligations); Gillen Decl. ¶¶ 6, 11, 19-21 (discussing confidentiality).) A description of the information protected by the attorney-client privilege with regard to documents responsive to FOIA Request 109 is below and is explained in more detail in the Jaber and Gillen Declarations.

The documents related to the CLG contain communications from the CLG's counsel to the CLG members relating to attorney analysis and advice on climate-related regulatory and litigation developments in which the CLG members share a common interest and which, if disclosed, would reveal confidences exchanged between the CLG members and their counsel as part of the joint

---

[8]     It is well-settled that the attorney-client privilege applies to communications between an attorney and entities like corporations and government agencies and their associated employees. *Upjohn*, 449 U.S. at 390; *Pub. Emps. for Env't Resps. v. EPA*, 211 F.Supp.3d 227, 231 (D.D.C. 2016) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("[T]he 'client' is the agency and its officials.")).

representation. (Gillen Decl. ¶¶ 6-8.) They also contain information related to the CLG's legal representation of its members, such as information about the CLG By-Laws. (*Id.* ¶ 9.) The entities which retained McGuireWoods to provide legal advice on the formation and incorporation of PGen and the documents related to PGen contain legal advice and guidance from McGuireWoods attorneys regarding formation and incorporation, including draft and red-line incorporation documents and presentations, as well as confidential communications between PGen attorneys and PGen members following the incorporation of PGen. (*Id.* ¶¶ 11-13.) The documents related to the CAA Regulatory Information and Compliance matter include information concerning TVA's motivations for retaining McGuireWoods as legal counsel with regard to Clean Air Act regulatory programs as well as discussions between a TVA attorney and a McGuireWoods attorney about provisions of the legal services contract and red-line drafts of a contract. (*Id.* ¶¶ 17-19.) The documents also contain legal advice and guidance McGuireWoods gave to TVA including attorney commentary, analysis, advice, and guidance on Clean Air Act regulatory developments. (*Id.* ¶ 20.) This advice was provided to TVA clients and attorneys on a variety of Clean Air Act regulatory topics and all advice is informed by TVA's confidential communications to McGuireWoods regarding TVA's specific needs and request for legal analysis. (*Id.*)

EPI claims that the attorney-client privilege does not apply to documents and information responsive to FOIA Request 109 because the documents were "shared with any third parties, even if they are also clients of McGuireWoods." (Doc. 25 at PageID#198.) Again, EPI misunderstands the nature of the relationship between McGuireWoods, and the CLG and PGen. McGuireWoods is a law firm retained by the CLG and PGen to provide legal services. (Gillen Decl. ¶¶ 2, 6, 11.) The relationship between these entities is that of attorney and client. (*Id.*) EPI also misunderstands the relationship between TVA and the members of the CLG and PGen. TVA is a member of the

CLG and PGen, and the CLG and PGen are clients of McGuireWoods. (Jaber Decl. ¶ 4.) Members of the CLG and PGen are represented by McGuireWoods and communications among the members are subject to an attorney-client privilege held jointly by members of the CLG and PGen, respectively. (*See, e.g.,* Gillen Decl. ¶¶ 10, 22.) Thus, EPI's argument that documents are not privileged because they are "shared with any third parties" is simply incorrect. EPI also claims that information is not privileged because it was "not specifically provided in anticipation of litigation[.]" (Doc. 25 at PageID#198.) The attorney-client privilege is not so narrow—the privilege protects all confidential communications between client and attorney made for the purpose of receiving or obtaining legal advice, not merely those made in anticipation of litigation. *See generally, Upjohn*, 449 U.S. at 389 (the purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client").

EPI's argument that the CLG Updates sent by McGuireWoods to CLG members containing regulatory and litigation updates pertinent to the CLG are not privileged because the emails were sent to "multiple clients" or constitute "ordinary business development" (Doc. 25 at PageID#197), is also incorrect. The updates were not sent to "multiple clients," they were sent to the CLG and consist of legal analysis and guidance made in confidence and in the context of that attorney-client relationship. The communications are also clearly designated "**PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION - ATTORNEY WORK PRODUCT**" in a heading at the top of each and there is no evidence they were distributed beyond

the CLG.[9] (Gillen Decl. ¶¶ 7, 10; *see, e.g.,* Eller Decl., Attach 3, *Vaughn* Index, Nos. 001, 006, 011.)

