UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION


ENERGY AND POLICY INSTITUTE,
Plaintiff,

     v.                     No. 3:22-cv-00220-TAV-DCP

TENNESSEE VALLEY AUTHORITY,
Defendant.

---

## REPLY BRIEF IN SUPPORT OF TENNESSEE VALLEY AUTHORITY'S MOTION FOR SUMMARY JUDGMENT

---

David D. Ayliffe
Director, Litigation
Lane E. McCarty
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

Attorneys for Tennessee Valley Authority

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

    I.     TVA Properly Withheld Exempt Information in Response to FOIA Request 109.....................................................................................................................2

          A.     EPI's challenge to Makram Jaber's Declaration is without merit. .............2

          B.     TVA properly applied Exemption 4 ...................................................4

          C.     TVA properly applied the attorney-client privilege under Exemption 5.....................................................................................................................11

          D.     TVA properly applied Exemption 6 to redact the names of private individuals.................................................................................................15

    II.     TVA Properly Withheld Exempt Information in Response to FOIA Request 208...................................................................................................................18

          A.     The Court should disregard portions of the Supplemental Tait Declaration.................................................................................................18

          B.     TVA properly withheld AEGIS' information under Exemption 4. ...........20

          C.     TVA properly applied Exemption 5 to information in the TVA-AEGIS Policy...............................................................................................24

    III.    TVA Has Met Its Obligation to Disclose Reasonably Segregable Material.........25

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

*Am. C.L. Union v. Nat'l Sec. Agency,*
No. 13-Civ 09198 (KMW)(JCF), 2017 WL 1155910 (S.D.N.Y. Mar. 27, 2017) .............. 6

*Am. C.L. Union v. Nat'l Sec. Agency,*
925 F.3d 576 (2d Cir. 2019) .................................................................................... 6

*Am. C.L. Union v. Dep't of Def.,*
628 F.3d 612 (D.C. Cir. 2011) .............................................................................. 25

*Am. C.L. Union v. Dep't of Just.*
655 F.3d 1 (D.C. Cir. 2011) ................................................................................... 17

*Am. Immigr. Council v. U.S. Customs & Border Patrol,*
590 F.Supp.3d 306 (D.D.C. 2022) ........................................................................ 13

*Am. Immigr. Council v. U.S. Customs & Border Patrol,*
No. CV 19-2965 (RC), 2023 WL 2755412 (D.D.C. Apr. 3, 2023) ................................ 13

*Am. Small Bus. League v. Dep't of Def.* ("*ASBL v. DOD*"),
411 F.Supp.3d 824 (N.D. Cal. 2019) ............................................................... 9, 23

*Am. for Fair Treatment v. USPS,*
No. 1:22-CV-1183-RCL, 2023 WL 2610861 (D.D.C. Mar. 23, 2023) ........................ 13

*Amnesty Int'l USA v. CIA,*
728 F.Supp.2d 479 (S.D.N.Y. 2010) ..................................................................... 25

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.,*
370 F.Supp.3d 116 (D.D.C. 2019) ........................................................................ 15

*Assoc. Press v. U.S. Dep't of Def.,*
554 F.3d 274 (2d Cir. 2009) .................................................................................. 15

*Austin Sanctuary Network v. United States Immigr. & Customs Enf't,*
No. 20-CV-01686 (LJL), 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022) ...................... 14

*Bader Fam. Found. v. U.S. Dep't of Educ.,*
630 F.Supp.3d 36 (D.D.C. 2022) ............................................................... 16, 17, 18

*Baker & Hostetler LLP v. U.S. Dep't of Commerce,*
473 F.3d 312 (D.C. Cir. 2006) ................................................................................ 5

*Brockway v. Dep't of Air Force,*
518 F.2d 1184 (8th Cir. 1975) .............................................................................. 21

*Brown v. Dep't of Just.,*
734 F.Supp.2d 99 (D.D.C. 2010) .......................................................................... 17

*Cause of Action Inst. v. Dep't of Just.,*
330 F.Supp.3d 336 (D.D.C. 2018) ........................................................................ 10

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Labor*,
    478 F.Supp.2d 77 (D.D.C. 2007) .................................................................. 2

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
    567 F.Supp.3d 204 (D.D.C. 2021) ............................................................... 21

*Cook v. Nat'l Archives & Records Admin.*,
    758 F.3d 168 (2d Cir. 2014) ................................................................. 15, 25

*Council on Am.-Islamic Rels. – Conn. v. U.S. Citizenship & Immigr. Servs.*,
    No. 3:17 CV 1061(RMS), 2023 WL 2971432 (D. Conn. Apr. 17, 2023) ...................... 14

*Critical Mass Energy Project v. NRC*,
    975 F.2d 871 (D.C. Cir. 1992) .................................................................. 24

*Crooker v. Bureau of Alcohol, Tobacco & Firearms*,
    789 F.2d 64 (D.C.Cir.1986) .................................................................... 13

*Crump v. TCoombs & Assoc., LLC*,
    No. 2:13-cv-707, 2015 WL 5601885 (E.D. Va. Sept. 22, 2015) .................................... 20

*Del Monte Int'l GMBH v. Ticofrut, S.A.*,
    No. 16-23894-CIV, 2017 WL 1709784 (S.D. Fla. May 2, 2017) .................................... 12

*Dep't of Just. v. Landano*,
    508 U.S. 165 (1993) .............................................................................. 7

*Donovan v. F.B.I*,
    806 F.2d 55 (2d Cir. 1986) ...................................................................... 7

*Ecological Rights Found. v. E.P.A.*,
    541 F.Supp.3d 34 (D. D.C. 2021) ............................................................... 3

*Ecological Rights Found. v. E.P.A.*,
    No. 19-980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021) .................................... 15

*Food Mktg. Inst. v. Argus Leader Media*,
    139 S. Ct. 2356 (2019) .................................................................... *passim*

*Forest Cnty Potawatomi Cmty. v. Zinke*,
    278 F.Supp.3d 181 (D.D.C. 2017) ............................................................... 5

*Freedom Watch, Inc. v. Mueller*,
    453 F.Supp.3d 139 (D.D.C. 2020) ............................................................... 16

*Getman v. Nat'l Labor Rel.Bd.*,
    450 F.2d 670 (D.C. Cir. 1971) .................................................................. 21

*Gov't Land Bank v. Gen. Servs. Admin.*,
    671 F.2d 663 (1st Cir. 1982) .................................................................... 25

*In re Auclair*,
    961 F.2d 65 (5th Cir.1992) ...................................................................... 12

*In re Bounds*, 443 B.R. 729 (Bankr. W.D. Tex. 2010)………………………………………..……12

iii

*Jonna v. GIBF GP, Inc.*,
No. 22-10208, 2023 WL 3244832 (E.D. Mich. May 4, 2023) ...................................... 14

*Jud. Watch, Inc. v. Export-Import Bank*,
108 F.Supp.2d 19 (D.D.C. 2000) .................................................................................... 20

*Jud. Watch, Inc. v. Food & Drug Admin.*,
449 F.3d 141 (D.C. Cir. 2006) ....................................................................................... 13

*Jud. Watch, Inc. v. U.S. Dep't of Com.*,
375 F.Supp.3d 93 (D. D.C. 2019) .................................................................................. 10

*Jud. Watch, Inc. v. U. S. Dep't of Homeland Sec.*,
59 F.Supp.3d 184 (D.D.C. 2014) ................................................................................... 13

*Leopold v. U.S. Dep't of Just.*,
No. CV 19-3192 (RC), 2021 WL 124489 (D.D.C. Jan. 13, 2021) ................................... 3

*Londrigan v. F.B.I*,
670 F.2d 1164 (D.C. Cir. 1981) ..................................................................................... 19

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
886 F.Supp.2d 466 (D. Del. 2012) ................................................................................. 12

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
No. CV 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014) ........................... 12

*Mead Data Cent., Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ....................................................................................... 25

