UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| ENVIRONMENTAL AND POLICY INSTITUTE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No.: 3:22-cv-220-TAV-DCP |
| TENNESSEE VALLEY AUTHORITY, | ) |  |
| Defendant. | ) |  |

This lawsuit arises from two Freedom of Information Act ("FOIA") requests made by plaintiff Energy and Policy Institute to defendant Tennessee Valley Authority ("TVA"). Pending before the Court are plaintiff's motion for summary judgment [Doc. 24] and defendant's cross motion for summary judgment [Doc. 30]. As set forth below, the Court finds that it is necessary for defendant to submit a supplemental *Vaughn* Index or supplement its declarations, thereby enabling the Court to make an informed *de novo* determination on defendant's claims of exemption under FOIA. As described further below, the Court will **ORDER** defendant to file a supplemental *Vaughn* Index or supplement its declarations. Additionally, this case will be **STAYED** and the remaining scheduling order deadlines will be **SUSPENDED** pending resolution of the parties' motions for summary judgment. The parties' joint motion to continue trial [Doc. 43] is **DENIED** as **MOOT**.

I.  Background

Plaintiff made two separate FOIA requests to defendant in 2021. On April 13, 2021, plaintiff requested electronic records relating to defendant's involvement with McGuireWoods, the Clean Air Act Monitoring Service, and the Climate Legal Group ("CLG"), and any correspondence between certain McGuireWoods attorneys and defendant from March 1, 2020, through the date of the request ("FOIA Request 109") [Doc. 21-1].[1] In response, Defendant provided partially redacted documents and withheld other emails in full pursuant to FOIA Exemptions 4, 5, and 6 [Doc. 21-4, p. 2].

In support of its motion for summary judgment in this case, defendant groups the responsive documents to FOIA Request 109 in the following three categories: (1) the CLG, (2) the Power Generators Air Coalition ("PGen"), and (3) the Clean Air Act ("CAA") Regulatory Information and Compliance Matter [Doc. 34-4]. Each category is further broken down into subcategories. The first category, the CLG, contains two subcategories: (a) CLG Updates and (b) Operational Communications [*Id.*]. The second category, PGen, includes three subcategories: (a) communications with clients regarding PGen formation and incorporation; (b) communications with PGen (post-incorporation); and (c) communications with prospective clients [*Id.*]. The third and final category contains two subcategories: (a) retention negotiations and (b) legal communications [*Id.*].

II.  Analysis

FOIA cases are typically decided on motions for summary judgment, as most challenges to an agency's invocation of a FOIA exemption implicate purely questions of

---

[1] Only FOIA Request 109 is relevant for purposes of this Order.

2

Case 3:22-cv-00220-TAV-DCP   Document 44   Filed 10/06/23   Page 2 of 12   PageID #: 805

law. *S. Envtl. Law Ctr. v. Tennessee Valley Auth.*, No. 3:22-CV-00108, 2023 WL 2387360, at *5 (E.D. Tenn. Mar. 7, 2023) (citing *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001)). Under FOIA, an agency may withhold documents responsive to a FOIA request only if the withheld documents fall within an enumerated statutory exemption. *See* 5 U.S.C. § 552(b); *see also Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 494 (1994). The agency bears the burden of justifying any withholding. *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.C.C. 2007); *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) ("To prevail on summary judgment, the agency must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory exemption.").

The resolution of a FOIA exemption's applicability at the summary judgment stage "creates a situation in which a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA [request]." *Rugiero*, 257 F.3d at 544. "Ordinarily, an agency will offer detailed affidavits, rather than the requested documents themselves, to justify its decision to withhold information, and these affidavits are entitled to a presumption of good faith absent evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994)).

Additionally, or alternatively, the agency may also provide a detailed description of the information withheld by submitting what is called a *Vaughn* Index. *See Bigwood*, 484 F. Supp. 2d at 74; *see also Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Circ. 1973).

