UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| ENERGY AND POLICY INSTITUTE, | |
| Plaintiff, | |
| v. | No. 3:22-cv-00220-TAV-DCP |
| TENNESSEE VALLEY AUTHORITY, | |
| Defendant. | |

**EPI'S RESPONSE TO TVA'S SUPPLEMENTAL BRIEF AND DECLARATION**

**INTRODUCTION**

EPI submits this response to TVA's supplemental filing by this Court's October 6 Order. Doc. 44 at 11 (ordering TVA to "provide sufficient detail for the Court to determine whether the documents they wish to withhold are in fact protected from disclosure"). The agency still fails to meet its burden under the Freedom of Information Act ("FOIA").[1] TVA must use appropriate standards to determine whether FOIA Exemptions apply and also provide evidence that there will be foreseeable harm from disclosure. 5 U.S.C. § 552(a)(8)(A). Then, the agency (not the submitter)[2] must review documents for segregability. U.S.C. § 552(b). After three failed attempts to meet their burden, TVA should be ordered to release disputed documents[3] or, in the alternative, provide documents from categories identified by the Court for *in camera* review. *See Spirko v.*

---

[1] On the day of its latest filing, TVA released portions of documents 109, 110, and 112-118. Doc. 45-1 at 15. TVA's approach must be met with skepticism, as it has repeatedly withdrawn claims it previously defended without proper support throughout this litigation.
[2] It is also improper for a third party to declare that TVA is asserting a privilege. *See* Doc. 46 at 6.
[3] In light of recent disclosures and TVA's supplement, EPI withdraws its challenge to the withholding of documents: 031, 034, 043, 050 (as previously produced, *Vaughn* description incorrect), 052, 068, 109, and 112. EPI withdraws these objections for efficiency or because it is now apparent that the remaining redacted material likely has relatively little public interest value.

1

*U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998) (explaining that if a court finds that an "agency fails to provide a sufficiently detailed explanation to enable the district court to make a *de novo* determination . . ., the district court then has several options, including inspecting the documents *in camera* . . . .").

## ARGUMENT

I. **TVA's Application of Attorney-Client Privilege Is Impermissibly Broad.**

Despite guidance from this Court, Doc. 44 at 5-6, TVA persists in misstating the legal standard for Exemption 5's attorney-client privilege and misapplies the privilege to all categories of documents.[4] To shield documents from disclosure under Exemption 5 attorney-client privilege, an agency must show that the withheld information "was communicated to or by an attorney as part of a professional relationship," that it is "confidential," and that "communication is based on confidential information provided by the client." *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253–54 (D.C. Cir. 1977). As for all FOIA exemptions, a claim of attorney-client privilege is appropriate only "where necessary to achieve its purpose . . . ." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986).

A. **TVA Fails to Show Attorney-Client Privilege Protects CLG Updates and Communications.**

Addressing CLG updates, TVA relies on the term "common interest"[5] in an attempt to stretch the privilege to cover shared documents that are based on publicly available information.

---

[4] In its supplemental filing, TVA withdraws its Exemption 5 claims for 67 documents. *Compare* Doc. 45-1 and Doc. 33-3. In addition, TVA improperly reinstates claims that it previously waived in its Reply, Doc. 40, for document numbers 032, 104, 120, 180, 185, and 366. *See* Doc. 45-1. This is impermissible, and Exemption 5 claims for these documents should be deemed waived.
[5] Rather than show a common interest by its legal definition, the facts indicate a potential waiver of attorney-client privilege by sharing between and within member organizations. *See In re Grand Jury Proceedings* 78 F.3d 251, 255 (6th Cir. 1996).

2

*See, e.g.*, Doc. 45-1 at 1, 2, 5, 6. "[I]t is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Brinton v. Department of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) (noting that otherwise agencies could "insulate facts from FOIA disclosure by simply routing them through lawyers in the agency"). TVA also incorrectly maintains that the attorney-client privilege protects "self-initiated attorney communications arising out of the attorneys' knowledge of the interest and needs of the client." Doc. 45 at 11. Mr. Jaber's declaration asserts that these documents, meant to serve a membership list of unknown number,[6] are privileged because they reflect "their organizations' areas of interest and need—[the] operations and potential impacts and compliance obligations about which they seek legal advice . . . ." Doc. 46 at 8. A general interest in particular legal topics inferred by virtue of CLG membership is not confidential information provided by the client. In addition, the description of CLG updates provided in the supplemental declaration undercuts the assertion that they are formed from client confidences. *Id*.

