UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ENVIRONMENTAL AND POLICY        )
INSTITUTE,                       )
                                 )
            Plaintiff,           )
                                 )
v.                               )        No.:  3:22-CV-220-TAV-DCP
                                 )
TENNESSEE VALLEY AUTHORITY,      )
                                 )
            Defendant.           )

## MEMORANDUM OPINION

This lawsuit arises from two Freedom of Information Act ("FOIA") requests made by plaintiff Energy and Policy Institute ("EPI") to defendant Tennessee Valley Authority ("TVA").  Pending before the Court are plaintiff's motion for summary judgment [Doc. 24] and defendant's cross motion for summary judgment [Doc. 30].  Pursuant to the Court's order [Doc. 44], defendant has submitted a supplemental *Vaughn* Index[1] and declaration [Docs. 45-1, 46].  Plaintiff has responded [Doc. 47].  Accordingly, this matter is now ripe for review.  *See* E.D. Tenn. L.R. 7.1(a).  For the reasons that follow, defendant's motion for summary judgment [Doc. 30] is **GRANTED**, plaintiff's motion for summary judgment [Doc. 24] is **DENIED**, and this case will be **DISMISSED**.

## I.    Background

Plaintiff made two separate FOIA requests to defendant in 2021.  On April 13, 2021, plaintiff requested electronic records relating to defendant's involvement with

---

[1] This index provides the Court with "a relatively detailed analysis in manageable segments" to "assur[e] a proper justification by the governmental agency."  *Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Circ. 1973).

McGuireWoods, the Clean Air Act Monitoring Service, the Climate Legal Group ("CLG"), the Power Generators Air Coalition ("PGen"), and any correspondence between certain McGuireWoods attorneys and defendant from March 1, 2020, through the date of the request ("FOIA Request 109") [Doc. 21-1]. In response, defendant provided partially redacted documents and withheld other documents in full pursuant to FOIA Exemptions 4, 5, and 6 [Doc. 21-4, p. 2]. On September 16, 2021, plaintiff requested defendant's insurance policies underwritten by Associated Electric & Gas Insurance Services ("AEGIS") for specific coal-fired power plants ("FOIA Request 208") [Doc. 21-6, pp. 3–4]. In response, defendant provided partially redacted documents pursuant to FOIA Exemptions 4 and 5 [Doc. 21-8, p. 1].

Plaintiff appealed both of defendant's responses [Docs. 21-4, 21-9]. Its first appeal objected to defendant's alleged failure to provide "reasonably segregable" information, to explain the applicability of FOIA Exemptions 4, 5, and 6, and to apply the foreseeable-harm standard in responding to FOIA Request 109 [Doc. 21-4, p. 2]. Defendant denied this appeal on grounds that, among other things, a detailed *Vaughn* index was not yet required, and that TVA's application of the foreseeable-harm standard need not be conveyed in writing [Doc. 21-5, pp. 1–2]. Plaintiff's second appeal raised similar arguments (though limited to FOIA Exemptions 4 and 5) as to defendant's production in response to FOIA Request 208 [Doc. 21-9, p. 2]. Defendant denied this appeal primarily on grounds that its application of FOIA Exemptions 4 and 5 was appropriate given the nature of insurance contracts and the insurance market generally [Doc. 21-10, pp. 1–2].

Plaintiff maintains that TVA "has failed to provide legally adequate final determinations explaining why documents responsive to EPI's FOIA requests were withheld" pursuant to 5 U.S.C. §§ 552(a)(3)(A), (6)(A) [Doc. 19, p. 8]. Specifically, plaintiff alleges that TVA has "erroneously assert[ed]" FOIA Exemptions 4, 5, and 6 [*Id*.]. Additionally, plaintiff alleges that defendant has failed to disclose all "reasonably segregable" portions of responsive material pursuant to 5 U.S.C. § 552(b).

## II.    Standard of Review

FOIA cases are typically decided on motions for summary judgment, as most challenges to an agency's invocation of a FOIA exemption implicate purely questions of law. *S. Envtl. Law Ctr. v. Tenn. Valley Auth.*, No. 3:22-CV-108, 2023 WL 2387360, at *5 (E.D. Tenn. Mar. 7, 2023) (citing *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001)). Under FOIA, an agency may withhold documents responsive to a FOIA request only if the withheld documents fall within an enumerated statutory exemption. *See* 5 U.S.C. § 552(b); *see also U.S. Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 494 (1994). The agency bears the burden of justifying any withholding. *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) ("To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory exemption.") (quoting

3

*CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011)); *see Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007).[2]

The resolution of a FOIA exemption's applicability at the summary judgment stage "creates a situation in which a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA [request]." *Rugiero*, 257 F.3d at 544. "Ordinarily, an agency will offer detailed affidavits, rather than the requested documents themselves, to justify its decision to withhold information, and these affidavits are entitled to a presumption of good faith absent evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994)).

Additionally, or alternatively, the agency may also provide a detailed description of the information withheld by submitting what is called a *Vaughn* Index. *See Bigwood*, 484 F. Supp. 2d at 74; *see also Vaughn*, 484 F.2d at 827–28. While a *Vaughn* Index need not take a specific form, the agency should "disclose as much information as possible without thwarting the exemption's purpose." *Hall v. Dep't of Just.*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (internal quotation marks omitted). Regardless of its form, the agency should justify its position with "a relatively detailed analysis" of "manageable segments" of the documents. *Am. Civ. Liberties Union of Mich. v. FBI*, 734 F.3d 460, 465 (6th Cir. 2013).

---

[2] The Court notes that it frequently cites District of Columbia cases throughout this Opinion. While these out of circuit opinions are not binding on the Court, the frequency with which FOIA issues have arisen in the District of Columbia has produced a helpful body of case law that informs the Court's analysis. Wherever possible, these citations are supplemented with Sixth Circuit precedent.

4

The district court reviews the federal agency's decision to withhold documents based on the claimed FOIA exemptions *de novo*. *See* 5 U.S.C. § 552(a)(4)(B).

## III. Analysis

### A. EPI's FOIA Request 109

The Court initially found that defendant's *Vaughn* Index and supplementary declarations were inadequate with respect to certain withheld information in response to FOIA Request 109 such that the Court could not properly evaluate whether defendant's claimed exemptions were proper [Doc. 44, p. 4]. Accordingly, the Court ordered defendant to file a supplemental *Vaughn* Index or otherwise supplement its declarations [Doc. 44, p. 11]. In response to the Court's order, defendant submitted a supplemental *Vaughn* Index [Doc. 45-1] and a supplemental declaration of Makram B. Jaber [Doc. 46].