### C. TVA Properly Withheld Personally Identifiable Information Pursuant to FOIA Exemption 6.

To evaluate whether a request for information is within the scope of Exemption 6, which "bars disclosure when it would amount to an invasion of privacy that is to some degree 'unwarranted,' a court must balance the public interest in disclosure against the interest Congress intended the exemption to protect." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (cleaned up).

Here, EPI has conceded the first part of the Exemption 6 test,[10] which leaves the only question of whether disclosure would "be a clearly unwarranted invasion of personal privacy." *Schell v. U.S. Dep't of Health & Hum. Servs.*, 843 F.2d 933, 937 (6th Cir. 1988) (internal quotation marks omitted). This requires balancing the "individual's right to privacy" and the "public's right of free access to government information or public records." *Diemert*, 218 F. App'x at 482. And "the clear majority of circuits have employed a two prong approach: (1) identification of the

---

[9] The case cited by EPI for this proposition, *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2022 WL 2383543 (S.D. Ohio July 1, 2022), supports the application of the attorney-client privilege here. *TERA* specifically recognizes that attorneys may communicate with multiple clients without waiving the privilege and when the communications are made in the context of an attorney-client relationship, for the purpose of rendering legal advice, and in confidence (as they were here) they are protected from disclosure. *Id.*, 2022 WL 2383543 at **4-5. In *Tera*, there was no evidence that the recipients of the email communication were in an attorney-client relationship with the attorney and the email itself contained no language stating that it should be considered confidential or that it should be protected from disclosure. *Id.*

[10] EPI does not contend that the the records are not 'similar files' within the meaning of Exemption 6. Nor can they. *See U.S. Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 595, 602 (1982) (interpreting Exemption 6 broadly to cover all "Government records on an individual which can be identified as applying to that individual").

privacy interest at stake; and (2) specification of the public interest in disclosure." *Heights Comm. Cong. v. Veterans Admin.*, 732 F.2d 526, 529 (6th Cir. 1984.)

"The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." *Nat'l Day Laborer Organizing Network v. U.S. Immigr. & Customs Enf't*, 811 F.Supp.2d 713, 737 (S.D. N.Y. 2011). If the requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989).[11] Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Bldgs v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Reps. Comm.,* 489 U.S. at 773). In the absence of any identified public interest of the sort the FOIA was intended to serve, the Court's inquiry must end, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

The information TVA withheld on the basis of Exemption 6 relates to either personal information of non-agency individuals (names and contact information such as email addresses and phone numbers) who are McGuireWoods clients or prospective clients or mobile phone

---

[11]     Congress did not intend FOIA to facilitate "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Dep't of Justice v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 772–73 (1989) (quotations omitted).

numbers of TVA and McGuireWoods employees and attorneys.**12** (Eller Decl. ¶¶ 21-22; Jaber Decl. ¶¶ 24, 33, 40, 45.) EPI claims this information is not exempt because the public interest outweighs any privacy interest in names and email addresses of individuals "doing business with the government." (Doc. 25 at PageID#212.)**13** EPI has, again, missed the point. The personal information TVA has withheld is that of individuals who work for companies who are members, or prospective members, of the CLG and PGen. (Eller Decl. ¶ 21.) PGen members are publicly available. (Jaber Decl. ¶ 7.) The identity of the CLG members are confidential under the CLG By-Laws and withheld under Exemption 4. (*Id.* ¶ 27.) The names of the individuals and their contact information who work for members of the CLG and PGen does not advance any understanding of TVA operations and therefore it is of no public interest. *See Smith v. Dep't of Labor*, 798 F.Supp.2d 274, 283 (D.D.C. 2011) ("Generally, personal identifying information such as a person's name, address, [and] phone number . . . may be protected under Exemption 6" and finding protection of email address valid).

**D.  Disclosure of the Requested Information Would Cause Foreseeable Harm.**

TVA's withholding of confidential commercial or financial information of McGuireWoods, the CLG and PGen pursuant to Exemption 4 satisfies the FIA. Since its enactment, courts have been divided on the application of the foreseeable harm requirement to confidential commercial and financial information. Some courts hold that the very nature of such private information "necessarily satisf[ies] FIA's foreseeable harm requirement." *N.Y. Times Co. v. U.S. Food and Drug Admin.*, 529 F.Supp.3d 260, 288 (S.D.N.Y. 2021); *see also Am. Small Bus.*

---

**12**    EPI does not appear to challenge TVA's withholding of mobile phone numbers of TVA and McGuireWoods employes.

**13**    TVA *has* disclosed the name of the entity contracting with the government, namely, McGuireWoods who provides legal services to TVA.