*Merit Energy Co. v. U.S. Dep't of Interior*,
180 F.Supp.2d 1184 (D. Col. 2001) ............................................................................... 21

*Mil. Audit Project v. Casey*
656 F.2d 724 (D.C. Cir. 1981) .................................................................................. 2, 25

*Miller v. OPW Fueling Components, Inc.*,
No. 1:10-cv-665, 2012 WL 1190015 (S.D. Ohio Mar. 22, 2013) ................................. 19

*Miller, Anderson, Nash, Yerke & Wiener v. U.S. Dep't of Energy* ("*Miller v. DOE*"),
499 F. Supp. 767 (D. Oregon 1980) ............................................................................ 5, 9

*Perez v. U.S. Immigr. & Customs Enf't*,
No. 19-CV-3154 (PGG)(JLC), 2020 WL 4557387 (S.D.N.Y. Aug. 6, 2020) ............ 7, 23

*Perioperative Servs. & Logistics, LLC v. United States Dep't of Veterans Affs.*,
57 F.4th 1061 (D.C. Cir. 2023) ...................................................................................... 17

*Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*,
185 F.3d 898 (D.C. Cir. 1999) ....................................................................................... 11

*Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*,
704 F.2d 1280 (D.C. Cir. 1983) ....................................................................................... 5

iv

*Pub. Emp. for Env't Resp. v. Office of Science & Tech. Pol'y*,
　　881 F.Supp.2d 8 (D. D.C. 2012) ..................................................... 5

*Rosenberg v. Dep't of Def.*,
　　342 F.Supp.3d 62 (D. D.C. 2018) ................................................... 9

*Sabra ex rel. Baby M. v. Pompeo*,
　　453 F.Supp.3d 291 (D.D.C. 2020) ................................................. 19

*Schoenman v. F.B.I.*,
　　No. 04-2202 (CKK), 2009 WL 763065 (D.D.C. Mar. 19, 2009) ................... 20

*Skybridge Spectrum Found. v. F.C.C.*,
　　842 F.Supp.2d 65 (D.D.C. 2012) ....................................... 16, 17, 25

*Sorin v. Dep't of Just.*
　　280 F.Supp.3d 550 (S.D.N.Y. 2017) .............................................. 10

*Sorin v. Dep't of Just.*,
　　758 F. App'x 28 (2d. Cir. 2018) ................................................ 10

*S. Env't L. Ctr. v. TVA*,
　　No. 322CV00108DCLCDCP, __F.Supp.3d__, 2023 WL 2387360 (E.D. Tenn. Mar. 7,
　　2023) ................................................................. 9, 10, 22

*Spirko v. U.S. Postal Serv.*,
　　147 F.3d 992 (D.C. Cir. 1998) ................................................... 7

*Sussman v. U.S. Marshals Serv.*,
　　494 F.3d 1106 (D.C. Cir. 2007) ................................................. 25

*Taylor Woodrow Int'l v. U.S. Dep't of Navy*,
　　No. C88-429R, 1989 WL 1095561 (W.D. Wash. Apr. 5, 1989) ............... 24, 25

*Thorsen v. Sons of Norway*,
　　996 F.Supp.2d 143 (E.D.N.Y. 2014) ............................................. 12

*U.S. Dept. of State v. Wash. Post Co.*,
　　456 U.S. 595 (1982) ........................................................ 15, 16

*U.S. Sec. & Exch. Comm'n v. Hollnagel*,
　　No. 07 CV 4538, 2010 WL 11586980 (N.D. Ill. Jan. 22, 2010) .................. 14

*Vaughn v. Rosen*,
　　484 F.2d 820 (D. C. Cir. 1973) .................................................. 6

*Walther v. Maricopa Int'l Inv., Corp.*,
　　97–CV–4816, 1998 WL 689943 (S.D.N.Y. Sept. 30, 1998) ....................... 12

*Wash. Rsch. Project v. Dep't of Health, Educ. & Welfare*,
　　504 F.2d 238 (D.C. Cir. 1974) .................................................. 21

v

**Statutes, Regulations**                                                      **Page**

5 U.S.C. § 551(2) ........................................................................................ 6

Federal Rule of Civil Procedure 56 ................................................. 19, 20

# INTRODUCTION

The undisputed record shows TVA fulfilled its obligations under FOIA. Plaintiff Energy and Policy Institute's ("EPI") challenges to TVA's withholdings under FOIA Exemptions 4, 5 and 6 fail to counter the explanations for the exemptions in the five declarations submitted by TVA (Docs. 33 through 37) and the *Vaughn* Index for FOIA Request 109 (Doc. 33-3). The declarations detail the specific types of information withheld and logically and plausibly demonstrate that the information falls within the scope of the cited exemptions. EPI, in challenging TVA's responses, relies on speculative arguments and largely ignores the contents of the declarations.

EPI's arguments with respect to FOIA Request 109 mischaracterize what "commercial information" is under Exemption 4 and misapply the confidentiality standard set by *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019). EPI's arguments regarding the attorney-client privilege under Exemption 5 are similarly unavailing and reflect an improperly narrow privilege. And EPI fails to rebut TVA's application of Exemption 6 to protect the identities of *individuals* working for members of the Climate Legal Group ("CLG") and the Power Generators Air Coalition ("PGen").

EPI's arguments with respect to FOIA Request 208 rise and fall on inadmissible and speculative statements about AEGIS, the insurance industry, and the relationship between AEGIS and TVA. Such unsupported guesswork does not rebut AEGIS and TVA's detailed explanations of foreseeable harm. Finally, EPI's narrow construction of the government's confidential commercial information privilege recognized by Exemption 5 is not supported by the case law.

TVA has satisfied its burden to establish that the information withheld in response to FOIA Requests is protected from disclosure under FOIA. The Court should deny EPI's motion for summary judgment and grant TVA's motion for summary judgment.

1

## ARGUMENT

## I.  TVA Properly Withheld Exempt Information in Response to FOIA Request 109.

EPI largely limits it arguments on FOIA Request 109 to the confines of the *Vaughn* Index and disregards the explanations in the declarations of Makram Jaber, Maria Gillen, and Buddy Eller. For instance, EPI dismisses Mr. Jaber's declaration as "hearsay" and inadmissible (it is not) and fails to even mention Ms. Gillen's declaration (save for one footnote). It is clear, however, the Court's analysis of the claimed exemptions is based on *both* the declarations as well as the *Vaughn* Index and that declarations alone may suffice. *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F.Supp.2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)) (when an agency's "declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith,'" the agency may be entitled to summary judgment "solely on the basis of information provided" in those declarations).

### A.  EPI's challenge to Makram Jaber's Declaration is without merit.

Instead of demonstrating why—given Mr. Jaber's declaration—Exemption 4 does not apply, EPI calls into question the admissibility of the declaration itself. This challenge to the admissibility of Mr. Jaber's declaration and his competency to testify on matters about the CLG and PGen is meritless. Moreover, EPI's challenge is only to the admissibility of Mr. Jaber's statements and the commercial nature of CLG and PGen information and foreseeable harm "made on behalf of the CLG and PGen." (Doc. 38 at PageID#630.) EPI has not challenged the sufficiency of Mr. Jaber's declaration concerning McGuireWoods' Exemption 4 objections, which apply equally to all documents to which the CLG and PGen have objected. (Doc. 34 ¶¶ 3-4, 14-17.)

2

As to the challenged statements, the requirement of Federal Rule of Civil Procedure 56(c)(4) that a declaration be made upon the declarant's "personal knowledge" is plainly established in Mr. Jaber's declaration. (*Id.* ¶¶ 4, 6-7.) *See Ecological Rights Found. v. E.P.A.*, 541 F.Supp.3d 34, 47-48 (D. D.C. 2021) (discussing personal knowledge requirement of declaration in support of a FOIA summary judgment motion). Mr. Jaber's declaration contains a thorough description of his personal knowledge of the CLG and PGen. (Doc. 34 ¶¶ 2, 4-8). It also establishes his direct personal knowledge about the competitive legal industry in which he works and in which the CLG and PGen exist as clients (*id.* ¶¶ 16-17), details specific information describing the withheld and redacted documents (*id.* ¶¶ 26-45 & Attach. 4, Doc. 34-4), and explains the foreseeable harmful effect of the release of that information on the CLG and PGen (*id.* ¶¶ 16, 29, 38, 42). The Federal Rules and FOIA do not require anything more.