3

While a *Vaughn* Index need not take a specific form, the agency should "disclose as much information as possible without thwarting the exemption's purpose." *Hall v. Dep't of Just.*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (internal quotation marks omitted). Regardless the form, the agency should justify its position with "a relatively detailed analysis" of "manageable segments" of the documents. *Am. Civ. Liberties Union of Mich. v. FBI*, 734 F.3d 460, 465 (6th Cir. 2013). The district court reviews the federal agency's decision to withhold documents based on the claimed FOIA exemptions *de novo*. § 552(a)(4)(B).

In support of its motion for summary judgment, defendant has submitted a *Vaughn* Index and declarations in connection with FOIA Request 109 [Docs. 33; 33-3; 34–37; 41]. Among other declarations, defendant submitted declarations from Maria Gillen (the "Gillen Declaration"), a former attorney in the Office of General Counsel at TVA, and Makram Jaber (the "Jaber Declaration"), a partner at the law firm McGuireWoods LLP [Docs. 34; 35]. Upon review of the materials submitted by defendant, the Court finds that defendant's *Vaughn* Index and supplementary declarations are inadequate with respect to certain withheld documents and subcategories of withheld documents such that the Court cannot properly evaluate whether defendant's claimed exemptions are proper. *See Citizens for Resp. & Ethics in Wash. v. Gen. Servs. Admin.* (*Citizens I*), No. 18-2071, 2021 WL 765659, at *1 (D.D.C. Feb. 26, 2021).

As described above, defendant has grouped together related withheld documents into three categories and seven subcategories, which the Court finds helpful [Doc. 34-4]. While the descriptions of the documents in the *Vaughn* Index are largely boilerplate, defendant's supporting declarations provide additional detail of the nature of the withheld

4

documents as to each of the seven subcategories [Docs. 34; 35; 33-3]. However, despite defendant's position that the declarations are sufficient to carry its burden [Doc. 40, p. 12], certain explanations are overly broad such that the Court cannot determine whether the claimed exemption as to a particular document or subcategory of documents was proper. Given the large number of responsive documents at issue, a more detailed *Vaughn* Index and/or supplemental declaration that more specifically addresses each subcategory of withheld documents and withheld document for which there is currently no explanation would aid the Court in discerning whether the claimed exemptions are appropriate. Although not exhaustive, the Court will address some of the inadequacies of defendant's *Vaughn* Index and supporting declarations below.

### A. Exemption 5

Defendant has withheld a number of documents pursuant to Exemption 5, specifically the attorney client privilege. Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." § 552(b)(5). In the FOIA context, to establish that the attorney client privilege applies, an agency must show that (1) "the information in [the] documents was communicated to or by an attorney as part of a professional relationship," (2) "the information is confidential," and (3) the "communication is based on confidential information provided by the client." *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253–54 (D.C. Cir. 1977).[2] The agency must, "at the very least,

---

[2] The Court notes that neither party has cited to binding Sixth Circuit caselaw that addresses the attorney-client privilege in the context of FOIA litigation.

(1) describe with sufficient particularity the nature of the legal issue or issues for which advice was sought;" (2) explain whether the communication was made for the primary purpose of seeking or conveying legal advice, legal services, or assistance in a legal proceeding; and "(3) provide evidence that the communications were confidential." *See Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 308 (D.D.C. 2013).

The Court has discerned the following deficiencies (though not an exhaustive list) with defendant's Exemption 5 claims.

<u>Category 2(a): Communications with Clients Regarding PGen Formation and Incorporation</u>. While the Jaber Declaration and Gillen Declaration generally describe the nature of the legal advice sought and conveyed for the withheld documents in this subcategory, several entries in the *Vaughn* Index do not mention that the withheld document contained communications for the primary purpose of receiving or rendering legal advice or services. *See Muttitt*, 926 F. Supp. 2d at 308. In particular, the *Vaughn* Index lists several withheld communications with titles and subject lines that do not necessarily suggest that they were made for the primary purpose of seeking or conveying legal advice and otherwise lack explanation as to their content [*See e.g.*, Doc. 33-3, pp. 4 (#031), 9 (#061), 11 (#080), 12 (#84), 23 (#155), 24 (#156)].