### B. The Application of Exemption 5 to PGen Records Is Not Adequately Supported.

Similarly, TVA offers no supplemental material that supports the withholding of records related to PGen under Exemption 5. TVA relies solely on the supplemental declaration by McGuireWoods to explain its application of the privilege and does not provide additional explanation by TVA or PGen. The declaration provided also does not assist the court in determining "whether the content of that communication was based on confidential information that originally belonged to PGen." Doc. 44 at 6. For example, although the supplemental *Vaughn*

---

[6] TVA's *Vaughn* discusses "'Group Communication' as defined by the confidentiality provision of the CLG's by-laws." Doc. 45-1 at 13 (No. 93). Attorney-client privilege, however, "is not a creature of contract." *In re Columbia/Hca Healthcare*, 293 F.3d 289, 303 (6th Cir. 2002).

3

lists no author for No. 042, and its title is strikingly similar to "Talking Points" No. 041 where the claim of privilege was withdrawn, Mr. Jaber claims that No. 042 "reflects confidential information from PGen members regarding the substantive subject matters within CAA regulatory law" while also containing confidential commercial information of PGen and McGuireWoods. Doc. 46 at 18; *see also* Doc. 46 at 26 (No. 139). Not only does this description not conform with the document title, but it also fails to "describe with some reasonable level of detail the nature of the legal issue or issues for which advice was being sought" or whether the document seeks or conveys legal advice. *See, e.g.*, *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 309 (D.D.C. 2013).

Nor does the declaration describe client confidences that would be revealed from the full or partial release of formation-related documents. Mr. Jaber merely claims that these documents are "based on confidential communications from PGen members regarding their consideration of the purpose and scope of the organization and how they wanted PGen to operate." Doc. 46 at 21. *See also id.* at 22-23, 28 (omitting any description of PGen or PGen member confidential information contained in documents 055-057, 074-076, 129, 164, 170, and 173-178 and stating only that "[t]he information in these communications is legal advice and counsel provided by PGen counsel to PGen members in response to their confidential request to revise the legal documents governing PGen"). This description is vague and shows that TVA's application of the privilege is impermissibly broad. *See infra* at 2-3; *see also* Doc. 38 at 7-8.

The October 6th Order also pointed to Nos. 063 to 066 as examples of where it was unclear "whether the information withheld, to the extent McGuireWoods was the party communicating, was informed by confidential information supplied by prospective clients to McGuireWoods." Doc. 44 at 7. TVA seems to have waived its Exemption 5 argument for

4

document No. 063 but not for Nos. 064 to 066. *Compare* Doc. 33-3 at 9 with Doc. 45-1 at 9. Instead, Mr. Jaber merely states that these documents are "based on confidential communications with the entities who retained McGuireWoods to assist them in setting up PGen for advice on legally creating PGen as a corporation and therefore reflect confidential legal advice provided to PGen members and to this prospective member pursuant to a confidentiality agreement." Doc. 46 at 30.

        **C.**        **TVA's Vague Assertions Do Not Justify Withholding CAA Regulatory and Compliance Matter Documents.**

Finally, EPI disputes the application of Exemption 5 to communications related to the Clean Air Act ("CAA") Regulatory Information and Compliance matter. TVA makes a general assertion that communications from McGuireWoods to TVA are all related to legal advice and therefore exempt as attorney-client privilege or confidential commercial information. But vague assertions of attorney-client privilege do not aid the agency in meeting its burden to justify the withholding of documents "containing legal analyses arising out of TVA's consideration of retaining McGuireWoods." Doc. 46 at 39. TVA's arguments again fail to show that communications between TVA and McGuireWoods are based on TVA's confidential information. For example, the observation that TVA has electric generating units falls short of proving that an update about a challenge (not involving TVA) to an EPA rule is based on client confidential information. Doc. 46 at 40 (No. 186). *See also* Doc. 46 at 41-42. It follows that TVA cannot show foreseeable harm from disclosing client confidences when it can identify none.

        **II.**        **TVA Does Not Meet Its Burden Regarding Exemption 4 Applications.**

TVA also fails to provide any meaningful supplemental information regarding the applicability of Exemption 4 to withheld documents. Exemption 4 permits an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or

5

confidential." 5 U.S.C. § 552(b)(4). TVA must prove every component of Exemption 4 applies to each record withheld and show that its release would cause foreseeable harm. Doc. 25 at 14. Instead, TVA relies on a 44-page declaration from an outside law firm to discuss the application of Exemption 4 and to speculate as to the competitive harm of disclosure to McGuireWoods, CLG, and PGen all at once. Conclusory statements like "McGuireWoods' work product is its commercial product [and] it is commercial information for that reason[]" do not help TVA meet its burden. Doc. 46 at 10. The agency also seems to ask the court to adopt a new rule where all attorney communications are protected under Exemption 4 since attorneys are in the business of providing legal advice and communicate for this business purpose.[7] Doc. 45 at 7. Such a rule would negate any need for Exemption 5's attorney-client privilege and is thus unreasonable.