Defendant's revised filings now provide sufficient detail to permit the Court to evaluate whether the claimed FOIA exemptions were proper. The revised *Vaughn* Index provides more specific descriptions of the nature of legal advice or services conveyed in certain documents, more detailed justifications for claimed exemptions, and more thorough explanations of how confidentiality and privacy concerns apply to certain documents [*see generally* Doc. 45-1]. Defendant's second supplemental declaration nearly doubled the length of its original declaration [*Compare* Doc. 34 *with* Doc. 46] and provides more comprehensive justifications for applying FOIA exemptions, descriptions of legal services and the competitive legal market, and explanations of confidentiality applying to certain commercial information [*see generally* Doc. 46].

5

### i. Withholdings Under FOIA Exemption 4

Defendant invoked FOIA Exemption 4 in responding to FOIA Request 109 [Doc. 21-3, p. 1]. Plaintiff alleges that defendant has failed to meet its burden in showing that material requested is eligible for Exemption 4's "trade secrets or confidential commercial information" provision [Doc. 19, p. 8]. It first argues that such references to TVA's relationship with McGuireWoods are "[c]onclusory" and do not satisfy defendant's burden under FOIA [*Id*. at 6]. Plaintiff also takes issue with defendant's reliance on an outside law firm to identify and substantiate the applicability of Exemption 4 to certain materials [*see* Doc. 47, pp. 5–6]. At bottom, in plaintiff's view, TVA's endorsement of McGuireWoods' requested withholdings would "shield a federal agency's activities from public view because they were done under cover of a special-interest group" [*Id*. at 9].

Defendant contends that it properly withheld material of McGuireWoods, the CLG, and PGen because "[a]ll documents responsive to FOIA Request 109 arose in the context of either an established attorney-client relationship between McGuireWoods and TVA, and established attorney-client relationship between McGuireWoods and the CLG or PGen, or a prospective attorney-client relationship" [Doc. 31, p. 16]. For example, documents related to the CLG "include attorney analysis, advice, commentary, and guidance on climate-related regulatory and litigation developments . . ." [*Id*. at 17]. As for PGen materials, defendant argues that these documents similarly include legal advice "intended for potential PGen members" [*Id*. at 18]. Additionally, defendant revised its *Vaughn* Index

to include greater detail regarding the applicability of Exemption 4 in approximately 25 entries.[3]

Exemption 4 shields from disclosure "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential." 5 U.S.C. § 552(b)(4). Where withheld records do not contain trade secrets, an agency must establish that the records are "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential" to sustain the burden of showing that Exemption 4 was properly applied. *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin*., 704 F.2d 1280, 1290 (D.C. Cir. 1983); *see also Varnum LLP v. United States Dep't of Lab*., No. 1:18-CV-1156, 2021 WL 1387773, at *5 (W.D. Mich. Mar. 15, 2021) (granting summary judgment to defendant agency on grounds that Exemption 4 covered certain commercial and confidential materials). Upon satisfying the Exemption 4 requirements, the government must then also satisfy FOIA's statutory foreseeable-harm requirement. 5 U.S.C. § 552(a)(8)(A)(i)(I) ("An agency shall withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by [one of the nine FOIA exemptions]").

### 1. Sufficiency of Showing that the Withheld Information is Commercial

Plaintiff asserts that defendant takes an "impermissibly broad approach" in deeming certain material commercial [Doc. 25, p. 23]. It cites an example of TVA classifying an

---

[3] *See, e.g.*, Doc. 45-1 p. 1 (#001), (#006), (#011); p. 3 (#021), (#025); p. 5 (#042); p. 7 (#055); p. 12 (#091); p. 13 (#093), (#098).

email to coordinate a meeting as commercial in nature [*Id*. at 24]. Plaintiff also argues that any claims regarding the commercial nature of materials made "on behalf of the CLG and PGen" are "inadmissible hearsay" [Doc. 38, p. 20]. Plaintiff accuses defendant of making "circular arguments" on this point insofar as defendant points to commercial consequences to justify material as "commercial" in nature [*Id*. at 21]. Finally, plaintiff cautions that defendant would have the Court "adopt a new rule where all attorney communications are protected under Exemption 4" [Doc. 47, p. 6].

Defendant argues that its withheld information relates directly to McGuireWoods' commercial relationship with its clients, including TVA [Doc. 31, p. 19]. This information, in its view, "reveals the basic commercial operations of McGuireWoods" [*Id*. at 20]. Defendant also cites analogous caselaw deeming the professional opinions of consultants and reports created for clients as "commercial" [Doc. 45, p. 4 (citing *ICM Registry v. U.S. Dep't of Com*., No. 06-0949, 2007 WL 1020748, at *7 (D.D.C. Mar. 29, 2007))]. Therefore, defendant analogizes to the professional opinions that McGuireWoods provides its client [*Id*. at 6].

The term "commercial" is not defined in FOIA. Absent a precise statutory definition or clarity from the legislative history, courts have "consistently held that [this] term . . . should be given [its] ordinary meaning." *Pub. Citizen Health Rsch. Grp*., 704 F.2d at 1290; *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002). "[I]nformation is 'commercial' under this exemption if, 'in and of itself,' it serves a 'commercial function' or is of a 'commercial nature.'" *Nat'l Ass'n of Home Builders*, 309 F.3d at 38 (quoting *Am. Airlines, Inc. v. Nat'l Mediation Bd*., 588 F.2d 863, 870 (2d

8

Cir. 1978)). Thus, "records that actually reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or relate to the income-producing aspects of a business," fall within the scope of "commercial" information. *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290. For instance, documents that contain "revenue, net worth, income, and EBITDA" information are plainly commercial. *Kahn v. Fed. Motor Carrier Safety Admin.*, 648 F. Supp. 2d 31, 36 (D.D.C. 2009). The scope of "commercial" information has also been applied more broadly to records containing information in which the provider of the records has "a commercial interest." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 319–20 (D.C. Cir. 2006) (finding letters describing favorable market conditions for domestic lumber companies "plainly contain commercial information within the meaning of Exemption 4"); *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290 (finding information to be commercial when it was helpful or "instrumental" to the provider's business interests).