*League v. U.S. Dep't of Def.*, 411 F.Supp.3d 824, 836 (N.D. Cal. 2019) (holding that the FIA foreseeable harm requirement was satisfied because, by definition, disclosure of confidential information would destroy the confidential nature of the information at issue). Other courts have held that an agency may satisfy the foreseeable harm requirement by showing that disclosure would cause "genuine harm to economic or business interests, and thereby dissuad[e] others from submitting similar information to the government." *Ctr. for Investigative Reporting v. U.S. Customs and Border Prot.*, 436 F.Supp.3d 90, 113 (D.D.C. 2019) (cleaned up).

Here, this Court need not resolve the differences in approach because TVA easily satisfies the FIA's foreseeable harm requirement under both approaches. As to the first approach, "the plain and ordinary meaning of Exemption 4 indicates that the relevant protected interest is that of the information's confidentiality—that is, its private nature. Disclosure would necessarily destroy the private nature of the information, no matter the circumstance." *Am. Small Bus. League*, 411 F.Supp.3d at 836. The information in documents responsive to FOIA Request 109 was exchanged in the context of an attorney-client relationship or a prospective one, is subject to confidentiality obligations, and is closely-held by McGuireWoods, the CLG, and PGen. Disclosure of this privileged and confidential information would destroy the interest in confidentiality under Exemption 4, thereby satisfying the first approach to the FIA. (Eller Decl. ¶ 19.)

The second approach is also satisfied. McGuireWoods, the CLG and PGen would be harmed by disclosure of this privileged and confidential information because disclosure would impair McGuireWoods' ability to keep its current clients and deter prospective clients from retaining McGuireWoods as counsel. (Eller Decl. ¶ 19.) The CLG and PGen will similarly be harmed because members will not want to join groups where there is no assurance of confidential communications. This will have an adverse effect on the CLG's and PGen's very existence – their

24

ability to attract and retain members. (*Id.*) Further, public disclosure would reveal McGuireWoods' methods and approach for providing legal services to its clients and client groups, information which would have substantial commercial value to its competitors. (*Id.*; *see also* Jaber Decl. ¶¶ 23, 28, 29, 31, 37, 38, 42.) *See S. Env't L. Ctr.*, 2023 WL 2387360, at \*12 (finding foreseeable harm when disclosure would divulge information about project development, strategies).

TVA's interests are also harmed by the disclosure of McGuireWoods, the CLG's and PGen's confidential commercial or financial information. *Critical Mass*, 975 F.2d at 877–78 (Exemption 4 ensures that agencies will continually be able to obtain necessary and reliable commercial and financial information from outside the government). If the confidential information submitted to TVA in the context of TVA's membership in the CLG and PGen—information which is critical to TVA's mission—were disclosed as a matter of course, companies, especially law firms, would be deterred from representing TVA and providing it legal advice, or allowing TVA to join groups like the CLG and PGen. (Eller Decl. ¶ 19.) This would chill TVA's access to information in the highly specialized areas of environmental law and climate. (Gillen Decl. ¶¶ 22-25.)

TVA's withholding of information subject to the attorney-client privilege pursuant to Exemption 5 also satisfies the FIA. Courts have consistently emphasized the sound public policy underlying Exemption 5 covering attorney-client privileged communications, "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn,* 449 U.S. at 389; *Fisher v. United States*, 425 U.S. 391, 403, (1976) (the privilege encourages "clients to make full disclosure to their attorneys."). A government agency, like a private party, "needs . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." *In re Lindsey*, 148 F.3d 1100,

25

1105 (D.C. Cir. 1998). The disclosure of the information protected by the attorney-client privilege would undermine one of the bedrock principles of the legal profession, the attorney-client privilege. (Eller Decl. ¶ 20.) If the information subject to the attorney-client privilege were released, the ability of TVA personnel to have frank and open communications with TVA's attorneys would be destroyed, seriously harming and hampering TVA's fully informed decision making. (*Id*.) This, in turn, would chill TVA's access to obtaining legal advice and counsel in areas important to TVA's operations and mission. (*Id.*; Gillen Decl. ¶¶ 22-25.)