EPI has not presented any credible basis for its claim that Mr. Jaber's statements about the commercial interests of the CLG and PGen in the withheld information and the foreseeable harm to these entities are not based on his personal knowledge. EPI simply posits that because Mr. Jaber is counsel for the CLG and PGen, he is not "competent to testify to these matters." (Doc. 38 at PageID#631).[1] But in fact, it is because Mr. Jaber is the CLG's and PGen's counsel that he has become familiar with his clients' commercial interests and the foreseeable harm to them from release of their confidential information. As his sworn declaration attests, Mr. Jaber is testifying about these matters from his personal knowledge, he is not merely relaying the statements of another (which is what hearsay is). *See, e.g., Leopold v. U.S. Dep't of Just.*, No. CV 19-3192 (RC), 2021 WL 124489, at *4 (D.D.C. Jan. 13, 2021) (rejecting hearsay objection to a declaration, made

---

[1] EPI, almost in passing, also insinuates that the declarations of TVA employees are not sufficient to establish the commercial nature of CLG and PGen information. But TVA is a member of both organizations. As such, Ms. Gillen surely has personal knowledge of the CLG's and PGen's commercial interests. (Gillen Decl., Doc. 35 ¶¶ 1-3, 6, 11, 17.)

"under the penalty of perjury," of outside counsel for a company whose information was withheld under Exemption 4; the court also rejected hearsay objections to the agency declarations).

## B. TVA properly applied Exemption 4

EPI has failed to show that TVA improperly applied Exemption 4 to withhold confidential commercial or financial information of McGuireWoods, the CLG and PGen.[2] *Argus Leader* greatly expanded the scope of protection for information under Exemption 4, adopting a test that focuses on how the owners of the information view it, and conferring Exemption 4 protection if it is submitted to the government but otherwise treated as private by the submitters. *Id.*, 139 S. Ct. at 2363. TVA has established, through direct, uncontroverted evidence, that McGuireWoods, the CLG and PGen, customarily and actually treat much of the information submitted to TVA as part of the legal services offered by McGuireWoods to TVA, the CLG and PGen, as confidential. EPI dances around this issue, ignoring the declarations, suggesting an improper "commercial information" standard (Doc. 38 at PageID#632), focusing on public policy arguments (*id.* at PageID#628), speculating about the authors of information (*id.* at PageID##629-30), and ignoring the record evidence that McGuireWoods, the CLG and PGen actually and customarily treat the information as private and closely held. While EPI seeks to narrow Exemption 4, *Argus Leader* changed the Exemption 4 paradigm; the withheld information is properly shielded from disclosure.

**1. McGuireWoods, the CLG and PGen have a commercial interest in the withheld information.** EPI maintains that information qualifies as "commercial" under Exemption 4 only if it is "commercial in and of itself[.]" (Doc. 38 at PageID#632.) And despite detailed explanations in Mr. Jaber's declaration of the commercial operations and services of McGuireWoods (Doc. 35

---

[2]     Besides conclusory objections that the document descriptions in the *Vaughn* Index are not sufficient, EPI has not disputed TVA's argument that Exemption 4 applies to withheld documents and information related to the CAA Regulatory Information and Compliance matter.

¶¶ 4, 24, 26-45), the CLG (*id.* ¶¶ 6, 24-31) and PGen (*id.* ¶¶ 7, 24, 34-38), EPI argues TVA has failed to disclose "any commercial operation conducted by [CLG and PGen]" (*id.* at PageID#633). This statement ignores the nature of what McGuireWoods, the CLG, and PGen's businesses are and improperly limits what courts have found to be "commercial" for purposes of Exemption 4.

"Contrary to [EPI's] suggestion, Exemption 4 is *not* confined only to records that reveal basic commercial operations . . . or relate to the income-producing aspects of a business." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006) (cleaned up) (emphasis in original); *Forest Cnty. Potawatomi Cmty. v. Zinke*, 278 F.Supp.3d 181, 200 (D.D.C. 2017). Rather, courts have consistently emphasized that the scope of Exemption 4's "commercial" requirement reaches "more broadly" to encompass information in which the submitter has "a commercial" interest. *Forest Cnty.*, 278 F.Supp.3d at 200. (*See also* Doc. 31 at PageID##373-74 (discussing "commercial interest" and the commercial interests of McGuireWoods, the CLG and PGen).) Specifically, Exemption 4 includes information relating to the submitter's business or trade, *see Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (documentation related to health and safety of products is commercial), the provision of legal services and the methods for providing those legal services, *see Miller, Anderson, Nash, Yerke & Wiener v. U.S. Dep't of Energy* ("*Miller v. DOE*"), 499 F. Supp. 767, 770 (D. Oregon 1980) (attorney-prepared legal memorandum assessing legal implications and potentialities qualifies as commercial information), and an entity's internal strategies for accomplishing its mission, *see Pub. Emp. for Env't Resp. v. Office of Science & Tech. Pol'y*, 881 F.Supp.2d 8, 14 (D. D.C. 2012) (submitter had a commercial interest in "advocacy strategy which is at the core of [the submitter's] competitive value to itself and its members").

5

Mr. Jaber describes the legal services provided by McGuireWoods to its clients (Doc. 34 at ¶¶ 14, 17, 24), describes the services provided by McGuireWoods to the CLG and PGen (*id.* at ¶¶ 27, 31, 35, 37-38), describes how the withheld and redacted documents contain information relating to the CLG and PGen's formation, membership, processes and practices, operations, budget, scope and substantive internal strategies and purpose (*id.* ¶¶ 24, 31, 35, 37-38), and describes the foreseeable harm to each of these entities if this information were disclosed (*id.* ¶¶ 16, 31, 38). This, in addition to showing that the information is actually and customarily treated as private or confidential by the party submitting it, is all Exemption 4 requires.

**2.      EPI has not shown that documents responsive to FOIA Request 109 were not obtained from a person.** In the *Vaughn* Index, TVA left the column labeled "From/Author" blank for most documents identified as attachments to an email from McGuireWoods. The rationale is simple: an attachment to an email is "obtained from" the same "person" that sent the email. And it is abundantly obvious, from the document's name and the description of the withheld information, that the attachments were authored by McGuireWoods. EPI does not dispute McGuireWoods' status as a "person" within the meaning of 5 U.S.C. § 551(2). EPI argues, however, that the Court could not determine the attachments were "obtained from a person" because the *Vaughn* Index does not specify the authors of these attachments (in the "From/Author" column).

EPI's argument elevates form over substance. No case law "requires so detailed a description" in a *Vaughn* index, *Am. C.L. Union v. Nat'l Sec. Agency*, No. 13-Civ 09198 (KMW)(JCF), 2017 WL 1155910, at *9 (S.D.N.Y. Mar. 27, 2017), *aff'd*, 925 F.3d 576 (2d Cir. 2019). The purpose of a *Vaughn* index is to describe the documents and the justifications for nondisclosure in reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D. C. Cir. 1973). To

the extent the attachment's author must be identified to determine whether the document was "obtained from a person," that information is obvious from the name and attachment descriptions.[3]

Mr. Jaber's descriptions of the various categories of documents establish that information was being provided by McGuireWoods to TVA, the CLG and PGen. (Doc. 34 ¶¶ 24-45 & Attach. 4, Doc. 34-4). These descriptions, along with the *Vaughn* Index which provides the identity of the senders of the emails, identify the sender as a McGuireWoods' attorney. This information shows that the attachments were provided by McGuireWoods to members of the CLG and PGen in the course of advice regarding the operations, membership, and formation of the CLG and PGen. (Jaber Decl., Doc. 34 ¶ 35 (communications contain "information and legal advice about PGen's formation, its purpose, strategy, scope, governance (voting), operations (website and naming discussion, budge and dues"), ¶ 37 (draft and redline documents contain "details of McGuireWoods' legal advice regarding the formation and incorporation of PGen"), ¶ 38 (communications include "details of McGuireWoods' advice regarding the formation and incorporation of PGen, including its strategy with respect to operations and processes of PGen").) This satisfies the requirements of FOIA and is sufficient for a *Vaugh* Index. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the Vaughn index is unimportant and affidavits providing similar information can suffice.").