Additionally, to the extent that McGuireWoods was the communicating party, the Court cannot determine whether the content of that communication was based on confidential information that originally belonged to PGen. *See Mead Data*, 566 F.2d at 253–54. For example, the Jaber Declaration broadly states that the documents contained

6

information and legal advice about PGen's formation, purpose, strategy, scope, governance (voting), operations, budget, and dues [Doc. 34 ¶ 35]. Based on this description, it is unclear whether legal advice was rendered based on confidential information that PGen first provided to McGuireWoods or whether McGuireWoods conveyed general advice about entity formation and governance that was not necessarily specific to PGen or originated with PGen.

Category 2(b): Communications with PGen (Post-Incorporation). Based on the relevant entries in the *Vaughn* Index and supporting declarations, the Court also cannot discern the specific nature of the legal advice rendered to PGen post-incorporation or whether the advice rendered by McGuireWoods was based on confidential information provided to it by PGen [*See, e.g.*, Doc. 33-3, pp. 12 (#082, 085–086), 20 (#136), 21 (#139–44), 22 (#145–47), 25 (#164), 26 (#170–71)]. The Jaber Declaration generally states that McGuireWoods advised PGen on legal developments regarding CAA regulations post-incorporation [Doc. 34 ¶¶ 7, 35]. As the *Vaughn Index* does not shed additional light, the Court cannot determine whether Exemption 5 is appropriate based solely on the generalized and broad assertion in the Jaber Declaration.

Category 2(c): Communications with Prospective Clients. Much like the other subcategories, the Court could not discern from the declarations or the *Vaughn* Index whether the information withheld, to the extent McGuireWoods was the party communicating, was informed by confidential information supplied by prospective clients to McGuireWoods [*See e.g.*, Doc. 33-3, pp. 9 (#063–066)].

7

Category 3: Retention Negotiations. Based on the *Vaughn* Index and supporting declarations, the Court cannot discern the nature of the legal advice or legal service that was either requested or rendered in Documents 110, 111, 114, and 118. For example, the Jaber Declaration states only that the documents in this category "include attorney-client privileged communications" without proffering additional detail as to each document or as to the subcategory of documents [*See* Doc. 34 ¶ 41]. Based on this broad assertion alone, the Court cannot determine whether the asserted red-line edits in those documents conveyed substantive legal advice originating from TVA [*See id.*; Doc. 33-3, pp. 16 (#110–11, 114), 17 (#118)].

In sum, the Court requires more detailed explanations that sufficiently describe the nature of the legal advice or services conveyed as to certain documents or subcategories of documents. A more detailed *Vaughn* Index and/or supplemental declarations would aid the Court in determining whether the documents withheld are protected by the attorney-client privilege.

**B.     Exemption 4**

Defendant also has withheld a large portion of documents under Exemption 4. Exemption 4 permits agencies to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." § 552(b)(4). "When an agency withholds non-trade-secret information under Exemption 4, it must demonstrate that the withheld information is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *S. Envtl. Law Ctr.*, No. 3:22-CV-00108, 2023 WL 2387360, at *6 (quotation marks omitted). "Withheld information must be commercial in

8

and of itself to qualify for withholding under Exemption 4; that disclosure might cause commercial repercussions does not suffice to show that information is 'commercial' under Exemption 4." *Id.* at *7 (citing *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Just.* (*Citizens II*), 58 F.4th 1255, 1268 (D.C. Cir. 2023)). In other words, "[i]nformation protected by Exemption 4 must be commercial in its own right." *Id.*

First, based on the *Vaughn* Index and declarations (including Jaber's supplemental declaration), the Court cannot discern whether Document 110 was created by TVA or McGuireWoods or substantially modified by a TVA employee [*See* Docs. 41; 33-3, p. 16 (#110)].