### A. TVA Failed to Show Exemption 4 Applies to CLG or CAA Regulatory and Compliance Documents.

This Court's order discussed that case summaries were not, without more explanation, commercial in nature. Doc. 44 at 10. The supplemental declaration, although lengthy, relies on conclusory statements strikingly similar to those in previous submissions by the agency that this Court found to be insufficient. Doc. 44 at 9. Communications containing general information about regulatory developments are not eligible for protection—and certainly not in their entirety—under Exemption 4 unless all elements are met. In addition, the argument that release could show *how* a lawyer provides legal summaries or other services is unavailing. The method for creating a document on "CAA Regulatory Developments," for example, is a part of standard legal practice and is openly described by TVA in its latest submissions. Doc. 45-1 at 28 (No.

---

[7] Assuming arguendo that the laundry list of "work product" or the business "roadmap" described by TVA are commercial in nature, they do not reflect the documents in the *Vaughn*. Doc. 45 at 8. TVA's examples do not align with the facts, Doc. 45 at 6-7, and examples of consultant or attorney work falling under the exemption do not provide a basis to expand the scope of Exemption 4 here. Doc. 25 at 22-24; Doc. 38 at 21-22.

6

205); Doc. 46 at 10. TVA also does not adequately describe the commercial value of emails that identify CLG members. *See, e.g.*, Doc. 45-1 at 4 (No. 028).

Whether information is confidential, and therefore eligible for withholding, is an objective test distinct from the commercial and foreseeable-harm analyses. Doc. 25 at 26. TVA's supplemental materials discuss an agreement between CLG members but provide no indication of how many members are involved or if the terms of the agreement provide that distribution is for a "limited few" within these groups. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). Simply labeling a document confidential does not suffice, and TVA fails to show that this material was closely held by the person imparting the information. Doc. 38 at 22-23.

TVA also does not plausibly describe foreseeable harm to a protected interest under Exemption 4 from the release of any of these documents in whole or in part. TVA vaguely asserts that there is a "highly competitive and specialized field of legal advice and counsel related to climate-change laws and regulation." Doc. 46 at 10. But the supplement does not describe this market or explain, for example, how disclosure would make clients choose another firm. Breach of confidentiality, without more, is not evidence of foreseeable harm.[8] *See* Doc. 38 at 24.

### B. TVA Failed to Show Exemption 4 Applies to Records Withheld Related to PGen.

In addition, the supplemental material submitted by TVA fails to assist this Court in determining whether Exemption 4 was properly applied to documents related to PGen. The filings submitted by TVA still lack sufficient foundation to determine whether the information is commercial confidential information and whether its release would cause foreseeable harm. *See*

---

[8] TVA may prefer to keep its relationship with corporate entities confidential and feel hindered in its participation in third-party interest groups by its FOIA obligations, but this is not a protected interest under Exemption 4. *See* Doc. 25 at 22-23, 28; Doc. 38 at 24-25.

*Friends of Animals v. Bernhardt*, 15 F.4th 1254, 1274 (10th Cir. 2021); *see also* Doc. 38 at 20. Persistent lack of clarity in the document descriptions about whether McGuireWoods or PGen owns the alleged confidential information underscores the need for an admissible declaration from PGen (or a TVA staff member who served on its board). *See, e.g.*, Doc. 46 at 14, 27, 30. Unless Mr. Jaber is understating his role,[9] he cannot, "on behalf of PGen," provide evidence of the commercial or confidential nature of PGen material or of foreseeable harm to PGen's commercial interests that would result from disclosure. Doc. 46 at 4.