Defendant has clearly established that each of the disputed categories of documents are "commercial" within the meaning of Exemption 4. Broadly, McGuireWoods' work product[4] may "constitute commercial information . . . because this work product is how the law firm generates revenue in the commercial sense" [Doc. 46, p. 2]. *See ICM Registry*,

---

[4] The Court acknowledges plaintiff's argument that third party submissions are inappropriate in support of FOIA exemption withholdings [*see* Doc. 47, pp. 5–6, 10]. However, plaintiff's citations on this point are unpersuasive. In *Ecological Rts. Found. v. EPA*, which plaintiff argues should prohibit McGuireWoods' supporting materials, the court held for the government, permitting third-party statements at summary judgment. 541 F. Supp. 3d 34, 67 (D.D.C. 2021). Elsewhere, plaintiff asserts without citation that defendant "impermissibly relies on the opinion of a third party" [Doc. 47, p. 10]. Given that FOIA expressly envisions cooperation of non-agency third parties in its statutory text, *see* 5. U.S.C. § 551(2), the Court will not discredit defendant's filings in which McGuireWoods, AEGIS, or another third party may have contributed.

9

2007 WL 1020748, at *7; *Baker & Hostetler LLP*, 473 F.3d at 319.  Taking each of defendant's three major categories in turn,[5] the disclosure of CLG updates and operational communications, "would reveal the business practice and strategy of the CLG and McGuire Woods" [*See, e.g.*, Doc. 45-1, p. 1 (#001); p. 3 (#021), p. 12 (#091)].  Mr. Jaber's declaration, which is entitled to a presumption of good faith, *Rimmer*, 700 F.3d at 255, states that CLG updates include "a description of the subject matter being analyzed by counsel; a selection of facts chosen by counsel pertinent to the subject matter and a legal analysis as relevant to the request for legal advice from the members," among other things [Doc. 46, p. 8].  Defendant argues that these updates are McGuireWoods' "commercial product."  [*Id.* at 10].  While CLG updates do not appear to be commercial "in and of [themselves]" in the *Nat'l Ass'n of Home Builders* sense, 309 F.3d at 38, they clearly constitute material in which McGuireWoods has "a commercial interest," *Baker & Hostetler LLP*, 473 F.3d at 319, which is "instrumental" to its business interests.  *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290.

Similarly, the Court agrees that disclosure of PGen communications (both pre- and post-incorporation) could "reveal the business practice and strategy of PGen" [*See, e.g.*, Doc. 45-1, p. 9 (#070)].  Mr. Jaber explains that PGen communications exemplify "the *sine*

---

[5] Defendant groups the responsive documents to FOIA Request 109 in the following three categories: (1) the CLG, (2) the Power Generators Air Coalition ("PGen"), and (3) the Clean Air Act ("CAA") Regulatory Information and Compliance Matter [Doc. 34-4].  Each category is further broken down into subcategories.  The first category, the CLG, contains two subcategories: (a) CLG Updates and (b) Operational Communications [*Id.*].  The second category, PGen, includes three subcategories: (a) communications with clients regarding PGen formation and incorporation; (b) communications with PGen (post-incorporation); and (c) communications with prospective clients [*Id.*].  The third and final category contains two subcategories: (a) retention negotiations and (b) legal communications [*Id.*].

*qua non* of how McGuireWoods makes a profit." [Doc. 46, p. 14]. For example, he clarifies how email correspondence between PGen counsel and PGen members [Doc. 46 ¶¶ 28(c), (h), (i)] "reflects McGuireWoods' main confidential, commercial product (i.e., work product containing legal services and providing counsel, what the firm is retained and paid for) to its client" [*Id*. ¶ 28(i)]. As with CLG material, these documents fall within the well-recognized "commercial interest" sense of Exemption 4. *See Baker & Hostetler LLP*, 473 F.3d at 319.

As for the CAA Regulatory Information and Compliance matter, defendant demonstrates that McGuireWoods identifies both information in which it has a "commercial interest" and more traditional "commercial" information [*See, e.g.*, Doc. 45-1, p. 26 (#183)]. McGuireWoods withheld its "tailored rate for a particular legal service" [Doc. 46 ¶ 36(a)], and its "bank account and commercial transaction information" [*Id*. ¶ 36(d)], which fall squarely within the meaning of "commercial." *See Nat'l Ass'n of Home Builders*, 309 F.3d at 38. Other withholdings rest on justifications similar to those provided for CLG material, noting "a description of the subject matter being analyzed by counsel; a selection of facts chosen by counsel pertinent to the subject matter and a legal analysis as relevant to the request for legal advice from TVA" [*Id*. ¶ 38]. Although this explanation is boilerplate insofar as it constitutes "all-purpose language that will fit in a variety of documents," Black's Law Dictionary (12th ed. 2024), this does not invalidate defendant's contention that the ways in which CLG and CAA material is "commercial" are highly similar.

In sum, defendant has demonstrated that its Exemption 4 withholdings in response to FOIA Request 109 "actually reveal basic commercial operations" and qualify as "commercial." *Pub. Citizen Health Rsch. Grp*., 704 F.2d at 1290. Plaintiff argues that such a ruling affords uniquely sweeping protection to attorney communications, but the Court disagrees [*see* Doc. 47, p. 6]. The breadth of coverage provided by Exemption 4 arises from the statute's use of the term "commercial," which encompasses a wide range of information in non-legal industries. *See, e.g.*, *Racal–Milgo Gov't Sys., Inc. v. Small Bus. Admin*., 559 F. Supp. 4, 6 (D.D.C. 1981) (finding that Exemption 4 shielded information such as "audits of private concessions in national parks; technical proposals for development of a system to analyze gases generated by petroleum refineries; general selling prices, inventory balances, profit margins, purchase activity, freight charges, costs of goods sold, and customer names, obtained from a utility in the course of a government investigation; appraised value for customs duty assessment purposes of imported machinery parts; design recommendations, design concepts, a customer list, and biographical data on key employees; and computer usage, manpower allocation, travel costs, biographical data on employees, and detailed cost data from a contract with the Government" (footnotes omitted)).

### 2. Sufficiency of Showing that Defendant Qualifies as a "Person"

Plaintiff objects to defendant's showing that all withheld material originated from a "person" within the meaning of FOIA Exemption 4 [Doc. 25, p. 25]. Plaintiff points to an email from Mr. Jaber to Carolyn Kora, a TVA employee, which it argued was "made in

12

part by TVA" rather than a non-government entity [*Id.*].  Plaintiff also objects to defendant's failure to show that each entry in its *Vaughn* index demonstrated that it was obtained from "a person" [Doc. 38, pp. 19–20].  Defendant dismisses this argument on grounds that it stands on thin evidence—an email requesting that Ms. Kora "go through a pre-incorporation PGen presentation" [Doc. 31, p. 21].

FOIA defines "person" as inclusive of "an individual, partnership, corporation, association, or public or private organization other than an agency."  5 U.S.C. § 551(2); *see also Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109, 119 (D.D.C. 2015) (clarifying that Exemption 4's "person" term primarily distinguishes between internal and external information from the government agency's perspective).