With regard to FOIA Exemption 6, the involuntary disclosure of non-agency individuals' contact information is likely to open them up to unsolicited, potentially harassing contact. If this personal contact information were disclosed to EPI, there is a substantial likelihood that this information would not just remain with EPI but is likely to be publicly available on EPI's website. (Eller Decl. ¶ 22.) This poses a harm to the privacy interests of these individuals. (*Id*.)

Thus, in light of the obvious and foreseeable harm that would result from the disclosure of the withheld information in response to FOIA Request 109, TVA correctly determined that FOIA Exemptions 4, 5 and 6 justified TVA's withholdings.

## II.      TVA's Decision to Withhold Exempt Information in Response to FOIA Request 208 Should Be Upheld.

The TVA-AEGIS Policy contains confidential commercial or financial information of AEGIS and confidential commercial or financial information of TVA. The information redacted from the TVA-AEGIS Policy is therefore protected as confidential commercial of financial

information pursuant to Exemption 4 and, in the alterative, protected as confidential commercial information of the government pursuant to Exemption 5.[14]

### A. TVA Properly Withheld Information of AEGIS Pursuant to FOIA Exemption 4.

The information redacted from the TVA-AEGIS Policy is commercial or financial information of AEGIS that is closely-held, not publicly disclosed, and treated as confidential by both TVA and AEGIS. Thus, all requirements of Exemption 4 are satisfied.

***The withheld and redacted information is commercial or financial.*** AEGIS is a mutual insurance company whose product is its insurance policies. (Gaffney Decl. ¶¶ 1, 4, 7.) The individualized pricing and coverage terms in AEGIS' insurance policies manifest the insurance company's proprietary underwriting process as well as its corporate business strategy. (*Id.* ¶ 8.) This includes decisions with regard to expanding or contracting the types of coverage it will offer insureds and its approach to managing new and emerging risks. (*Id.* ¶¶ 7, 8.)

AEGIS has invested decades and millions of dollars in developing the pricing systems and terms of coverage contained in the TVA-AEGIS Policy. (*Id.* ¶ 9.) This type of information, which would reveal AEGIS' basic commercial operations including underwriting strategies and strategy for mitigation of risk, constitutes commercial or financial information of AEGIS. *S. Env't L. Ctr.*, 2023 WL 2387360, at \*7-\*8 (information in a precedent agreement which reveals "basic commercial operations" for a company, such as rates, terms, pricing and business strategy, is commercial information); *Pub. Citizen Health Rsch. Grp. v. U.S. Health and Hum. Serv.*, 975 F.Supp.2d 81, 105 (D.D.C. 2013) (business operations and decisions are commercial). The terms

---

[14] If the Court finds the information redacted from the TVA-AEGIS Policy is protected by Exemption 4, the Court need not reach whether the information is also protected by FOIA Exemption 5.

of the TVA-AEGIS Policy itself, which AEGIS does not publish or otherwise make known (Gaffney Decl. ¶ 11), are also proprietary and commercial. *See, e.g., Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 567 F.Supp.3d 204, 212–13 (D.D.C. 2021) (contract terms and pricing are confidential).

AEGIS has a commercial interest in the redacted information because the disclosure of this information would cause commercial harm to AEGIS by allowing other insurers to misappropriate its work product and compromise its relationship with other insureds without having to incur the cost of developing their own strategies and formulas for managing risk. (Gaffney Decl. ¶¶ 9, 10.) *See, e.g., Baker & Hostetler LLP*, 473 F.3d at 320 ("U.S. lumber companies have a 'commercial interest' in . . . letters [that] describe favorable market conditions for domestic companies, and their disclosure would help rivals to identify and exploit those companies' competitive weaknesses."); *Zirvi v. U.S. Nat'l Insts. of Health*, No. CV 20-7648, 2022 WL 1261591, at *5 (D.N.J. Apr. 28, 2022) ("[The provider of information] has a 'commercial interest' in its own manufacturing and design process."); *Landfair v. U.S. Dep't of Army*, 645 F.Supp. 325, 327 (D.D.C. 1986) ("Examples of items generally regarded as commercial or financial information include: business sales statistics, research data, technical designs, overhead and operating costs, and information on financial condition."). Moreover, prospective policyholders who become aware of the specific pricing, terms and conditions offered to TVA in the TVA-AEGIS Policy could develop unreasonable expectations that could harm AEGIS' negotiations with the policyholder, thereby putting AEGIS at a competitive disadvantage when they are negotiating with their policyholders. (Gaffney Decl. ¶ 10.) *S. Env't L. Ctr.*, 2023 WL 2387360, *12 (finding that a showing that disclosure of the terms of a precedent agreement could create unreasonable

28

expectations from future customers and hamper the intervenor's ability to propose terms would harm the intervenor's commercial or financial interests).