EPI's statement that the documents may contain "substantially reformulated" material by TVA is pure speculation. *Perez v. U.S. Immigr. & Customs Enf't*, No. 19-CV-3154 (PGG)(JLC), 2020 WL 4557387, at *11 (S.D.N.Y. Aug. 6, 2020) ("[s]peculation . . . [is] insufficient to discredit

---

[3]     Ultimately, a *Vaughn* index and agency explanation are tools for the Court, "not ends in themselves." *Donovan v. F.B.I*, 806 F.2d 55, 58–59 (2d Cir. 1986) (quotation marks omitted), *abrogated on other grounds by Dep't of Just. v. Landano*, 508 U.S. 165 (1993).

an agency's declaration" in FOIA).[4] Moreover, EPI's speculation is unjustified and incorrect: there is no evidence indicating that the attachments whose authors are not explicitly listed were "reformulated" by TVA, just as there is no evidence the emails to which they were attached were reformulated by TVA. And they were not.[5]

**3.      The withheld information is "confidential" under *Argus Leader*.** EPI acknowledges *Argus Leader* but fails to acknowledge its basic test—that information is confidential when it is "customarily kept private, or at least closely held, by the person imparting it." *Id.*, 139 S. Ct. at 2363. EPI argues the withheld information is not confidential because the confidentiality provisions in the CLG and PGen governing documents are insufficient (Doc. 38 at PageID#633), and TVA failed to show that PGen communications pre-dating its formation are confidential (*id.* at PageID#637).[6] Both arguments fail to apply the *Argus Leader* test for confidentiality.

As explained in the Jaber and Gillen declarations, the withheld information is customarily not disclosed to the public or made publicly available, by either the submitter (Jaber Decl., Doc. 34 ¶¶ 15-22), or TVA (Gillen Decl., Doc. 35 ¶¶ 2, 6, 10, 11, 15.)[7] That is all that is required under

---

**4**      In a sleight of hand, EPI's support for its proposition that attachments obviously authored by McGuireWoods may have been "substantially reformulated" by TVA is an attachment whose author was identified as Sherry Quirk, a former TVA employee. (Doc. 38 at PageID#630 (citing Doc. No. 110).) But one must look at the actual document at issue: Document Number 110 is a draft contract for legal services between TVA and McGuireWoods that contains draft commercial terms belonging to (and submitted by) McGuireWoods.

**5**      *See* Supplemental Declaration of Makram Mr. Jaber, filed contemporaneously herewith.

**6**      EPI also contends that TVA acted in bad faith by taking the position that PGen's pre-formation information is confidential. (Doc. 38 at PageID#639). Not only is TVA uncertain how this demonstrates "bad faith," such an assertion belies the record evidence and sworn statements of Mr. Jaber and Ms. Gillen that these communications were actually and customarily treated as confidential and privileged by the participants during the time-period involving the formation of PGen. (Jaber Decl., Doc. 34 ¶¶ 20-21, 35-38; Gillen Decl., Doc. 35 ¶¶ 2, 11-14.)

**7**      The Jaber Declaration contains a detailed discussion establishing that the withheld information is confidential, non-public, and closely held (Doc. 34 ¶¶ 15-22.) EPI has offered no evidence "to create a genuine issue of fact as to the information's confidentiality." *Am. Small Bus.*

*Argus Leader*. *See S. Env't L. Ctr. v. TVA*, No. 322CV00108DCLCDCP, __F.Supp.3d__, 2023 WL 2387360, at *10 (E.D. Tenn. Mar. 7, 2023). While the confidentiality provisions of the CLG and PGen's governing documents are helpful to show confidential treatment, because there is record evidence that the information was actually and customarily treated as confidential by the submitters (and TVA), they are not necessary. *Id.*, 2023 WL 2387360, at *11 & n.5. It follows that EPI's argument that the confidential nature of information related to PGen's incorporation is governed by the time-frame of PGen's incorporation is incorrect. Because the submitters— McGuireWoods and PGen—customarily and actually treated the information as confidential at the time (Jaber Decl., Doc. 34 ¶¶ 35, 37-38), it meets the standard under *Argus Leader*.[8]

4.      **TVA has shown the foreseeable harm that will result from disclosure.** The FOIA Improvement Act of 2016 ("FIA") requires the government to release records that are otherwise covered by an exemption if release would not "reasonably harm an exemption-protected interest." *Rosenberg v. Dep't of Def.*, 342 F.Supp.3d 62, 73 (D. D.C. 2018). EPI's argument, which summarily claims TVA's statements of foreseeable harm are "speculation" and that a document-by-document "foreseeable harm" showing is required is not supported by the case law. Contrary to EPI's argument, to establish harm under the FIA, an agency may address the information categorically, as long as it is not done in a perfunctory fashion. *See Rosenberg*, 342 F.Supp.3d at 78-79. Moreover, the agency may rely on declarations to show the exemption-protected harm. *See Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F.Supp.3d 93, 101 (D. D.C. 2019); *Cause of Action Inst. v. Dep't of Just.*, 330 F.Supp.3d 336, 355 (D.D.C. 2018); *Sorin v. Dep't of Just.*, 280

---

*League v. Dep't of Def.* ("*ASBL v. DOD*"), 411 F.Supp.3d 824, 832-33 (N.D. Cal. 2019). Statements by a submitter based on personal knowledge about how it customarily treats information are sufficient to establish confidentiality under *Argus Leader*.

[8]      Communications regarding PGen's formation are also privileged attorney-client communications with a prospective client. *Miller v. DOE*, 499 F. Supp. at 771 (finding that a document protected by the attorney-client privilege is exempt under Exemption 4).

F.Supp.3d 550, 566-67 (S.D.N.Y. 2017), *aff'd*, 758 F. App'x 28.

TVA has shown that the release of the withheld information would harm the business and commercial interests of McGuireWoods, the CLG, and PGen. Mr. Jaber explains that public disclosure would reveal McGuireWoods' methods and approach for providing legal services to clients and client groups, information which would have a substantial commercial value to competitors. (Jaber Decl., Doc. 34 ¶¶ 23, 28, 29, 31, 37, 38, 42.) *See S. Env't L. Ctr.,* 2023 WL 2387360, at *12 (finding foreseeable harm when disclosure would divulge information about project development, strategies). Moreover, in the competitive legal marketplace, disclosure of McGuireWoods' confidential information foreseeably undermines McGuireWoods' competitive position by impairing its ability to both keep current clients as well as deterring prospective clients from retaining McGuireWoods. (Eller Decl., Doc. 33 ¶ 19.) The CLG and PGen would be similarly harmed. (*Id.*) There is also foreseeable harm to TVA if the information was disclosed. Mr. Eller describes how if the confidential information submitted to TVA in the context of TVA's membership in the CLG and PGen were disclosed as a matter of course, companies, especially law firms, would be deterred from representing TVA and providing it legal advice, or allowing TVA to join groups like the CLG and PGen. (*Id.*) And TVA's concern regarding this harm lies at the heart of the Exemption 4 interest expressly recognized in *Argus Leader*, that "when Congress enacted FOIA it sought a 'workable balance' between disclosure and other governmental interests—interests that may include providing private parties with sufficient assurances about the treatment of their proprietary information so they will . . . supply the government with information vital to its work." *Id.*, 139 S. Ct. at 2366. Additionally, as noted by Ms. Gillen, the ability to obtain this information is crucial and inability to access it would chill TVA's access to information in the highly specialized areas of environmental law and climate. (Gillen Decl., Doc. 35 ¶¶ 22-25.) EPI

has provided no non-speculative evidence to the contrary.