Next, defendant's explanations as to why the withheld documents in each subcategory were commercial "in [their] own right" lack sufficient detail for the Court to determine whether Exemption 4 was properly applied. *See Citizens II*, 58 F.4th at 65–67. For example, the Jaber Declaration states that the information generally "relate[s] to [McGuireWoods's] only product: the provision of legal services and the methods and approach for providing legal services" [Doc. 34 ¶ 15]. As to certain subcategories of withheld documents, the Jaber Declaration later asserts that disclosure would reveal how McGuireWoods advises and operates the CLG, the processes and operations of the CLG, and McGuireWoods's "strategy with respect to the operations and processes of PGen" [*Id.* ¶¶ 28, 31, 38]. Further, several entries in the *Vaughn* Index essentially state the same thing in boilerplate fashion: that disclosing the withheld documents, which contain commentary and analysis on regulatory and litigation developments, would "reveal the confidential

9

business practice and strategy of McGuireWoods and the CLG" [*See, e.g.*, Doc. 33-3, p. 38 (#287)].

Altogether, these statements are overly broad and lacking sufficient detail to help the Court determine whether the information withheld in each subcategory is in fact commercial under Exemption 4. As an example, defendant's declarations and the *Vaughn* Index do not sufficiently explain how an email from a McGuireWoods attorney that contains legal analysis of a Ninth Circuit decision involving the CAA is commercial information belonging to McGuireWoods (or the CLG) [*See* Doc. 35 ¶ 8]. Legal analysis of a court opinion or regulation does not strike the Court as being commercial information that belongs to McGuireWoods, and the broad assertion that McGuireWoods's "business strategy" and "methods and approach" would be revealed if the emails were disclosed does not provide specific insight [*See* Doc. 34 ¶¶ 15, 28, 31, 38]. While it may be the case that the withheld documents contain commercial information belonging to McGuireWoods, based on the record before it, the Court cannot make an informed determination one way or the other.

As a result, specific and more detailed explanations as to the commercial nature of the subcategories of withheld documents would aid the Court in determining whether the documents were properly withheld under Exemption 4.

### C. Remedy

If a federal court finds that an "agency fails to provide a sufficiently detailed explanation to enable the district court to make a *de novo* determination of the agency's claims of exemption, the district court then has several options, including inspecting the

documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998). A district court also has the discretion to order the agency to submit a more detailed *Vaughn* Index. *See, e.g.*, *Citizens I*, No. 18-2071, 2021 WL 765659, at *1; *Am. for Fair Treatment v. U.S. Postal Serv.*, No. 1:22-cv-1183-RCL 2023 WL 2610861, at *9, 14 (D.D.C. Mar. 23, 2023); *Kinnucan v. Nat'l Sec. Agency*, No. C20-1309, 2022 WL 16716224, at *10 (W.D. Wash. Nov. 4, 2022). Accordingly, the Court finds it appropriate to **ORDER** defendant to file a supplemental *Vaughn* Index or supplement its declarations. As discussed above, defendant should consider adding specific detail as to the nature of the subcategories of withheld documents such that the Court can discern whether the withholding of those documents was proper.

### III. Conclusion

In light of the cited deficiencies in defendant's *Vaughn* Index and the supplementary declarations, the Court **ORDERS** defendant to submit a more detailed *Vaughn* Index and/or supplement its declarations **by Tuesday, November 28, 2023.** The supplemental materials shall provide sufficient detail for the Court to determine whether the documents they wish to withhold are in fact protected from disclosure. To the extent defendant wishes to file an additional brief with the Court, it may do so when it files its supplementary materials if the brief is no more than ten (10) pages. To the extent plaintiff wishes to reply, plaintiff's opposition brief of no more than ten (10) pages shall be due fourteen (14) days after defendant files its brief.

11

Case 3:22-cv-00220-TAV-DCP   Document 44   Filed 10/06/23   Page 11 of 12   PageID #: 814

Further, in light of the above and the parties' joint motion to continue the trial date and suspend scheduling order deadlines [Doc. 43], this case is **STAYED** and the remaining scheduling order deadlines are **SUSPENDED** pending resolution of the parties' motions for summary judgment. The trial originally scheduled for November 7, 2023 is **CANCELLED**. Accordingly, the parties' motion [Doc. 43] is **DENIED** as **MOOT**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