Moreover, the statements regarding the commercial nature of information are not sufficiently described to meet the agency's burden: "PGen is also a part of a competitive field of specialized legal services in a complicated regulatory field that entities can choose from." Doc. 46 at 4. *See also id.* at 14. As discussed previously, not all information relating to business activities is "commercial" information eligible for withholding under Exemption 4. Doc. 25 at 22; Doc. 38 at 22, 27. TVA fails to show that all withheld material is commercial, and the agency may not justify its application of Exemption 4 through labels alone. Doc. 46 at 28-29, 31-32. In particular, TVA fails to adequately explain the commercial and confidential nature of emails that appear to be correspondence about the federal government's recruitment efforts for PGen. Doc. 45-1 at 42 (No. 365); Doc. 46 at 16-17. *See also* Doc. 45-1 at 24 (No. 169) (conversations about "feedback from calls"). Some of the provided descriptions also contradict what has been already revealed through partially unredacted material. Doc. 46 at 27 (No. 137) (mostly unredacted email about a meeting the next day, yet described as "PGen members' strategy of how McGuireWoods

---

[9] TVA has represented McGuireWoods' involvement with PGen in the following way: "The PGen Board of Directors, from time to time, directs McGuireWoods to assist in preparing comments on major Clean Air Act rules that are relevant to PGen and its members." Doc. 35 at 5. McGuireWoods similarly makes no mention of its involvement or personal knowledge of PGen's commercial affairs or daily operations. Doc. 46 at 4.

8

would communicate with members"). And TVA's supplemental material still does not answer whether some documents were drafted, at least in part, by TVA or include disclosable comments by TVA. *See* Doc. 45-1 (Nos. 032, 033, 040-042, 077, 121, 123-125).

Whether information is confidential for the next prong of Exemption 4 depends on the conduct of the submitter, PGen. *Argus Leader*, 139 S. Ct. at 2366; Doc. 25 at 26-27. To date, TVA makes vague assertions about the behavior of PGen and describes the existence of a confidentiality agreement. *See, e.g.*, Doc. 35 at 6 ("This information is confidential under PGen's Structures and Procedures document . . . ."); Doc. 46 at 14. Without more evidence of PGen's conduct and practices, for instance, the agency cannot show that PGen material is "confidential." *Argus Leader*, 139 S. Ct. at 2366.

Finally, any admissible statements of foreseeable harm are conclusory. According to TVA, PGen is a tailor-made 501(c)(6) organization fulfilling a limited purpose. *See* Doc. 35 at 5. There is no evidence that it operates in a "competitive field." Doc. 46 at 4. Moreover, the supplemental declaration does not describe any foreseeable harm, and TVA has not supplemented the original *Vaughn*'s repeated inadequate and conclusory statement that "disclosure would foreseeably harm PGen, its members, and McGuireWoods' commercial or business interests." Doc. 45-1 at 25. The agency has not met its burden. *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 3 F.4th 350 (D.C. Cir. 2021) (agencies must connect specific alleged harm with specific information withheld).

TVA asks this court to shield a federal agency's activities from public view because they were done under cover of a special-interest group. Even if this court allows third-party statements on behalf of PGen, neither TVA nor McGuireWoods has adequately described why

9

the withheld material is commercial confidential information or how PGen is engaged in a marketplace where disclosure would result in specific, non-speculative foreseeable harm.

### III. TVA Failed to Release All Reasonably Segregable Material.

TVA must provide "any reasonably segregable portion of a record" that otherwise contains some exempt information. 5 U.S.C. § 552(b). *See also* 5 U.S.C. § 552(a)(8)(A)(ii); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 553 (6th Cir. 2000) ("[A]n agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure."). Descriptions of the records show that there is abundant segregable information that can be released to EPI. *See, e.g.,* Doc. 45-1 at 4 (No. 028). TVA's claims that it completed multiple "line-by-line" reviews at the administrative appeal level, but since then, TVA has released documents at multiple times in litigation. *See* Doc. 33 at 22. The agency now impermissibly relies on the opinion of a third party to assert that the agency has met its burden in conducting an appropriate segregability review. *See, e.g.*, Doc. 46 at 22 (Mr. Jaber stating he "conducted a line-by-line review of these communications, and all reasonably segregable factual information has been released or provided in the Vaughn Index"). Thus, TVA has not met its burden in showing that all segregable information has been released.

### CONCLUSION

For the reasons cited above, EPI requests that this Court order TVA to release withheld material in dispute or, in the alternative, to provide documents to the Court for *in camera* review.

Dated December 12, 2023

Respectfully submitted,

*s/Allison Kole*
Pro Hac Vice
D.C. Bar No. 1031724
Essential Information, Inc.

1718 Connecticut Ave. NW
Washington, DC 20009
(202) 596-7540
akole@essential.org
Respectfully submitted,

Zehava Robbins
Pro Hac Vice
D.C. Bar No. 242265
Essential Information, Inc.
(202) 643-6267
zrobbins@essential.org

Chris Irwin
BPR# 025478
PO Box 9682
Knoxville, TN 37940
(865) 257-4029
christopherscottirwin@yahoo.com


*Attorneys for Plaintiff*