Each document for which defendant invokes Exemption 4 originates from a "person" within its statutory meaning.  Plaintiff's sole cited example of noncompliance, an email between Mr. Jaber and Ms. Kora, still originates "from a person."  5 U.S.C. § 552(b)(4).  The plain meaning of Exemption 4 and its accompanying definition of "person" excludes purely internal, intra-agency communications, but it does not exclude correspondence between an agency and a "person."  *See Ctr. for Auto Safety*, 133 F. Supp. 3d at 119.  Were the Court to adopt such a reading of Exemption 4, virtually any correspondence between an agency and an external party would be ineligible for Exemption 4, thereby defeating the purpose of the statutory exemption.

### 3. Sufficiency of Showing that the Withheld Information is Confidential

Defendant points to McGuireWoods' practice of keeping plaintiff's requested materials confidential, as well as a law firm's ethical duty to "maintain the confidentiality of information exchanged with clients and prospective clients" [Doc. 31, p. 22]. Additionally, CLG and PGen agreements expressly designate requested information as confidential. [*Id*. at 23]. In the words of Buddy Eller, TVA's FOIA Director, such disclosure "would destroy the privileged and confidential nature of the attorney-client communications." [Doc. 33, p. 9; *accord* Doc. 34, p. 20]. Plaintiff, on the other hand, argues that defendant's reference to CLG bylaws is an insufficient basis to conclude that the documents in question are "closely held" [Doc. 38, p. 23]. Plaintiff also questions the scope of such confidentiality agreements among CLG members because it is unclear how many members would receive these materials and whether further circulation among recipients would be prohibited [Doc. 47, p. 7].

A "commercial" document may only be withheld under Exemption 4 if it is "privileged" or "confidential." 5 U.S.C. § 552(b)(4). Commercial or financial information is confidential if it is "(1) both customarily and actually treated as private by its owner and (2) provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019). Exemption 4 applies to all commercial information provided to agencies whether voluntarily or otherwise. Although the *Argus Leader* Court did not "need to resolve" whether the second condition—assurance of privacy—was necessary in every case, whether the agency provided an assurance of

14

privacy is undoubtedly relevant to determining whether commercial information possessed by an agency is "confidential." *Argus Leader*, 588 U.S. at 435; *see also S. Env't L. Ctr. v. Tenn. Valley Auth.*, 659 F. Supp. 3d 902, 912 (E.D. Tenn. 2023) (applying *Argus Leader* to conclude that "business decisions, practices, and conduct" contained in agreements between TVA and natural gas pipeline companies were "confidential"). "In addition, in assessing customary disclosure, the court will consider how the particular party customarily treats the information, not how the industry as a whole treats the information." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001) (citing *Critical Mass*, 975 F.2d at 872, 878–80); *see also Argus Leader*, 588 U.S. at 434 (explaining that "information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it").

Defendant has established that its withheld documents are confidential for purposes of Exemption 4. Many withheld documents contain email headings stating that their contents were "PRIVILEGED AND CONFIDENTIAL" [*See, e.g.*, Doc. 45-1, p. 2 (#011)]. Beyond mere labeling, however, McGuireWoods states that this material "is customarily and actually kept private . . . and was provided to TVA and other members of the CLG with an expectation of privacy" [*Id.*]. Some PGen materials were also subject to a confidentiality provision, which prohibited members from "releasing information within the scope of the PGen's functions and activities" [*See, e.g.*, Doc. 45-1, p. 9 (#068)]. While the Court is mindful that defendant separately asserts attorney-client privilege for Exemption 5 withholdings (*see infra* Section III(A)(iii)), its arguments regarding a lawyer's ethical duty to maintain client confidentiality are relevant here, as well, because

15

they further substantiate McGuireWoods' claim of confidentiality. Under the streamlined *Argus Leader* rule, defendant's burden is satisfied by definitively showing only the first requirement that information is "customarily and actually treated as private by its owner." *Argus Leader*, 588 U.S. at 440.

### 4. Sufficiency of Showing that Disclosure of the Withheld Information Would Cause Foreseeable Harm

Plaintiff asserts that defendant has failed to show a foreseeable harm flowing from disclosure of its Exemption 4 documents [Doc. 25, p. 28]. Specifically, it argues that "TVA has not provided evidence from the [CLG] or PGen that the release of records from 2020 will cause them harm" [*Id.*]. Additionally, it notes that public scrutiny over agency activity is not a legitimate form of harm protected by Exemption 4 [Doc. 38, p. 24]. Defendant counters by citing *Argus Leader*, which recognized the balance struck by Congress in enacting Exemption 4 to "provid[e] private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work." [Doc. 40, p. 17 (quoting *Argus Leader*, 588 U.S. at 440)]. It also argues that other groups offering similar services to the CLG and PGen would unfairly benefit from public disclosure [Doc. 45, p. 10].

The FOIA Improvement Act provides that "[a]n agency shall withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by" one of the nine FOIA exemptions. 5 U.S.C. § 552(a)(8)(A)(i)(I). This provision requires agencies withholding information under an exemption to show not only that a withheld record "falls within a FOIA exemption," but also "that the agency

16

'reasonably foresees that disclosure would harm an interest protected by [the] exemption.'" *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (alteration in original) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)); *see also S. Env't L. Ctr.*, 659 F. Supp. 3d at 919 (holding that TVA met its burden to show foreseeable harm on the basis of two declarations from private companies).

To satisfy the foreseeable harm requirement, defendant must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as by causing "genuine harm to [its] owner's economic or business interests," in *Argus Leader*, 588 U.S. 427 at 441 (Breyer, J., concurring in part), and thereby dissuading others from submitting similar information to the government. *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768 (D.C. Cir. 1974), abrogated by *Argus Leader*, 588 U.S. at 427 (explaining that Exemption 4 "'is intended to encourage individuals to provide certain kinds of confidential information to the Government,'" and to "protect[ ] persons who submit financial or commercial data to government agencies from the competitive disadvantages which would result from its publication" (quoting *Soucie v. David*, 448 F.2d 1067, 1078 (D.C. Cir. 1971))). Agencies therefore "must provide more than 'nearly identical boilerplate statements' and 'generic and nebulous articulations of harm.'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting *Jud. Watch v. U.S. Dep't of Just.*, No. CV 17-0832 (CKK), 2019 WL 4644029, at *4–5 (D.D.C. Sept. 24, 2019)). *See also Weikamp v. U.S. Dep't of the Navy*, No. 1:14 CV 22, 2014 WL 12748775, at *8 (N.D. Ohio Sept. 24, 2014) (initially denying

government's summary judgment motion on grounds that it "ha[d] not shown a likelihood of substantial competitive harm" under Exemption 4).