***The withheld or redacted information was obtained from a person because AEGIS is a "person" within the meaning of Exemption 4.*** Exemption 4 applies to information contained in government-created documents, including negotiated contracts, when the information was obtained from a person and did not originate within the government. *See, e.g., Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979) (finding that the withheld portions of a report "included, among other things, 'actual costs for units produced,' 'actual scrap rates,' 'break-even point calculations' and 'actual cost data.'" and that " the release of this information would disclose data supplied to the government from a person outside the government." (cleaned up)); *Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health*, 209 F.Supp.2d 37, 45 (D. D.C. 2002) ("While the final royalty rates may reflect negotiation between the agency and the licensee, the licensee still must provide the information in the first instance. Therefore, the Court finds that the agency obtained this information from a person within the meaning of exemption 4.").

AEGIS customizes its individualized insurance policies based on AEGIS' proprietary assessment of the insured's individual risks and circumstances, (Gaffney Decl. ¶¶ 7, 8, 10), and the terms and conditions of the TVA-AEGIS Policy originated with AEGIS (Kelley Decl. ¶ 11). During the negotiation of the TVA-AEGIS Policy, TVA submitted confidential information to AEGIS that AEGIS used to assess TVA' s risk and make an offer as to what coverage, premiums, and terms to offer TVA, AEGIS then proposed such terms to TVA. (*Id.*) *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F.Supp.2d 60, 68 (D.D.C. 2012) (the fact that "information was negotiated" does not "preclude the proper application of Exemption 4, at least in circumstances where the information was initially obtained from outside the agency and was then modified

through negotiations"); *see also S. Env't L. Ctr.*, 2023 WL 2387360, at \*10 (negotiated terms in a contract were by a "person" for purposes of Exemption 4).

***The withheld or redacted information is privileged or confidential.*** Information is "confidential" under Exemption 4 "whenever it is customarily kept private, or at least closely held, by the person imparting it." *Argus Leader*, 139 S. Ct. at 2363. In *Argus Leader*, the Supreme Court did not require express assurances of confidentiality from the party receiving the information. It noted however, that particularly "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366. *See S. Env't L. Ctr.*, 2023 WL 2387360, at \*10 n.5 (confidentiality prong of Exemption 4 is satisfied if the parties' usual course of practice is to keep the information confidential).

AEGIS does not publish or otherwise make publicly known the pricing, terms and conditions it offers to specific insureds such as TVA. (Gaffney ¶ 11.) AEGIS also does not publish any insured's pricing or terms and it shares the information only with parties on a need-to-know basis in order to underwrite the risk and subject to appropriate confidentiality agreements. (*Id.* ¶¶ 11, 12.) Moreover, AEGIS submitted its commercial and financial information to TVA with an understanding that TVA would keep the information private, and TVA, in return, treats it as confidential. (*Id.* ¶ 14; Kelley Decl. ¶ 12.) Thus, the information submitted by AEGIS is confidential within the meaning of Exemption 4.

**B.      TVA Properly Withheld Confidential Commercial Information of the Government Pursuant to FOIA Exemption 5.**

Like FOIA Exemption 4, which applies to third parties who submit confidential information to the agency, FOIA Exemption 5 applies to situations where the disclosure of confidential commercial information *about the agency itself* could cause harm to the agency. *See*