EPI also attempts to bolster the case for release by asserting, without elaboration, that the information will somehow "reveal agency collaboration with and influence from outside parties" (Doc. 38 at PageID#639.) That statement is conclusory and entitled to no weight. But even putting that aside, EPI's attempt to balance the supposed public benefit against the likelihood of harm faced by McGuireWoods, the CLG and PGen, is misplaced. As the D.C. Circuit has held, in the Exemption 4 context, a requester cannot "bolster the case for disclosure by claiming an additional public benefit" from release. *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999) (rejecting "a consequentialist approach" to the public interest in disclosure and holding that the balancing of interests for Exemption 4 is fully laid out in the *National Parks* test). EPI's argument therefore carries no weight.

### C. TVA properly applied the attorney-client privilege under Exemption 5.

EPI has failed to show that TVA improperly applied the attorney-client privilege to withhold privileged information.[9] In fact, EPI's brief completely ignores an important category of privileged communications—those between lawyers and joint clients—and disregards the explanations and descriptions in Ms. Gillen's and Mr. Jaber's declarations of the privilege.

In response to EPI's FOIA Request 109 which sought communications between McGuireWoods, a law firm representing TVA both individually and as a joint client with the CLG and PGen, EPI seems to suggest that the information may not be privileged because it is being given to TVA as well as to other members of the CLG and PGen. There is, however, nothing unusual in applying the attorney-client privilege to joint clients, such as members of the CLG and PGen, respectively. *See, e,g., Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F.Supp.2d

---

[9]     TVA is not claiming Exemption 5 for Doc. Nos. 032, 104, 120, 180, 185 or 366.

466, 479 (D. Del. 2012), *aff'd sub nom.*, No. CV 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014) ("In a joint representation, the joint privilege applies when multiple clients hire the same counsel to represent them on a matter of common interest."); *In re Bounds*, 443 B.R. 729, 733 (Bankr. W.D. Tex. 2010) ("Communications made by members of a group of clients and concerning a matter of common interest are generally subject to the attorney-client privilege.") (citing *In re Auclair*, 961 F.2d 65, 69 (5th Cir.1992)). "Such common interest privilege regularly is found where 'the speaker and the listeners were generally members of a group or organization— which undoubtedly suggested a robust common interest existed.'" *Thorsen v. Sons of Norway*, 996 F.Supp.2d 143, 174 (E.D.N.Y. 2014) (quoting *Walther v. Maricopa Int'l Inv., Corp.*, 97–CV–4816, 1998 WL 689943, at *2 (S.D.N.Y. Sept. 30, 1998) (collecting cases)). "Courts evaluating a common interest doctrine claim often focus on whether the group members took affirmative steps to protect confidentiality. If steps are taken, then they support application of the doctrine." *Del Monte Int'l GMBH v. Ticofrut, S.A.*, No. 16-23894-CIV, 2017 WL 1709784, at *7–8 (S.D. Fla. May 2, 2017). Here, TVA, the members of CLG and PGen, respectively, and McGuireWoods have carefully and deliberately maintained the confidentiality of attorney-client communications, as discussed in Mr. Jaber's and Ms. Gillen's declarations. (Jaber Decl., Doc. 34 ¶¶ 8, 14-17; Gillen Decl., Doc. 35 ¶¶ 2, 10, 11, 16, 21.)

Further, while EPI pronounces that the *Vaughn* Index is conclusory and vague (Doc. 38 at PageID#622), TVA's declaration submissions are sufficiently detailed and demonstrate that its Exemption 5 withholdings are proper.[10] EPI has completely ignored Ms. Gillen's explanations of

---

[10]     As described in the declarations, and self-evident from the *Vaughn* Index, many of the documents contain protected information of a similar nature, e.g., the CLG Updates and emails forwarding draft PGen incorporation documents. The descriptions in the *Vaughn* Index are therefore necessarily repetitive. This does not mean the *Vaughn* Index is insufficient. TVA carefully categorized the documents and the applicable exemptions. Categorization to avoid

the nature of the confidential communications and legal advice communicated by McGuireWoods attorneys to TVA, the CLG and PGen. (*See* Gillen Decl., Doc. 35 ¶ 8 (legal advice conveyed in the CLG Updates based on confidential communications made by the CLG members to their attorneys), ¶ 9 (legal advice conveyed to the CLG about operations), ¶ 13 (legal advice related to PGen's incorporation and formation), ¶ 19 (contract communications and drafts reflects TVA's motivation for retaining McGuireWoods as counsel), ¶ 20 (legal advice related to Clean Air Act regulatory developments informed by TVA's confidential communications to McGuireWoods). It is clear from the case law that the declarations are the crux of the Court's FOIA analysis and here the declarations provide ample support for the exemptions.[11]

EPI's specific challenges to documents also fail. In its challenge to the CLG Updates, EPI fails to acknowledge both Ms. Gillen's and Mr. Jaber's testimony regarding the function and context of these communications. (Gillen Decl., Doc. 35 ¶ 8; *see also* Jaber Decl., Doc. 34 ¶ 27.) Moreover, EPI's speculation that these emails and others are akin to information McGuireWoods makes "public" on its website or are business development emails is pure speculation and contradicts the declarations of both Mr. Jaber and Ms. Gillen. (*Id.*) TVA, the CLG, and PGen have retained McGuireWoods for legal advice; it should not be a surprise to EPI that they do not pay

---

needless repetition is permissible and appropriate. *See Jud. Watch, Inc. v. U. S. Dep't of Homeland Sec.*, 59 F.Supp.3d 184, 194 (D.D.C. 2014) ("Because generic determinations are permitted, the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document.") (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C.Cir.1986)); *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 147 (D.C. Cir. 2006) ("We have never required repetitive, detailed explanations for each piece of withheld information—that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof.").

[11] EPI is essentially requesting a more detailed *Vaughn* Index or declaration. Such relief may be warranted when more information is needed about an exemption. *See Am. Immigr. Council v. U.S. Customs & Border Patrol*, 590 F.Supp.3d 306, 322–23 (D.D.C. 2022), *reconsideration denied,* No. CV 19-2965 (RC), 2023 WL 2755412 (D.D.C. Apr. 3, 2023) (ordering agency to produce a supplemental *Vaughn*); *Am. for Fair Treatment v. USPS*, No. 1:22-CV-1183-RCL, 2023 WL 2610861, at *9 (D.D.C. Mar. 23, 2023) (same).

McGuireWoods to provide them information that the firm otherwise makes public on its website.

EPI's suggestion that TVA improperly withheld draft contracts and related communications also ignores Ms. Gillen's explanation that the records reflect TVA's motivation for obtaining legal counsel and draft provisions which reflect confidential communications between TVA attorneys and clients regarding the terms of TVA's contract with McGuireWoods. (Gillen Decl., Doc. 35 ¶ 19.) This information is also privileged. *See, e.g., Jonna v. GIBF GP, Inc.*, No. 22-10208, 2023 WL 3244832, at *3 (E.D. Mich. May 4, 2023) (acknowledging "contracts for legal services and engagement letters might contain privileged communications") (cleaned up); *U.S. Sec. & Exch. Comm'n v. Hollnagel*, No. 07 CV 4538, 2010 WL 11586980, at *17 (N.D. Ill. Jan. 22, 2010) (giving as an example of privileged information in an engagement letter "motive of the client in seeking representation") (cleaned up). Nor is the fact that the final contract was not withheld preclude the drafts of the contract from being protected by the attorney-client privilege. *See Council on Am.-Islamic Rels. – Conn. v. U.S. Citizenship & Immigr. Servs.*, No. 3:17 CV 1061(RMS), 2023 WL 2971432, at *16–18 (D. Conn. Apr. 17, 2023) (holding that a draft version of a document submitted to OMB contained attorney-client privileged information and thus was properly withheld under FOIA Exemption 5); *Austin Sanctuary Network v. United States Immigr. & Customs Enf't*, No. 20-CV-01686 (LJL), 2022 WL 4356732, at *25 (S.D.N.Y. Sept. 19, 2022) (holding that even though a "working draft[ ] of a memorandum of a legal opinion prepared by ICE OPLA attorneys" is not entitled to the deliberative process privilege in that case, it was nonetheless properly withheld under the attorney-client privilege).