Defendant relies on repetitive language to demonstrate the foreseeable harm it anticipates from disclosure. In almost every *Vaughn* entry, it recites that disclosure "would give competitors . . . access to confidential commercial information" [*See, e.g.*, Doc. 45-1, p. 9 (#068)]. While the government must provide "more than 'nearly identical boilerplate statements," *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106, there are necessarily limitations on its ability to predict potential harms arising from disclosure of each particular document. *See Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020) ("The degree of detail necessary to substantiate a claim of foreseeable harm is context-specific."). For example, it is difficult to imagine how McGuireWoods could predict distinctive harms arising from the disclosure of a "draft standards and procedures document which discusses the operations of PGen" [Doc. 45-1, p. 24 (#171)], on the one hand, and a "counsel's commentary and analysis on climate-related regulatory and litigation developments" [Doc. 45-1, p. 30 (#221)], on the other. Moreover, the Court does not read § 552(b)(5) to require such a detailed forecast of every possible harm; rather, the foreseeable harm requirement separates information whose disclosure is of little consequence from information whose disclosure *could* reasonably cause harm. *See Energy Pol'y Advocs. v. Sec. & Exch. Comm'n*, 699 F. Supp. 3d 56, 66 (D.D.C. 2023) (holding that certain withholdings by their nature do not "require a particularly lengthy or nuanced explanation to demonstrate" foreseeable harm). Contrary to plaintiff's assertion that defendant "does not describe *any* foreseeable harm" [Doc. 47, p. 9 (emphasis added)], the

18

*Vaughn* Index provides sufficiently detailed descriptions of foreseeable harm [*see, e.g.*, Doc. 45-1, p. 16 (#117) ("Disclosure . . . would give competitors access to McGuireWoods' confidential commercial information regarding how it provides legal services to clients as well as contracting matters.")]. Similarly rebutting plaintiff's arguments [*see* Doc. 47, p. 9], defendant's revised *Vaughn* Index added more detail on precisely this issue [*see, e.g.*, Doc. 45-1, p. 7 (#054) ("Disclosure . . . would give competitors of PGen and McGuireWoods access to confidential information regarding how PGen operates, and the advice given by McGuireWoods to PGen and its members and prospective members.")].

In sum, the Court finds that defendant has satisfied its burden to demonstrate the applicability of Exemption 4 to each category of withholdings. Because each FOIA Exemption provides an independent justification for withholding, those entries claiming Exemption 4 individually and those claiming it in conjunction with other Exemptions are resolved at this stage of the analysis, provided they also survive segregability analysis (*see infra* Section III(A)(iv)).[6] Only those materials withheld on the basis of Exemption 5 or 6, but not Exemption 4, related to FOIA Request 109 are subject to further analysis.

### ii. Withholdings Under FOIA Exemption 6

Defendant invokes Exemption 6 to withhold names, direct telephone numbers, mobile phone numbers, and email addresses of individuals as an unwarranted invasion of personal privacy [*see, e.g.*, Doc. 45-1, p. 9 (#069)]. Plaintiff asserts that defendant has

---

[6] *See* Doc. 45-1, Nos. 001, 006, 011, 017, 021, 025, 028–35, 038, 040–44, 048–68, 070–72, 074–78, 080–91, 093, 098, 102–07, 109–65, 167–92, 196, 205, 207–09, 219–21, 223, 227, 231, 234–35, 238, 240, 247, 255, 258, 265, 274, 280–81, 284, 287, 291, 297, 305, 310, 315, 318, 323, 328, 345, 347, 349, 350, 353–56, 358–62, and 365–67.

19

failed to meet its burden of proof as to this exemption, as well [Doc. 19, p. 8]. Specifically, it argues that "the public interest outweighs any cognizable privacy interest in names of parties doing business with the government and their business email addresses" [Doc. 25, p. 29 (citing *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980))].

Defendant contends that all of its redacted information under Exemption 6 contains "names and email addresses of individuals 'doing business with the government.'" [*Id*. at 29]. Therefore, it argues that "the names of the individuals and their contact information who work for members of the CLG and PGen does not advance any understanding of TVA operations and therefore it is of no public interest." [*Id.* (citing *Smith v. Dep't of Labor*, 798 F.Supp.2d 274, 283 (D.D.C. 2011))]. These third-party individuals, it argues, are entitled to their privacy [Doc. 40, p. 23].

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Just*., 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin*., 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc)). "To determine whether Exemption 6 applies, the Sixth Circuit has outlined a two-part inquiry: '1) does the file contain personnel, medical or 'similar' data; and 2) if so, would disclosure be a 'clearly unwarranted invasion of personal privacy.'" *Perrusquia v. Tenn. Valley Auth*., No. 3:22-CV-309, 2023 WL 6303013, at *3 (E.D. Tenn.

20

Sept. 27, 2023) (quoting *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 937 (6th Cir. 1988)) (citations omitted).

Once this threshold determination is met, courts must balance competing interests "between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *Schell*, 843 F.2d at 938 (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)). The Sixth Circuit instructs courts to consider two factors: "the privacy interest at stake and the public interest in disclosure." *Id.* (citing *Heights Cmty. Cong. v. Veterans Admin.*, 732 F.2d 526, 529 (6th Cir. 1984)). *See also Cause of Action Inst. v. Exp.-Imp. Bank of the United States*, 521 F. Supp. 3d 64, 95 (D.D.C. 2021) (holding that privacy interests in agency personnel's email addresses outweighed public interest in disclosure).

### 1. Sufficiency of Showing "Similar Files"

Defendant argues that plaintiff conceded the first prong of Exemption 6's analysis, leaving only the determination of whether disclosure invades personal privacy [Doc. 31, p. 27; *see also* Doc. 38, p. 16 (plaintiff disputing its concession of the first prong)]. It cites case law supporting the proposition that courts routinely uphold the applicability of Exemption 6 to mobile phone numbers for both agency and non-agency employees [Doc. 40, p. 22 (citing *Bader Fam. Found. v. U.S. Dep't of Educ.*, 630 F.Supp.3d 36, 46 (D.D.C. 2022))]. Plaintiff contends that defendant has not shown that business email addresses are "similar files" because its footnote to this end is "insufficient" to clear its burden of proof [Doc. 38, p. 16].