*Merrill*, 443 U.S. at 363 ("the theory behind a privilege for confidential commercial information . . . is not that the flow of advice will be hampered, but that the [entity subject to FOIA] will be placed at a competitive disadvantage"). Thus, this privilege protects information of the government when it enters the marketplace as an ordinary buyer or seller. *See, e.g., Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, 665-66 (1st Cir. 1982) (real estate appraisals generated by the government to help it sell property is confidential commercial information of the government); *Rocky Mountain Wild Inc. v. U.S. Forest Serv.*, No. 18-cv-03065-MEH, 2021 WL 825985, at *22 (D. Col. Mar. 4, 2021) (conference call numbers and passcodes are confidential commercial information of the government). A document, or portions of a document, may be withheld under Exemption 5 where the document contains information "generated in the process of awarding a contract[,]" is "sensitive information not otherwise available," and disclosure would significantly harm the Government's commercial interests. *Merrill*, 443 U.S. at 360-63. Although the rationale for protecting such information may diminish in situations where a one-time contract is awarded or an offer withdrawn (*id.* at 665 n.2), it follows that the privilege must continue so long as the entity maintains the position of an ordinary marketplace participant. *See Taylor-Woodrow Int'l v. U.S. Dep't of Navy*, No. C88-429R, 1989 WL 1095561 (W.D. Wash. Apr. 5, 1989) (protecting the Navy's confidential information after contract awarded for so long as change order proposals affecting terms of contract were being submitted).

In the context of the procurement of insurance, TVA is operating as an ordinary buyer on the insurance marketplace. (Eller Decl. ¶ 45; Kelley Decl. ¶¶ 5-6.) However, TVA also operates in a business sector with unique and new emerging risks, including high-risk events specific to utilities (Eller Decl. ¶ 45; Kelley Decl. ¶ 5), and the market is highly specialized with the insurers that control the pricing (Kelley Decl. ¶ 5). As counterparties to the TVA-AEGIS Policy, the

31

redacted terms reflect the parties' confidential negotiations on pricing, coverage, time frames, definitions of terms, events, and conditions. (*Id.* ¶ 11.) These terms and conditions were generated by the parties' negotiations for the TVA-AEGIS Policy and encapsulate the parties' risk assessment strategy with regard to the reallocation and mitigation of risks at negotiated premiums. (*Id.*) In other words, the redacted coverage and pricing terms in the TVA-AEGIS Policy reflects TVA's bottom line, or the price at which it negotiated for the terms and conditions of the Policy, along with confidential information TVA supplied to AEGIS pursuant to those coverage negotiations. (*Id.*; Eller Decl. ¶ 45.)

The redacted information in the TVA-AEGIS Policy is confidential and sensitive for purposes of TVA and AEGIS' ongoing contractual relationship as well as future contracts for insurance coverage. (Kelley Decl. ¶ 13.) This information, if disclosed, would reveal the details and strategy behind TVA's procurement of insurance coverage, which TVA must do annually, as well as TVA's management of financial risk. (*Id.* ¶¶ 11, 13.) TVA maintains the confidentiality of the information redacted from the TVA-AEGIS Policy by limiting access to it, marking the information as "TVA Confidential," "TVA Restricted," or "TVA Sensitive," requiring non-disclosure agreements, seeking protective orders if any portion of a TVA insurance policy is required to be produced in litigation, and storing confidential information on an encrypted server and utilizing password protected databases. (*Id.* ¶¶ 7-9.) TVA and AEGIS also have a mutual understanding that TVA's confidential information will be kept confidential, as will AEGIS' confidential information, and that mutual understanding is reflected in non-disclosure agreements as well as the parties' general course of practice in their dealings with one another. (*Id.* ¶ 12.)

**C. Disclosure of the Requested Information Would Cause Foreseeable Harm.**

TVA's withholding of confidential commercial or financial information of AEGIS pursuant to Exemption 4 satisfies the foreseeable harm requirement of the FIA.

The first approach courts have taken to foreseeable harm under the FIA is satisfied because the disclosure of AEGIS' confidential and closely-held information would destroy the confidential interest protected by Exemption 4. *Am. Small Bus. League*, 411 F.Supp.3d at 836. The redacted information in the TVA-AEGIS Policy is private, not public, and it is the parties' mutual understanding that it is to be treated as confidential. (Gaffney Decl. ¶ 14; Kelley Decl. ¶ 12.) Disclosure of the redacted information would allow competitors to misappropriate AEGIS' proprietary work product, thereby destroying the submitter's interest in confidentiality that is the foundation of Exemption 4. (Eller Decl. ¶ 44; Gaffney ¶ 9.)