EPI's argument that TVA has not sufficiently established foreseeable harm with regard to the attorney-client privilege is also unavailing. Because "[t]he purpose of the attorney-client privilege encompassed by Exemption 5, for example, is to provide an 'assurance of confidentiality'

to clients . . . disclosure of privileged information is a harm in and of itself." *Ecological Rights Found.*, No. 19-980 (BAH) 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2001) (quoting *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F.Supp.3d 116, 130 (D.D.C. 2019)). Thus, "[w]hen invoking the attorney-client privilege . . . an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm." *Id.* As Ms. Gillen and Mr. Eller explain, disclosure of the communications protected by the attorney-client privilege would hinder the open and frank discussions between TVA and its attorneys. (Gillen Decl., Doc. 35 ¶ 24; Eller Decl., Doc. 33 ¶ 20.) This is clearly sufficient under the FIA; thus, TVA has satisfied this burden.

### D.     TVA properly applied Exemption 6 to redact the names of private individuals.

TVA withheld four categories of information under Exemption 6:

(1) mobile phone numbers of employees/attorneys of TVA and McGuireWoods; (2) the names, email addresses, and phone numbers of individuals who work for entities who are members of the CLG; (3) the names, email addresses, and phone numbers of individuals who work for entities who are members of PGen (the entities themselves are in the public domain and are listed on PGen's website); and (4) the names, email addresses, and phone numbers of individuals who work for entities who are potential members of PGen.

(Eller Decl., Doc. 33 ¶ 21.) There is no question that the four categories identified above fall within the scope of the "similar files" protected from disclosure under Exemption 6. "The phrase 'similar files' sweeps broadly and has been interpreted by the Supreme Court to mean 'detailed Government records on an individual which can be identified as applying to that individual." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014) (quoting *U.S. Dept. of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)); *accord Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009). Thus, courts routinely uphold the withholding of mobile phone numbers (category 1 above) for agency employees as well as other individuals. *See, e.g., Bader Fam. Found. v. U.S. Dep't of Educ.*, 630 F.Supp.3d 36, 46 (D.D.C. 2022) (individual's email address and phone number were properly redacted under Exemption 6, notwithstanding prior public disclosure,

because individuals maintain a privacy interest in not receiving unwanted communications); *Freedom Watch, Inc. v. Mueller*, 453 F.Supp.3d 139, 157 (D.D.C. 2020).

The names of individuals who work for entities that are members of the CLG and PGen (categories 2 and 3 above) as well as their email addresses and phone numbers, are also "records on an individual which can be identified as applying to that individual." *Wash. Post*, 456 U.S. at 602. These third-party individuals, who are not employees of TVA or McGuireWoods, are entitled to their privacy and avoiding unwanted contact. *See Skybridge Spectrum Found. v. F.C.C.*, 842 F.Supp.2d 65, 83–84 (D.D.C. 2012) (upholding the FCC's "withholding [of] the names and personal identifying information of officers, employees, and representatives of" a non-governmental entity because "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant"). EPI argues that because the names of the members of PGen's Board of Directors are public (they are, by virtue of their position), then the names of all employees of entities that are PGen members should also be public. This argument does not hold water. PGen's directors took their positions knowing that Virginia corporate law requires them to be identified publicly in state filings. Other employees did not sign up for public disclosure, whether under FOIA or otherwise. Finally, individuals who are employees of *potential* PGen members (category 4 above) have an even more significant "privacy interest . . . in avoiding the unlimited disclosure of his or her name" and contact information. *Skybridge Spectrum Found.*, 842 F.Supp.2d at 83–84. Thus, TVA has met its burden of withholding categories of information that fall squarely within the scope of "similar files" protected from disclosure under Exemption 6.[12]

---

[12] Contrary to EPI's assertions, TVA is not withholding the names of TVA employees involved in PGen, those names are provided throughout the *Vaughn* Index and in produced and redacted documents. (*See, e.g.,* Doc. 33-3 at PageID##487, 473, 488.) TVA does not have a duty

TVA has also clearly articulated the privacy interest at issue as "the unwarranted and involuntary disclosure of these individuals' non-public information." (Eller Decl., Doc. 33 ¶ 22.) Indeed, "[c]ourts have recognized a substantial privacy interest in avoiding 'unwanted contact following a FOIA disclosure.'" *Perioperative Servs. & Logistics, LLC v. United States Dep't of Veterans Affs.*, 57 F.4th 1061, 1068 (D.C. Cir. 2023) (quoting *Am. C. L. Union v. Dep't of Just.*, 655 F.3d 1, 11 (D.C. Cir. 2011) (collecting cases)); s*ee also Bader Fam. Found.*, 630 F.Supp.3d at 46 (individuals maintain a privacy interest in not receiving unwanted communications); *Skybridge Spectrum Found.*, 842 F.Supp.2d at 83–84 (holding that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant"). TVA has explained why the interest in disclosure here does not outweigh the significant privacy interests in the four categories above. Disclosing the mobile phone numbers of TVA and McGuireWoods employees, as well as the names and contact information of other *individuals* "would not inform the public about TVA's performance of its mission; nor would it provide information regarding how TVA actually conducts its internal operations." (Eller Decl., Doc. 33 ¶ 22.) And whatever interest in public disclosure EPI has is outweighed by the significance of the privacy interests at issue, namely, "open[ing] up these non-agency individuals to unsolicited, potentially harassing, contact," an interest repeatedly acknowledged by the courts.

EPI claims a "public interest in the identities of individuals joining with the government to influence policy." (Doc. 38 at PageID#628.) This confirms there is no public interest whatsoever in the public disclosure of the mobile phone numbers of TVA and McGuireWoods employees, or

---

to review all withheld records for any mention of a TVA staff member's name and email address and produce that singular portion of an otherwise exempt document. *Brown v. DOJ*, 734 F.Supp.2d 99, 110-11 (D.D.C. 2010) (determining that the agency need "not expend substantial time and resources to 'yield a product with little, if any, informational value'" by releasing "[a] plaintiff's name, cities, and file numbers on documents that are otherwise exempt from production.)

any contact information for third party individuals. EPI claims a public interests in the *identities* "of individuals joining with the government to influence policy." But *individuals* that are employees of third parties—in their own capacities—are not "joining with" TVA to do anything. It is their employers who are "joining" with TVA as members of the CLG and PGen. TVA is not withholding the identity of CLG members under Exemption 6; it is doing so under Exemption 4. (Doc. 31 at PageID#371.) And TVA is not withholding the identity of PGen members at all: TVA has advised EPI that those entities are publicly available online. (Eller Decl., Doc. 33 ¶ 21; Doc. 33-2 at PageID#440.) As to potential members of PGen that have not joined PGen, they obviously have not "joined with" TVA in anything of interest to EPI or the public, so EPI's purported interest in knowing their identity (or their employees) is nonexistent. *Cf. Bader Fam. Found.*, 630 F.Supp.3d at 47 ("[T]he privacy interests of the private individual who was invited, but declined, to participate in a Department panel outweighs the public interest in disclosure.") Moreover, EPI's bald assertion that these entities (and their employees) are somehow influencing policy unbeknownst to the public is speculation and hyperbole. The CLG does not engage in rulemaking comment, litigation, or lobbying activities. (Jaber Decl., Doc. 34 ¶ 6). And while PGen files comments on proposed rules, all of which are publicly available on PGen's website, it also does not engage in any litigation or legislative lobbying activities (*id.* ¶ 7).