21

The Court must determine whether the withheld information constitutes "similar files" to "personnel and medical files" that are subject to Exemption 6. 5 U.S.C. § 552(b)(6). "The terms [sic] 'similar files' is construed broadly and 'is intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Gov't Accountability Project*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) (quoting *U.S. Dep't of State v. Wash. Post Co*., 456 U.S. 595, 602 (1982)). "[C]ourts look 'not to the nature of the files,' but rather to 'the nature of the information' at issue." *Skybridge Spectrum Found. v. F.C.C*., 842 F. Supp. 2d 65, 83 (D.D.C. 2012) (quoting *N.Y. Times*, 920 F.2d at 1006); *see also Jud. Watch, Inc. v. Food & Drug Admin*., 449 F.3d 141, 152 (D.C. Cir. 2006) ("similar files" encompasses "not just files, but also bits of personal information, such as names and addresses, the release of which would 'create a palpable threat to privacy.'" (alteration in original) (quoting *Carter v. U.S. Dep't of Com*., 830 F.2d 388, 391 (D.C. Cir. 1987))).

Defendant has established that the names, direct telephone numbers, mobile phone numbers, and email addresses of individuals it withheld under Exemption 6 constitute "similar files" within its statutory meaning [*see, e.g.*, Doc. 45-1, p. 43 (#368) ("the information applies to and is identified with a particular individual")]. Following guidance to focus on "'the nature of the information' at issue," the Court finds that such personal contact information is "similar" to the sorts of personnel and medical records that have been frequently exempted from FOIA disclosure requests. *Skybridge Spectrum Found*, 842 F. Supp. 2d at 83 (quoting *N.Y. Times*, 920 F.2d at 1006). Defendant has also narrowly invoked Exemption 6 to redact personal contact information from documents; so, it has not

taken interpretive liberty with the term "similar," to withhold more information than necessary. The first prong of *Schell* is satisfied. 843 F.2d at 937.

## 2. The Private Interests Outweigh the Public Interest in Disclosure

Defendant argues that disclosure of non-agency individuals' (i.e., McGuireWoods clients and prospective clients) contact information would open them up to unsolicited and potentially harassing contact [Doc. 31, p. 32]. It further asserts that because PGen's membership list is publicly available, there is no public interest in the individual names of employees of those member organizations [*Id*. at 28–29]. This is especially true for the contact information belonging to prospective PGen clients as defendant argues that these individuals did not consent to any affiliation with PGen in the first place [Doc. 40, p. 23]. Plaintiff argues that the risk that a person may be asked questions or "face embarrassment from disclosure" is not a sufficiently strong private interest to permit withholding [Doc. 25, p. 29].

Considering the two factors relevant to this balancing inquiry, the privacy interest at stake in personal contact information is self-evident [*see, e.g.*, Doc. 45-1, p. 42 (#360) ("personal information is withheld to avoid unsolicited communication")]. As other courts have concluded, the disclosure of "bits of personal information, such as names and addresses . . . would 'create a palpable threat to privacy,'" because it would subject individuals to unsolicited contact. *Jud. Watch, Inc.*, 449 F.3d at 152 (quoting *Carter*, 830 F.2d at 391). This privacy stake is particularly palpable, as defendant notes, for those individuals who were prospective members of PGen but who did not ultimately join the

group. To now disclose these individuals' personal phone numbers or email addresses would amount to a "clearly unwarranted invasion of personal privacy." *Perrusquia*, 2023 WL 6303013, at *3 (quoting *Schell*, 843 F.2d at 937).

As for the public interest in disclosure, plaintiff fails to demonstrate how its general mission of "researching TVA's role in special interest groups" is furthered by the disclosure of non-agency members' contact information [Doc. 27, p. 1]. While it is true that "fac[ing] embarrassment from disclosure" alone is an insufficient Exemption 6 privacy interest, there is also little *public* interest in exposing members to embarrassment or harassment [Doc. 25, p. 29]. As defendant's *Vaughn* Index details, personal contact information "does not shed light on the agency's performance of its duties." [*see, e.g.*, Doc. 45-1, p. 42 (#360)]. In short, plaintiff does not demonstrate a compelling public interest sufficiently strong to outweigh the obvious privacy concerns at issue in defendant's Exemption 6 withholdings. Accordingly, the second prong of *Schell* is satisfied. 843 F.2d at 937.

### 3. Sufficiency of Showing that Disclosure of the Withheld Information Would Cause Foreseeable Harm

Defendant argues that involuntary disclosure of non-agency individuals' contact information is likely to expose these individuals to unsolicited, potentially harassing contact [Doc. 31, p. 32]. It also cites negative potential impacts on TVA's attorney-client relationship moving forward, chilling the agency's access to legal advice in areas central to its operations [*Id.*]. Plaintiff does not appear to object to defendant's showing of

24

foreseeable harm within this specific context; however, it objects generally to defendant's showing of foreseeable harm as "conclusory statements" [Doc. 38, p. 14].

The Court finds that defendant has demonstrated foreseeable harm that would arise from the disclosure of non-agency individuals' contact information. Far from a "generic and nebulous articulation[] of harm," *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106, defendant's concerns about harassment and unwanted contact are specific to the individuals' whose information is sought by plaintiff. Perhaps evidenced by the absence of specific objections by plaintiff, the potential for harm arising from such a disclosure falls squarely within the limitation recognized by 5 U.S.C. § 552(a)(8)(A)(i)(I) (permitting withholding where "disclosure would harm an interest protected by an exemption").

### iii. Withholdings Under FOIA Exemption 5

Defendant invoked FOIA Exemption 5's attorney-client privilege in responding to FOIA Request 109 [Doc. 21-3, p. 1; *see also* Doc. 33, pp. 7–8]. Plaintiff alleges that defendant has failed to meet its burden in showing that material requested was eligible for Exemption 5 [Doc. 19, p. 8]. Specifically, plaintiff contends that many of defendant's document descriptions appear to relate to "broad topics" and not to specific requests for legal counsel [*see* Doc. 38, p. 12]. The Court notes that the removal of certain invocations of the attorney-client privilege was among the most significant revisions between the original and newly submitted *Vaughn* Index [*Compare, e.g.*, Doc. 33-3, p. 4 (#028) *with* Doc. 45-1, p. 4 (#028) (removing "Exemption 5")]. Plaintiff argues that this set of revisions demonstrates that defendant has misapplied the attorney-client privilege to "all categories of documents" [Doc. 47, p. 2]. In particular, plaintiff takes aim at defendant's invocation

25

of Exemption 5 with respect to PGen material [*see id.* at 3], noting ambiguity in its view as to which party was communicating the alleged confidential information [*Id.* at 4–5].