The second approach, which considers whether disclosure would cause harm to economic or business interests of the submitter, is also satisfied. *See Ctr. for Investigative Reporting,* 436 F.Supp.3d at 113. AEGIS will be harmed because if the terms and pricing offered by AEGIS to TVA were readily available to other insurers, competitors could offer an insured the same coverage, at the same or a lower price, without having to incur the expense and burden of developing a competitive underwriting quote, thus harming AEGIS' commercial interests and its competitive position in the insurance marketplace. (Eller Decl. ¶ 44; Gaffney Decl. ¶ 9.) AEGIS' relationship with potential policyholders would also be harmed because if a prospective policyholder knew the terms and prices offered to TVA, the policyholder could develop unreasonable expectations that could substantially harm negotiations and put AEGIS at a competitive disadvantage. (Eller Decl. ¶ 44; Gaffney Decl. ¶ 10.)

The interest protected by Exemption 5 and the confidential commercial information privilege helps to ensure that the government will not be placed at a competitive disadvantage and that the consummation of a contract with the government will not be endangered. *Merrill*, 443 U.S. at 360-63. The FIA is satisfied here because the disclosure of the confidential commercial information in the TVA-AEGIS Policy would place TVA at a competitive disadvantage with regard to TVA's future ability to enter into future insurance agreements with other insurers. (Eller Decl. ¶ 46; Kelley Decl. ¶ 11.) TVA routinely enters the insurance marketplace as a buyer similar to other policyholders, with the goal of finding the best value with the widest coverage at the lowest cost. (Eller Decl. ¶ 45.) Disclosure of the redacted information would reveal the coverage and premiums TVA has agreed to, in essence, its bottom line, and would significantly harm TVA's ability to negotiate future pricing and placement of coverage in the insurance markets, which TVA must do annually when TVA has an insurance policy up for renewal. (*Id.* ¶¶ 45-46; Kelley Decl. ¶ 11.) Disclosure of information that would harm the agency in future contract negotiations when it enters a marketplace as an ordinary buyer is precisely the sort of information that is protected under the confidential commercial information privilege and Exemption 5. *See Hack v. U.S. Dep't of Energy*, 538 F.Supp. 1098, 1103-04 (D.D.C. 1982) (upholding Exemption 5 protection where "there can be no doubt that were cost estimates made public the agency would not be on equal footing . . . at the bargaining table" and finding that "[r]equiring the agency to tip its hand by compelling the disclosure of its cost estimates could destroy all incentive a firm would have to propose a lower price.").

Thus, in light of the obvious and foreseeable harm that would result from the disclosure of the redacted information contained within the TVA-AEGIS Policy, TVA correctly determined that

FOIA Exemptions 4 and 5 justified the withholding of this confidential commercial or financial information of AEGIS and TVA.

### III.     TVA Has Properly Released All Reasonably Segregable Information

When an agency claims an exemption, FOIA requires disclosure of "[a]ny reasonably segregable portion" of the record after deleting the portions which are exempt. 5 U.S.C. § 552(b). But an agency need not disclose records in which the non-exempt information remaining is meaningless, *see Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F.Supp.2d 211, 220-21 (D.D.C. 2005), and an agency need not disclose material that is inextricably intertwined with the exempt material, *see In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *see also Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.,* 567 F.Supp.3d 97, 131 (D.D.C. 2021).

TVA conducted a line-by-line review of each withheld record and released all reasonably segregable factual or non-privileged information. (Eller Decl. ¶¶ 32, 49; *see also* Jaber Decl. ¶¶ 30, 32, 39, 44.) Where records are being withheld in full, the declarations and the *Vaughn* Index explain the basis for why no segregable portions of the record could be released. TVA is therefore entitled to summary judgment that it has complied with its segregability obligations.

### CONCLUSION

Upon the authorities cited and for the reasons stated herein, TVA respectfully requests that this Court deny EPI's summary judgment motion and grant TVA's summary judgment motion, finding in TVA's favor on EPI's FOIA claims concerning FOIA Request 109 and FOIA Request 208.

Respectfully submitted,

*s/Lane E. McCarty*
David D. Ayliffe, (TN BPR 024297)
Director of Litigation
Lane E. McCarty (TN BPR 028340)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

*Attorneys for Tennessee Valley Authority*

112840008

36

**CERTIFICATE OF SERVICE**

I certify that, the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

_s/Lane E. McCarty_
Attorney for Tennessee Valley Authority

37