## II.     TVA Properly Withheld Exempt Information in Response to FOIA Request 208.

### A.     The Court should disregard portions of the Supplemental Tait Declaration.

The Court should disregard paragraphs 8 through 15 of the Supplemental Tait Declaration (Doc. 33-1). Affidavits or declarations used to support or oppose summary judgment motions must "be made on personal knowledge[,] . . . set forth such facts as would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

56(c)(4). Mr. Tait's declaration does none of these. *Miller v. OPW Fueling Components, Inc.*, No. 1:10-cv-665, 2012 WL 1190015, at *1 (S.D. Ohio Mar. 22, 2013) ("Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56 and must be disregarded.") (citations omitted).

Mr. Tait has not established that his statements about AEGIS or the insurance industry are based on his personal knowledge. Mr. Tait does not work in the insurance industry, is not an employee of AEGIS, does not purport to have ever been an employee of AEGIS, and therefore has no personal knowledge of the "facts" he proffers. (Doc. 38-1 at PageID##651–54.) While Rule 54(c)(4)'s "directive with respect to the admissibility of an affidavit's [or a declaration's] contents on summary judgment has been liberally construed," *Sabra ex rel. Baby M. v. Pompeo*, 453 F.Supp.3d 291, 330 (D.D.C. 2020) (quoting *Londrigan v. F.B.I*, 670 F.2d 1164, 1174 (D.C. Cir. 1981)), its "requirement of personal knowledge is . . . unequivocal, and cannot be circumvented," *Londrigan*, 670 F.2d at 1174. Thus, "[a]n affidavit based merely on information and belief is unacceptable." *Id.* The declaration also contains no foundation establishing Mr. Tait's competency to testify to facts about AEGIS' business, how AEGIS operates, the insurance business in general, AEGIS' relationship with TVA, or any foreseeable harm if the redacted information is disclosed. In fact, Mr. Tait's statements in his declaration simply give his opinion on the contents of various websites and documents based on his "review" and "research". But "researching" AEGIS and the insurance industry on the internet does not make one competent to testify to such matters.

Accordingly, because Mr. Tait's supplemental declaration provides an insufficient foundation to demonstrate that he has personal knowledge of the facts averred, and because his statements are inadmissible opinion and inferences drawn from information he found online, his statements fail to pass muster and the Court should not consider them. *See also Crump v. TCoombs & Assoc., LLC*, No. 2:13-cv-707, 2015 WL 5601885, at *3 n.4 (E.D. Va. Sept. 22, 2015) (plaintiff's

declaration provides insufficient foundation for the court to conclude that she possessed personal knowledge of the facts averred); *Schoenman v. F.B.I.*, No. 04-2202 (CKK), 2009 WL 763065, at *2 (D.D.C. Mar. 19, 2009) (disregarding the plaintiff's declaration for failure to comport to Rule 56 and finding the plaintiff lacked sufficient personal knowledge to support his assertions).

**B.     TVA properly withheld AEGIS' information under Exemption 4.**

EPI's conclusory assertion that Exemptions 4 and 5 "cannot apply to the same material," while tempting in its simplicity, ignores that courts have no difficulty finding that documents are subject to redaction under multiple FOIA exemptions. *See, e. g., Jud. Watch, Inc. v. Export-Import Bank*, 108 F.Supp.2d 19, 35-36, 38 (D.D.C. 2000) (finding insurance applications subject to Exemptions 4 and 5). It does not stretch credibility to recognize that the insurance applications in *Judicial Watch*, or the TVA-AEGIS Policy at issue here, may contain both confidential information from AEGIS as well as confidential commercial information of TVA. As Mr. Kelley explained, TVA's negotiations with AEGIS over insurance coverage requires TVA to disclose confidential information relating to TVA's risk and management of risk. (Doc. 37 ¶ 11.) While the terms and conditions of the TVA-AEGIS Policy are drafted by AEGIS, the final terms and conditions reflect TVA's confidential information about risk that was disclosed in the course of those negotiations, and therefore disclosure would reveal that information. (*Id.*)[13]

1.     **The redacted information is commercial information.** EPI has failed to show that TVA improperly applied Exemption 4 to withhold AEGIS' confidential commercial information. While EPI argues "portions of the TVA-AEGIS Policy" are not "commercial in their own right," the sole example EPI uses for support is the redacted dates of coverage in the Policy. (Doc. 38 at PageID#640.) EPI ignores record evidence that the length of time of a policy is intertwined with

---

[13]     If the Court finds the information redacted from the Policy is protected by Exemption 4, the Court need not reach whether the information is also protected by Exemption 5.

AEGIS' individualized pricing for the Policy (Gaffney Decl., Doc. 36 ¶ 16), information that is obviously commercial and a fundamental component of AEGIS' underwriting strategy. (*Id.* ¶¶ 8-9.) Matters relating to a business' pricing decisions for its product (here, insurance) and an entity's determinations about pricing structures are commercial. *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 567 F.Supp.3d 204, 212–13 (D.D.C. 2021) (contract terms and pricing are confidential); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184, 1187-88 (D. Col. 2001) (information regarding leases, prices and quantities is "obviously commercial in nature").[14] Further, EPI's conclusory argument about what constitutes "commercial information" is not the standard by which commercial information is determined, *see supra* I.(B)(1.).[15] *Merit Energy*, 180 F.Supp.2d at 1188 ("characterizing information as 'commercial' or 'financial' does not require the invocation of a shibboleth—the words should be given their ordinary meaning").

## 2. TVA has established foreseeable harm resulting from disclosure of the TVA-AEGIS Policy.

TVA has shown that disclosure of the redacted portions of the TVA-AEGIS Policy would "reasonably harm an exemption-protected interest" of both AEGIS and TVA. Disclosure would give AEGIS' competitors access to its methodology for assessing risks and reveal the individualized pricing, terms and conditions in the TVA-AEGIS Policy. (Eller Decl., Doc. 33 ¶

---

[14]  The cases cited by EPI (Doc. 38 at PageID#641) are inapposite as they do not discuss commercial information covered by Exemption 4 in the context of a contract. *Brockway v. Dep't of Air Force*, 518 F.2d 1184, 1189 (8th Cir. 1975) (witness statements not commercial); *Wash. Rsch. Project v. Dep't of Health, Educ. & Welfare*, 504 F.2d 238, 244-45 (D.C. Cir. 1974) (design by biomedical researcher not commercial); *Getman v. Nat'l Labor Rel.Bd.*, 450 F.2d 670, 673 (D.C. Cir. 1971) (identities of agency employees not commercial).

[15]  EPI has not challenged whether AEGIS is a "person" under Exemption 4, and its challenges to AEGIS' confidential treatment of the withheld information relies solely on dissimilar AEGIS policies for other entities Mr. Tait found online, without any context for the postings. Of these policies, nothing indicates that they were posted online by AEGIS and, in fact, one is an exhibit to a lawsuit filed against AEGIS. Also, at least two are for past policy periods, one of which was almost 10 years ago. This is dissimilar to the TVA-AEGIS Policy which, as responsive to EPI's FOIA Request 208 (Doc. 21-6), was the in-effect policy at the time the request was made. (Eller Decl., Doc. 33 ¶ 33; *see also* Doc. 27-4 at PageID#295.)

44.) It is foreseeable that this information could then be used by current and future policyholders to gain a competitive advantage over AEGIS. (Gaffney Decl., Doc. 36 ¶¶ 7-9.) As explained by Mr. Gaffney, maintaining the confidentiality of these terms and other individualized aspects of AEGIS' policies is essential to preserving competitive value. (*Id.*) Disclosing the withheld information could also discourage AEGIS from underwriting TVA risks in the future, impacting TVA's ability to obtain proper insurance coverage for its assets. (Kelley Decl., Doc. 37 ¶¶ 13-14.)