However, defendant only invokes Exemption 5 concurrently with Exemption 4 or Exemption 6 [*see generally* Doc. 45-1]. Because the Court finds that defendant's reliance on Exemption 4 and 6 in FOIA Request 109 were compliant (*see supra* Section III(A)(i), (ii)), it is now unnecessary to rule on the propriety of defendant's reliance on Exemption 5 within FOIA Request 109. The only potential need for an independent Exemption 5 analysis pertains to segregability (e.g., where a portion of a document is withheld on the basis of Exemption 4 but another, separate portion is withheld on the basis of Exemption 5). However, that situation does not arise here because defendant's Exemption 5 withholdings all invoke attorney-client privilege, raising similar and coextensive arguments as to the confidentiality of each document. Therefore, having concluded that defendant's Exemption 4 and 6 justifications complied with FOIA, the Court need not reach the issue of Exemption 5's applicability in FOIA Request 109.

### iv. Segregability

Plaintiff asserts that defendant failed to disclose "any reasonably segregable" portion of information from the redacted materials per § 552(b) [Doc. 19, p. 8]. Specifically, it challenges the agency's withholding in full of 157 emails rather than redacting certain portions [Doc. 25, pp. 29–30]. Plaintiff renews its challenge to TVA's

Case 3:22-cv-00220-TAV-DCP   Document 48   Filed 10/21/24   Page 26 of 34   PageID #: 957

reliance on the opinion of a third-party to meet its burden as to segregability [Doc. 47, p. 10].[7]

Defendant contends that it has redacted documents where material is reasonably segregable or it has withheld where "the nonexempt information is inextricably intertwined with exempt information" [Doc. 21, p. 15]. It claims that it conducted a "line-by-line review of each withheld record and released all reasonably segregable factual or non-privileged information" [Doc. 31, p. 41]. Finally, it cites case law cautioning courts from ordering additional efforts to segregate material where the redacted copies would provide little or no additional value [Doc. 40, p. 32].

The Court must consider segregability with respect to each claimed FOIA Exemption. *Shteynlyuger v. Centers for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 131 (D.D.C. 2023). But "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (first citing *Summers v. DOJ*, 140 F.3d 1077, 1081 (D.C. Cir. 1998); then citing *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993)); *see also Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 309 (D.D.C. 2013) ("Even when a plaintiff does not challenge the segregability efforts of an agency, the Court has an affirmative duty to consider the segregability issue sua sponte." (quotation omitted)). Specifically, the Court must determine whether "'[a]ny reasonably segregable portion of a record shall be provided'

---

[7] *See supra* note 3 and accompanying text.

after exempt portions are deleted." *Sussman*, 494 F.3d at 1112 (quoting 5 U.S.C. § 552(b)(1)(9)). *See also Eleiwa v. Transportation Sec. Admin.*, No. 2:15-CV-2571, 2016 WL 7497584, at *8 (W.D. Tenn. July 19, 2016) (holding that government satisfied its segregation obligation under FOIA where agency supplemented initial withholdings and provided good-faith certification of withheld material).

In its *Vaughn* Index, defendant has substantiated its withholdings in full or in part pursuant to Exemptions 4, 5, and 6 [*see* Doc. 45-1]. While an agency should provide a "relatively detailed analysis" of "manageable segments" of the documents, *Am. Civ. Liberties Union of Mich.*, 734 F.3d at 465, these descriptions should not "thwart[] the exemption's purpose." *Hall*, 552 F. Supp. 2d at 27. In connection to its Exemption 4 withholdings, defendant strikes this balance by noting where "no non-exempt information . . . is reasonably segregable from the exempt information," followed by a factual description of each document in Column H [*see*, *e.g.*, Doc. 45-1, p. 39 (#323)]. Because its Exemption 4 documents contain confidential commercial information, defendant cannot reasonably disclose e.g., headings, email subject lines, or other organizational material because such material is inextricably linked to the core substance over which the exemption was claimed. For example, defendant withheld in full one CLG update containing "counsel's commentary and analysis on climate-related regulatory and litigation developments including of opinions from federal and state court litigation . . ." [*Id.*]. Even if defendant produced, for example, the case names or regulations analyzed therein, such disclosure would similarly trigger the risks of foreseeable harm analyzed

28

above.  The Court finds that the *Vaughn* Index provides sufficiently specific justifications for segregability for Exemption 4.

Defendant did not withhold any documents in full on the basis of Exemption 6; instead, it relied on this exemption to narrowly redact personal contact information of various individuals described in the *Vaughn* Index [*see*, *e.g.*, Doc. 45-1, p. 40 (#342)]. Given that defendant redacted this material and produced all unredacted information, the Court readily concludes that it has met its segregability requirement with respect to Exemption 6, also.  Having concluded that defendant satisfied this final requirement with respect to FOIA Request 109, defendant's motion for summary judgment [Doc. 30] is **GRANTED** as to the claims pertaining to FOIA Request 109.

### B.  EPI's FOIA Request 208

#### i.  Withholdings Under FOIA Exemption 4

Plaintiff alleges that defendant has not met its burden in showing that material requested under FOIA Request 208 is eligible for withholding as "confidential commercial information" under Exemption 4 [Doc. 19, p. 8].  Defendant asserts that its redactions from the insurance policy fall within Exemption 4 [Doc. 21, p. 10; *see also* Doc. 31, p. 33]. Specifically, defendant notes that AEGIS requested and justified each redaction from the requested policy [Doc. 21, pp. 11–12; *see also* Doc. 21-10, pp. 1–2].  Because the Court has already laid out the relevant legal standards for each part of the Exemption 4 analysis (*see supra* Section III(A)(i)), it will not recite them here.

### 1. Sufficiency of Showing that the Withheld Information is Commercial

Defendant argues that because AEGIS is a mutual insurance company its policies "manifest the insurance company's proprietary underwriting process" [Doc. 31, p. 33]. To develop its policies, AEGIS has allegedly invested considerable time and expense; therefore, public disclosure would harm the business by allowing competitors to misappropriate its work product [*Id.* at 33–34]. Plaintiff argues that aspects of the AEGIS policy, for example the dates of coverage, are not "commercial" in their own right [Doc. 38, p. 30]. Specifically, it argues that defendant interpreted "commercial or financial" too broadly by redacting "names of representatives, dates of the policy coverage period, and what appears to be an index of the contents of the policy" [Doc. 25, p. 24]. But defendant counters that even dates are "intertwined with AEGIS' individualized pricing for the Policy" [Doc. 40, pp. 27–28]. Additionally, Martin Gaffney, a Vice President at AEGIS, explained that such details could compromise the company's "relationship with other insureds who may . . . [be] offered difference terms and prices" [Doc. 36 ¶ 10].