EPI claims that the showing of competitive harm to AEGIS is insufficient because dissimilar AEGIS policies, or portions of policies *not* involving TVA, are available online. Not so. EPI's argument fails to acknowledge Mr. Gaffney's testimony about the individualized nature of each policy and that disclosure would reveal information about AEGIS' assessment of risk. (Gaffney Decl., Doc. 36 ¶¶ 8, 10.) Moreover, the risk of harm to AEGIS lies in the disclosure of the particulars of the coverage offered to TVA in the TVA-AEGIS Policy as it would compromise AEGIS' relationship with other insureds who are offered, or who demand, different terms and prices than what AEGIS offers based on its assessment of an individual insured's risk. (*Id.* ¶¶ 7-9; Kelley Decl., Doc. 37 ¶ 13.) This satisfies the FIA. *See S. Env't L. Ctr. v. TVA*, 2023 WL 2387360, at \*12-13 (finding foreseeable harm based on submitters' declarations that information in withheld portions of contract could be used by competitors to gain an advantage in future negotiations).

EPI's claim that information about AEGIS is already publicly available on AEGIS' website is also unavailing. EPI has confused the general with the specific. The foreseeable harm identified by AEGIS is not to general information about AEGIS' business, but to the specific pricing and terms and conditions of coverage in the AEGIS-TVA Policy. (Gaffney Decl., Doc. 36 ¶¶ 9-10.) Moreover, publicly available, high-level information about a submitter's business (such as excess liability limits) is not sufficient to raise a factual issue rebutting Mr. Gaffney's declaration that the

specific terms of the TVA-AEGIS policy are confidential and competitively sensitive. *See ASBL v. DOD*, 411 F.Supp.3d at 831-33 (publicly available high-level information about a business insufficient to establish a genuine issue of fact a to confidentiality of specific information).

EPI's claim that AEGIS is not involved in a highly competitive insurance marketplace and therefore cannot claim to be competitively harmed by disclosure of its individualized risk assessments and premiums is speculation wholly without admissible factual support.[16] *Perez*, 2020 WL 4557387, at *11 (speculation does not discredit a declaration). More importantly, EPI's unsupported statement is directly contrary to statements of AEGIS' vice president of underwriting and TVA's director of corporate insurance, both of whom have extensive experience and personal knowledge of the insurance industry, particularly in the energy sector. (Gaffney Decl., Doc. 36 ¶¶ 1-4; Kelley Decl., Doc. 37 ¶¶ 1-3.) The same is true for EPI's claim TVA would not be competitively harmed when it annually negotiates for insurance if the withheld information were disclosed. EPI sets forth no admissible evidence to rebut Mr. Kelley's testimony that disclosure of the Policy's confidential information would give insurers in the marketplace critical insight into TVA's bargaining position on future pricing and coverage placement which, in turn, would compromise TVA's ability to obtain favorable terms and premium rates. (Doc. 37 ¶ 13.)

Finally, EPI's discussion of the relationship between TVA and AEGIS is irrelevant to the FIA. The relationship between TVA and AEGIS is that of member/mutual and is contractual in nature; similar to TVA's relationship with many other commercial contractors. The purpose of Exemption 4 is to ensure that federal agencies are able to obtain necessary and reliable commercial

---

[16]    It is also inconsistent with the materials EPI cites in support of this proposition. The AEGIS 2021 Annual Report discusses, among other items, AEGIS' business in relation to its competitors. Other excerpts from the Annual Report support both Mr. Gaffney and Mr. Kelley's discussion of the specialized nature of AEGIS and, as even Mr. Tait's declaration acknowledges, AEGIS' business strategy involving "pricing specific to each member's risk and exposures."

and financial information from outside the government and protects the submitters of such information from the competitive disadvantages that would result from disclosure. *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 877–78 (D.C. Cir. 1992). Exemption 4 does not demand any particular sort of relationship (or lack thereof) between the government and the submitter, such as whether the government and the submitter have or had a relationship, contractual or otherwise.

### C.  TVA properly applied Exemption 5 to information in the TVA-AEGIS Policy.

EPI's opposition to TVA's summary judgment restates the argument advanced in EPI's opening brief—that Exemption 5 only applies until the government completes the contract. (Doc. 25 at PageID##199-01.) In fact, in *Taylor Woodrow Int'l v. U.S. Dep't of Navy*, No. C88-429R, 1989 WL 1095561, at *1, 3 (W.D. Wash. Apr. 5, 1989), the district court extended the privilege to change orders throughout the term of a contract because others with access to the government's cost estimates could take unfair advantage of the government. EPI's claim that this privilege necessarily stops when a contract is awarded is simply not correct. *Taylor* indicates that if the harm Exemption 5 is intended to prevent continues to exist past the consummation of the contract with the confidential government information—such as here when TVA annually negotiates for its insurance contracts (Kelley Decl., Doc. 37 ¶¶ 11-13)—Exemption 5's protection of governmental confidential information applies. Thus, TVA has determined that Exemption 5's purpose, "to protect the release of potentially damaging commercial information . . . while the opportunity to take unfair advantage of the government agency continues to exist[,]" requires the application of Exemption 5 to the information it has withheld. *Taylor*, 1989 WL 1095561, at *3. This is precisely the type of competitive harm to the government that Exemption 5 is intended to prevent; therefore TVA's application of Exemption 5 to the redacted portions of the TVA-AEGIS Policy is proper. *See Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, 665 (1st Cir. 1982) (Exemption 5

protects the government when it enters the marketplace as an ordinary buyer or seller).

### III. TVA Has Met Its Obligation to Disclose Reasonably Segregable Material

EPI's segregability challenge is conclusory, circular, and frankly contradictory. As a starting point, EPI has failed to rebut the "presumption" that TVA "complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (agency entitled to presumption regarding reasonably segregable material), in light of Mr. Jaber, Mr. Gaffney, Mr. Kelley and Mr. Eller's sworn statements that line by line reviews of the documents were conducted and that any reasonably segregable non-exempt material was released. Indeed, TVA has produced almost 200 documents, either in whole or in part, as part of TVA's line-by-line reviews.[17] Moreover, a court should decline to order further segregation where it "would produce little of value" and thus "would be a waste of time and resources." *Cook*, 758 F.3d at 178-79. Indeed, "a court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977); *accord Amnesty Int'l USA v. CIA*, 728 F.Supp.2d 479, 529 (S.D.N.Y. 2010) ("[F]orcing the [agency] to reprocess all of the records for the sole purpose of releasing various words and phrases would be a waste of time and resources.").

### CONCLUSION

Based on the foregoing, the Court should grant TVA's Motion for Summary Judgment.

---

[17]     EPI's argument that TVA's good faith re-review of documents shows a lack of credibility has been resoundingly rejected. Courts repeatedly decline to infer bad faith from an agency's decision to "voluntarily reevaluat[e] and revis[e] its FOIA withholdings." *Am. C. L. Union v. Dep't of Def.*, 628 F.3d 612, 627 (D.C. Cir. 2011). The court in *Mil. Audit Project v. Casey* "emphatically reject[ed] [a] line of argument" akin to EPI's here. 656 F.2d at 754. To fault an agency for such revisions "would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld." *Id.*; *accord Skybridge Spectrum Found.,* 842 F.Supp.2d at 77 n.3.

Respectfully submitted,

*s/Lane E. McCarty*

David D. Ayliffe, (TN BPR 024297)
Director of Litigation
Lane E. McCarty (TN BPR 028340)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

*Attorneys for Tennessee Valley Authority*

118975197

**CERTIFICATE OF SERVICE**

I certify that, the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*s/Lane E. McCarty*
Attorney for Tennessee Valley Authority