Defendant has shown that the AEGIS policy is "commercial." Certain redactions, including for example the policy premiums, constitute the straightforward "income-producing aspects of a business." *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290. Other redactions fall within the "commercial interest" sense of the term as applied *supra* to McGuireWoods. *See Baker & Hostetler LLP*, 473 F.3d at 319. AEGIS' commercial interest in its policies is analogous to McGuireWoods' interest in its legal advice; that is, these work products both constitute the primary vehicle through which the

respective firms earn profit and compete in the marketplace.  *See Nat'l Ass'n of Home Builders*, 309 F.3d at 38; *see also Citizens for Resp. & Ethics in Washington v. U.S Dep't of Just.*, No. 19-CV-3626, 2024 WL 1406550, at *5 (D.D.C. Mar. 31, 2024) (holding that even disclosure of contractors' names would reveal an ongoing "business purpose" and therefore qualified as "commercial").  Therefore, defendant satisfies the first element of Exemption 4 with respect to FOIA Request 208.

### 2. Sufficiency of Showing that Defendant Qualifies as a "Person"

Defendant contends that AEGIS is a person within the meaning of Exemption 4 because it underwrites and issues "individualized insurance policies" to its customers [Doc. 31, p. 35].  It also notes that EPI has not challenged whether AEGIS is a "person" under Exemption 4 (unlike its challenge to this classification in regard to FOIA Request 109) [Doc. 40, p. 28 n.15].  The Court readily finds that AEGIS is a "person" for purposes of Exemption 4 because it is "a corporation . . . other than an agency."  5 U.S.C. § 551(2).

### 3. Sufficiency of Showing that the Withheld Information is Confidential

Defendant argues that the requested information is customarily kept private by AEGIS [Doc. 31, p. 36].  Additionally, AEGIS submitted the requested materials to TVA with the understanding that it would be treated confidentially [*Id.*].  Mr. Gaffney's declaration, which is entitled to a presumption of good faith, *see Rimmer*, 700 F.3d at 255, elaborated on AEGIS' confidentiality practices, noting that it customarily did not publish policies on any public domain, it will seek protective orders in discovery requests, and it uses password-protected databases [Doc. 36 ¶ 12].  Prior to Mr. Gaffney's declaration,

plaintiff initially contended that defendant had not produced any evidence about how AEGIS customarily treats the redacted information as private [Doc. 25, p. 27].

AEGIS "customarily and actually" treats its insurance policies confidentially. *Argus Leader*, 588 U.S. at 440. Mr. Gaffney pointed to several specific practices that easily satisfy *Argus Leader*'s first prong of analysis [*see, e.g.*, Doc. 36 ¶ 12]. 588 U.S. at 439–40. Even without evidence of those practices, defendant has made clear that its dealings with AEGIS were "under an assurance of privacy," satisfying the second prong, as well. Accordingly, the insurance policy at issue in FOIA Request 209 is confidential within the meaning of Exemption 4.

### 4. Sufficiency of Showing that Disclosure of the Withheld Information Would Cause Foreseeable Harm

Plaintiff disputes whether disclosure of the insurance policy would harm the insurer [Doc. 25, p. 29]. Specifically, it located an expired AEGIS Excess Liability policy online and argues that defendant's suggested foreseeable harm is "actually nonexistent" [Doc. 38, p. 32]. Defendant asserts that "[d]isclosing the redacted information would have the foreseeable harm of placing the submitter at a competitive disadvantage in the commercial insurance market" [Doc. 21-8, p. 1]. Specifically, public disclosure of AEGIS policy terms would "allow competitors to misappropriate AEGIS' proprietary work product" [Doc. 31, p. 39]. Mr. Gaffney also cites a specific risk that:

> If the terms and pricing offered by AEGIS to an insured were readily available to other insurers in the market, those insurers could misappropriate AEGIS' work product simply by offering an insured the same coverage, at the same or a lower price, without having to incur the expense and burden of developing a competitive underwriting quote, thus harming AEGIS'

commercial interests and its competitive position in the insurance marketplace.

[Doc. 36 ¶ 9]. Defendant has shown that disclosure of the insurance policy beyond the present redactions risks reasonably foreseeable harm. Specifically, the agency "reasonably foresees that disclosure would harm" AEGIS' competitive standing in its highly specialized field of insurance underwriting [*see id*.]; *Machado Amadis*, 971 F.3d at 370. In sum, defendant has justified its reliance on Exemption 4 with respect to its redactions in response to FOIA Request 209.

### ii. Withholdings Under FOIA Exemption 5

Defendant invoked Exemption 5's protection of confidential commercial and financial information [Doc. 36-1, p. 1]. Plaintiff argues that defendant misapplied the confidential commercial information privilege pursuant to Exemption 5 because the privilege is confined to government-produced materials [Doc. 25, pp. 16–17]. Defendant contends that "[d]isclosure of information that would harm the agency in future contract negotiations when it enters a marketplace as an ordinary buyer is precisely the sort of information that is protected under the confidential commercial information privilege and Exemption 5" [Doc. 31, p. 40 (citing *Hack v. U.S. Dep't of Energy*, 538 F.Supp. 1098, 1103–04 (D.D.C. 1982))].

As with defendant's simultaneous exemptions in FOIA Request 109, it claims FOIA Exemptions 4 and 5 concurrently (and specifically, the confidential commercial information privilege) to justify its redactions; however, the Court need not address defendant's compliance with Exemption 5 because Exemption 4 provides an independent

and sufficient basis to justify its redactions. Accordingly, the Court finds that defendant's response to FOIA Request 208 was compliant, subject to a segregability analysis.

### iii. Segregability

Because defendant produced a redacted copy of the requested insurance policy, plaintiff does not appear to raise a segregability argument specific to FOIA Request 208 [*see* Doc. 25, pp. 29–30]. However, the Court must evaluate segregability regardless of the parties' arguments. *Muttitt*, 926 F. Supp. 2d at 309. Per Martin Gaffney's declaration, AEGIS determined which portions of the insurance documents could result in foreseeable harm [Doc. 36 ¶¶ 9–10]. The Court finds that defendant has disclosed all reasonably segregable portions of the requested material in FOIA Request 208.

Having concluded that defendant satisfied this final requirement with respect to FOIA Request 208, defendant's motion for summary judgment [Doc. 30] is **GRANTED** as to the claims pertaining to FOIA Request 208.

## IV. Conclusion

For the reasons above, the Court **GRANTS** defendant's motion for summary judgment [Doc. 30], **DENIES** plaintiff's motion for summary judgment [Doc. 24], and this case will be **DISMISSED**. An appropriate order shall enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

34