UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

ENERGY AND POLICY INSTITUTE,

     Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY,

     Defendant.

No. 3:22-cv-00220-TAV-DCP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EPI'S MOTION
FOR ATTORNEY FEES AND COSTS**

Chris Irwin
BPR No. 025478

Zehava Robbins
Pro Hac Vice
D.C. Bar No. 242265

Allison Kole
Pro Hac Vice
D.C. Bar No. 1031724

*Attorneys for Plaintiff*

November 18, 2024

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 1

III.   ARGUMENT .................................................................................................... 7

   A.   EPI Is Eligible for An Award of Attorney Fees and Costs Because EPI Has Substantially Prevailed. ...................................................................................................... 9

   B.   EPI Is Entitled to an Award of Attorney Fees and Costs Because the Balance of Equitable Considerations Strongly Favors EPI. .................................................................. 12

      1.   There is a public benefit deriving from the case. ........................................... 13

      2.   EPI does not commercially benefit from the documents, and its interest is in informing the public on matters that are of potential interest to the public. .......................... 15

      3.   TVA engaged in obdurate behavior without a reasonable basis in law when it applied unsupported FOIA exemptions, wrongfully withheld material in full, and removed redactions without informing the Court or EPI on its final Vaughn index. ......................... 16

   C.   EPI's Request for Fees Is Reasonable. ............................................................ 18

      1.   EPI expended a reasonable number of hours on this litigation. .......................... 20

      2.   EPI has calculated reasonable hourly rates based on its attorneys' level of experience... .............................................................................................. 21

IV.   CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343 (6th Cir. 2000) .................................................. 23

*Am. Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109 (6th Cir. 1985)................ 12, 16, 20

*AutoAlliance Int'l, Inc. v. U.S. Customs Serv.*, 300 F. Supp. 2d 509 (E.D. Mich. 2004)........ 18, 20

*Batton v. Internal Revenue Serv.*, 718 F.3d 522 (5th Cir. 2013) ...................................... 14, 16

*Black Hills Clean Water All. v. U.S. Forest Serv.*, 2024 U.S. Dist. LEXIS 85193 (D. S. Dak. 2024) ................................................................................................................................ 24

*Blum v. Stenson*, 465 U.S. 886 (1984). ....................................................................... 24

*Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521 (D.C. Cir. 2011)...................................... 20

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998)........................................... 19

*Cazalas v. DOJ*, 709 F.2d 1051 (5th Cir. 1983) ............................................................. 17

*Clemente v. Fed. Bureau of Investigation*, 867 F.3d 111 (D.C. Cir. 2017). ........................... 12

*Comer v. I.R.S.*, 2002 U.S. Dist. LEXIS 22891 (E.D. Mich. Oct. 31, 2002) ........................... 18

*Davis v. U.S. Dep't of Justice*, 610 F.3d 750 (D.C. Cir. 2010) ........................................... 14

*Davy v. CIA*, 456 F.3d 162 (D.C. Cir. 2006) ("*Davy I*") ..................................................... 12

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ("*Davy II*")......................................... passim

*Detroit Free Press, Inc. v. Dep't of Justice*, 73 F.3d 93 (6th Cir. 1996)............................. passim

*Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442 (6th Cir. 2009) ........................ 23, 25

*Edmonds v. FBI*, 417 F.3d 1319 (D.C. Cir. 2005)............................................................ 13

*Elec. Privacy Info. Ctr. v. FBI*, 72 F. Supp. 3d 338 (D.D.C. 2014)...................................... 13

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216 (D.D.C. 2011) 15, 17

*GMRI, Inc. v. E.E.O.C.*, 149 F.3d 449 (6th Cir. 1998)............................................ 11, 12, 14, 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................... 22, 23

*Imwalle v. Reliance Med. Prods.*, 515 F.3d 531 (6th Cir. 2008). ..................................... 23

*Judicial Watch v. FBI*, 522 F.3d 364 (D.C. Cir. 2008) ................................................. 13

*Kwoka v. IRS*, 989 F.3d 1058 (D.C. Cir. 2021) ........................................... 11, 16, 19

*Louisville Black Police Officers Org., Inc. v. Louisville*, 700 F.2d 268 (6th Cir. 1983) .............. 24

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011)............................................................ 21

*Morley v. CIA*, 810 F.3d 841 (D.C. Cir. 2016) ......................................................... 11, 17

*Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)) ........................... 23

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999).......................................................... 22

*Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534 (6th Cir. 2001)....................................... 21

*Tax Analysts v. Dep't of Justice*, 965 F.2d 1092 (D.C. Cir. 1992) ...................................... 17

*Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989) ................................ 13

*U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032 (6th Cir. 1994). ......... 22

*Urban Air Initiative, Inc. v. Envtl. Prot. Agency*, 442 F. Supp. 3d 301 (D.D.C. 2020)................ 14

*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013) ...................................... 23

*Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169 (6th Cir. 1990) ................................ 23

## STATUTES

5 U.S.C. § 552(a)(4)(E)...................................................................................... passim

5 U.S.C. § 552(b) ............................................................................................. 21

OPEN Government Act of 2007, Pub. Law No.110–175, STAT. 2524 ........................................ 14

# I. INTRODUCTION

Pursuant to 5 U.S.C. § 552(a)(4)(E), Plaintiff Energy and Policy Institute ("EPI" or "Plaintiff") moves for the award of reasonable attorney fees and other litigation costs in this Freedom of Information Act ("FOIA") case. After an administrative appeal and two rounds of summary judgment, EPI has substantially prevailed over the Tennessee Valley Authority ("TVA") in this matter and is eligible for and entitled to reasonable attorney fees and costs.

# II. BACKGROUND

On April 13, 2021, Daniel Tait, a Research and Communications Manager at EPI, sent a FOIA request to TVA seeking copies of electronic records located within TVA's Office of Environment/Environment & Energy Policy relating to McGuire Woods, the Clean Air Act Monitoring Service, and the Climate Legal Group ("FOIA Request 109"). Amend. Answer Ex. 1, ECF No. 21-1 at 1-2. The request also sought any correspondence, including text messages, emails, and attachments, between Allison Wood, Aaron Flynn, and/or Makram Jaber of McGuire Woods and any representative of TVA working within the Office of Environment/Environment & Energy Policy. *Id*. at 2. The timeframe for the request was March 1, 2020, through the date of the request. *Id*.

On March 22, 2022, TVA denied EPI's request in part and granted the request in part, providing 55 pages of partially redacted emails. ECF No. 21-3 at 1. TVA claimed that any redactions were due to 5 U.S.C. § 522(b)(4) ("Exemption 4"), 5 U.S.C. § 522(b)(5) ("Exemption 5"), and 5 U.S.C. § 522(b)(6) ("Exemption 6"). *Id*. None of the redacted documents provided to EPI, however, indicate that Exemption 5 was applied by TVA as a justification for redactions. *Id*. TVA also withheld 157 emails in full pursuant to Exemptions 4, 5, and 6 and stated, without citing

1

specific FOIA exemptions, that attachments to those emails were also exempt. *Id*. TVA did not describe the application of the exemptions to any individual records. *Id*.

On April 7, 2022, EPI administratively appealed TVA's final determination, alleging that TVA violated FOIA by failing to provide reasonably segregable material for the 157 emails withheld in full, not adequately explaining how Exemptions 4, 5, and 6 apply to the redacted and withheld records, misapplying FOIA exemptions, and failing to use the foreseeable-harm standard in its decision to withhold all or part of the requested records. ECF No. 21-4 at 2. On May 6, 2022, Buddy Eller, Vice President, Communications & Public Relations, upheld TVA's final determination, asserting that TVA had provided segregable material "to the extent reasonably possible," that TVA had provided sufficient information to support the claimed exemptions, and that foreseeable-harm review was completed. ECF No. 21-5 at 1. After reviewing the records produced as well as the determination letter and administrative-appeal decision, EPI could not conclude that the stated exemptions were narrowly and properly applied and that the decision to withhold more than 150 records in full was legally justifiable. *See* Exhibit A, Kole Decl., ¶¶ 14-15.

On June 23, 2022, EPI filed a complaint for declaratory and injunctive relief, claiming that TVA unlawfully withheld records requested under FOIA by misapplying Exemptions 4, 5, and 6 and the foreseeable-harm standard, neglecting to provide adequate justification for its withholdings, and failing to segregate and provide disclosable portions of records. Compl., ECF No. 1, ¶ 2.

Separately, on September 16, 2021, Mr. Tait submitted a FOIA request for a copy of "in-effect" insurance policies for multiple coal-fired power plants ("FOIA Request 208"). ECF No. 21-6 at 3. After discussions with TVA's FOIA officer, Mr. Tait revised his request to seek only

the overall liability and operations policy for TVA assets. *Id*. at 1; Motion for Summary Judgment Exhibit 1, ECF No. 25-1, ¶ 14. On May 20, 2022, TVA provided a redacted copy of the requested policy, withholding 25 pages in full and releasing 24 pages with redactions. ECF No. 21-8 at 1. The agency claimed redacted terms were confidential commercial information under Exemption 4 and stated that "the redacted information would have the foreseeable harm of placing the submitter at a competitive disadvantage in the commercial insurance market." *Id*. TVA also claimed material was protected under "the government confidential commercial privilege" of Exemption 5 and that "[r]elease of the redacted information would harm TVA's ability to negotiate the best value and lowest feasible cost for TVA ratepayers." *Id*.

On July 11, 2022, EPI administratively appealed TVA's final determination, alleging that TVA violated FOIA by unlawfully withholding public records through the impermissibly broad application of Exemptions 4 and 5, by failing to provide reasonably segregable information, by not adequately explaining how Exemptions 4 and 5 apply to the redacted records, and by failing to adequately apply the foreseeable-harm standard. ECF No. 21-9 at 2-4. On August 4, 2022, Mr. Eller upheld TVA's final determination, asserting that TVA had already provided segregable material, that Exemption 4 was correctly applied after consultation with the insurance company, and that the government confidential commercial privilege applies to the redacted records even though EPI's appeal informed the agency that such privilege can only be used by an agency up until a contract is awarded and therefore does not apply to active contracts. ECF No. 21-10 at 1-2.

On September 8, 2022, EPI amended its complaint in this case to include challenges to TVA's withholdings in response to FOIA Request 208. ECF No. 19 at 6-7.

On May 16, 2023, EPI filed a motion for summary judgment, contending that TVA improperly withheld records pursuant to Exemptions 4, 5, and 6, failed to reasonably segregate

and provide non-exempt portions of records, and failed to properly apply the foreseeable-harm standard. ECF No. 25. TVA then filed a cross-motion for summary judgment and opposition to EPI's motion for summary judgment on June 12, 2023, in which TVA provided a *Vaughn* index, declarations by three TVA employees, and declarations by individuals from two outside entities. ECF No. 31, 33, 34. Based on the information provided by TVA, which finally enabled EPI to evaluate whether certain records would benefit EPI's public-interest purpose, EPI withdrew its challenges for some redactions. See Exhibit A, Kole Decl., ¶ 14-16. Still at issue, however, was that TVA still had not sufficiently demonstrated (i) that the attorney-client privilege applies, (ii) that there exists a protected privacy interest in the names and business email addresses of outside parties communicating with the government and that this interest outweighs the public interest in disclosure, (iii) the commercial nature of material submitted by McGuireWoods, the CLG, and PGen or the foreseeable harm from release of that material, (iv) the commercial nature of material withheld from the AEGIS Excess Liability Policy or any nonspeculative foreseeable harm to AEGIS, or (v) that the government confidential commercial information privilege applies to a contract that has been awarded. *See* Pl. Reply, ECF No. 38, at 2. In its reply, TVA erroneously and unsuccessfully attempted to shift the burden onto EPI. *See, e.g.*, ECF No. 40 at 15. TVA also accused EPI of "sleight of hand" for expressly pointing out deficiencies in the agency's justification for withholding in its entirety Document Number 110, *id.* at 15 n.4, an agreement in the form of a letter from TVA to Makram Jaber of McGuireWoods. TVA would remove redactions (all but one phrase in the three-page document) more than a year into litigation. Supp. *Vaughn*, ECF No. 45-1 at 15; Exhibit A, Kole Decl., ¶ 19 (describing the release of previously withheld documents by TVA as it filed its supplemental *Vaughn*).

4

This Court found deficiencies in TVA's submissions and, on October 6, 2023, ordered TVA to file a supplemental *Vaughn* index and/or declarations to "provide sufficient detail for the Court to determine whether the documents they wish to withhold are in fact protected from disclosure." ECF No. 44 at 11. As explained by this Court, the originally submitted *Vaughn* and declarations included a claim of attorney-client privilege over the material yet failed to "mention that the withheld document contained communications for the primary purpose of receiving or rendering legal advice or services." *Id.* at 6. The Court also mentioned that it was unclear which party was communicating in certain messages and, for documents 110, 111, 114, and 118, "whether the asserted red-line edits in those documents conveyed substantive legal advice originating from TVA." *Id* at 7-8.

TVA filed a supplemental brief with a revised *Vaughn* index and second supplemental declaration from Mr. Jaber on November 28, 2023. ECF No. 45, 45-1, 46. On December 12, 2023, EPI filed a response to TVA's supplemental submission in which EPI asserted that TVA had failed to address the deficiencies identified by this Court in its October 6 order. ECF No. 47. EPI also noted in its response that TVA released more documents and quietly withdrew exemption claims from other documents for the first time at this stage. *Id*. Included in this set of documents were the same documents the Court pointed to as examples: 110, 111, 114, and 118. ECF No. 44 at 8; Exhibit A, Kole Decl., ¶ 19.

On October 21, 2024, this Court granted TVA's motion for summary judgment and denied EPI's motion for summary judgment.

Between the date that EPI filed its complaint and the date that EPI filed its opposition to TVA's motion for summary judgment, TVA released more than 145 additional documents in their entirety. ECF No. 33 ¶ 25; ECF No. 38-1 ¶ 4. TVA lacked a basis to withhold many of the

documents, including copies of publicly available court filings, proposed EPA rules, and federal regulations. ECF No. 33-1 at 1-3. TVA also acknowledged for the first time in its cross-motion for summary judgment that the deliberative process privilege does not apply to any of the responsive records. ECF No. 38-1 ¶ 5. Then, on the day of its supplemental filing, November 28, 2023, TVA released portions of nine additional documents, four of which were specifically cited by the Court as lacking sufficient justification to find in TVA's favor, ECF No. 44 at 8, and quietly withdrew Exemption 5 claims for 67 other documents. ECF No. 45-1 at 15; ECF No. 47.

Throughout EPI's interactions with TVA related to these two FOIA requests, TVA has repeatedly claimed to have conducted line-by-line reviews of records to determine whether any reasonably segregable portions can be disclosed. *See* ECF No. 31 at 35; ECF No. 33 ¶ 32. For example, TVA asserted that records were withheld pursuant to Exemption 5's deliberative process privilege in its initial denial of EPI's request, ECF No. 33 ¶ 10, in the administrative appeal determination by Mr. Eller, *id*. at ¶ 16, in the draft *Vaughn* index provided January 13, 2023, ECF No. 47-1 ¶ 5, and in the revised draft *Vaughn* index provided April 4, 2023, *id*., before fully dropping any assertion of the deliberative process privilege in its cross-motion for summary judgment. *See* ECF No. 33 ¶ 16 n.1 ("TVA determined on a re-review of the documents responsive to FOIA Request 109 that those documents do not contain information subject to the deliberative process privilege or the privilege for confidential commercial information of the government.").

EPI therefore now moves for reasonable attorney fees and other litigation costs for this litigation that would not have occurred but for TVA's erroneous withholding of more than 150 documents and overbroad application of exemptions to many other documents. EPI has substantially prevailed because TVA voluntarily released documents and removed exemption

claims multiple times throughout this litigation and as a direct result of this litigation. For these and other reasons, EPI is both eligible for and entitled to attorney fees and costs.

## III.    ARGUMENT

In a FOIA case, a court may award reasonable attorney fees and litigation costs to a requester who has substantially prevailed. 5 U.S.C. § 552(a)(4)(E)(i). Courts have stated that this fee recovery provision exists "to encourage Freedom of Information Act suits that benefit the public interest when sufficient private interest in the requested information is lacking" and to "provide[] compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *Kwoka v. IRS*, 989 F.3d 1058, 1063 (D.C. Cir. 2021) (internal citations omitted). *See also Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) ("The purpose of the fee provision is 'to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.'" (quoting *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) ("*Davy II*")).).

A plaintiff must demonstrate that it is both eligible for and entitled to an award to prevail on a motion for reasonable fees and costs. *See GMRI, Inc. v. E.E.O.C.*, 149 F.3d 449, 451 (6th Cir. 1998). A plaintiff is eligible for a fee award when it has "substantially prevailed" by obtaining "relief through either . . . (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The latter instance is an expression of the catalyst theory, where a plaintiff is eligible for attorney fees if a FOIA lawsuit is a catalyst for a voluntary change by the agency. *See GMRI, Inc.*, 149 F.3d at 451 (stating that even without a court order, a

plaintiff "will have substantially prevailed if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information").

After a plaintiff is found to have substantially prevailed under either prong, the court exercises its discretion in determining whether a plaintiff is entitled to fees based on "equitable considerations," *Id.*, and "should consider at least the following factors: 'the benefit to the public deriving from the case; the commercial benefit to the complainant and the nature of its interest in the records; and whether the agency's withholding had a reasonable basis in law.'"[1] *Detroit Free Press, Inc. v. Dep't of Justice*, 73 F.3d 93, 98 (6th Cir. 1996) (quoting *Am. Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109, 1111 (6th Cir. 1985)). *See also Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) ("*Davy I*") (describing the same considerations as four distinct factors). Once a plaintiff has been deemed to be eligible for and entitled to attorney fees and litigation costs, the court grants a fee award based on "reasonable" attorney fees and litigation costs that are "reasonably incurred." 5 U.S.C. § 552(a)(4)(E)(i).

EPI is eligible to receive attorney fees and costs because EPI has substantially prevailed in this case where TVA voluntarily released new documents and withdrew exemption claims from others (sometimes without expressly notifying the Court or EPI), thereby changing its position on whether records were reasonably being withheld as a direct consequence of the filing of this lawsuit. EPI is also entitled to receive attorney fees and costs because (1) the results of this request and litigation benefit the public by allowing EPI to shine light on largely unknown activities of the

---

[1] Courts need not be limited to these factors. The District Court for the District of Columbia upheld a lower court's decision to "account for financial hardship, delay, and the duration of the litigation in considering whether to award interim fees." *Clemente v. Fed. Bureau of Investigation*, 867 F.3d 111, 121 (D.C. Cir. 2017).

agency, including support of anti-regulatory rules through its membership in utility trade groups, (2) EPI gains no commercial benefit from the release of records, (3) EPI's interest in submitting this FOIA request was to obtain records related to a matter of great public interest and to share that information with the public, and (4) TVA was unreasonable in applying certain exemptions to withheld records and fully withholding many records that it later released. Finally, the amount of fees and costs requested by EPI is reasonable and should therefore be awarded.

### A. EPI Is Eligible for An Award of Attorney Fees and Costs Because EPI Has Substantially Prevailed.

A requester is deemed "eligible" for a fee award if it has "substantially prevailed" by obtaining relief through at least one of two pathways: (1) a "judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [requester's] claim is not insubstantial." 5 U.S.C. § 522(a)(4)(E)(ii). "Generally, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Edmonds v. FBI*, 417 F.3d 1319, 1326 (D.C. Cir. 2005) (internal quotations omitted). *See also Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) ("The *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all" (emphasis in original).); *Judicial Watch v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008) (finding eligibility for fee award where the plaintiff was awarded some relief by the court when it obtained two videotapes through court order); *Elec. Privacy Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 345 (D.D.C. 2014) ("[T]he law merely requires that the plaintiff 'substantially prevails,' 5 U.S.C. § 552(a)(4)(E)(ii), and achieves *some* of the benefit the plaintiff sought in bringing suit" (emphasis in original).).

EPI has substantially prevailed according to the second prong of the eligibility standard under the FOIA because TVA had a voluntary change in position after EPI filed suit. 5 U.S.C. § 522(a)(4)(E)(ii)(I). This prong of the eligibility standard was recognized by the Sixth Circuit before the 2007 FOIA Amendments[2] were enacted and is often referred to as the "catalyst theory." *GMRI*, 149 F.3d at 451-52. *See also Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). Under the catalyst theory, a plaintiff will prevail on a motion for attorney fees and costs "if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information." *GMRI*, 149 F.3d at 451-52 (citations omitted). A plaintiff can substantially prevail under the catalyst theory if, after the initiation of litigation, the agency chooses to release even a single document or portions of documents that it had previously withheld. *See, e.g.*, *id*. at 452 (affirming the lower-court determination that the requester substantially prevailed when a lawsuit resulted in the voluntary release of a single file); *Batton v. Internal Revenue Serv*., 718 F.3d 522 (5th Cir. 2013) (finding plaintiff eligible for fees and costs when documents were released only after filing suit and additional documents were released over years of litigation); *Urban Air Initiative, Inc. v. Envtl. Prot. Agency*, 442 F. Supp. 3d 301, 312-13 (D.D.C. 2020) (holding plaintiff substantially prevailed where "defendant voluntarily altered its behavior in response to plaintiffs'

---

[2] Congress gave special attention to FOIA's fee provision in passing the 2007 FOIA amendments enshrining the catalyst theory as a pathway for FOIA complainants to recover fees and costs. OPEN Government Act of 2007, Pub. Law No.110–175, 121 STAT. 2524. Expressly amending the Act in response to the Supreme Court's *Buckhannon* rule, Congress intended to curb certain agency conduct: "A government agency refuses to disclose documents even though they are clearly subject to FOIA. The FOIA requestor has no choice but to undertake the time and expense of hiring an attorney to file suit to compel FOIA disclosure. Some time after the suit is filed, the government agency eventually decides to disclose the documents--thereby rendering the lawsuit moot." S. Rep. 110-59, Sec. II, OPEN Government Act of 2007. The cat-and-mouse conduct of TVA in this case is the very kind described by the 2007 Senate Report.

cross-motion for summary judgment"); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 233 (D.D.C. 2011) (finding requester substantially prevailed when the agency released "a substantial quantity of non-exempt records in response to this suit").

Here, EPI has substantially prevailed in this case by causing multiple voluntary changes in position by TVA. Indeed, TVA has released far more than a single document in response to EPI's lawsuit and in response to the Court's Order requiring more from TVA to meet its burden under the Act. Between when EPI filed suit and when TVA submitted its cross-motion for summary judgment, TVA released at least 145 new documents in their entirety after previously withholding those records in full. ECF No. 33 ¶ 25; ECF No. 38-1 ¶ 4. TVA also acknowledged for the first time in its cross-motion for summary judgment that the deliberative process privilege does not apply to any of the responsive records after previously claiming the privilege in its initial denial of EPI's request, ECF No. 33 ¶ 10, in the administrative appeal determination by Mr. Eller, *id*. at ¶ 16, in the draft *Vaughn* index provided January 13, 2023, ECF No. 38-1 ¶ 5, and in the revised draft *Vaughn* index provided April 4, 2023, *id*. Then, on the day of its supplemental filing, November 28, 2023, TVA released nine additional documents for the first time and withdrew Exemption 5 claims for 67 other documents. ECF No. 45-1 at 15; ECF No. 47. Despite spending more than two years insisting that segregability reviews were conducted at various stages in this litigation and prior to this litigation, TVA released additional documents when faced with skepticism by the Court. EPI received documents clearly subject to disclosure only after initiating litigation and after making best efforts to persuade the agency to release portions of records and to drop the baseless exemptions claimed at the administrative appeal level. *See* ECF No. 19 ¶ 22-27 (discussing 55 documents initially produced and 187 documents withheld in full).

Documents were withheld from EPI before litigation because of the agency's "unreasonable obduracy," *Kwoka*, 989 F.3d at 1063, in prioritizing secrecy over disclosure and promoting and defending unsupported claims, such as attorney-client privilege (including a last-ditch mention of "common-interest" doctrine), ECF No. 45-1 at 1, 2, 5, 6, deliberative process privilege, and "government confidential commercial information privilege." TVA's attempts to quietly drop claims during the course of litigation do nothing to prevent EPI from fulfilling the eligibility requirements under FOIA.

**B.      EPI Is Entitled to an Award of Attorney Fees and Costs Because the Balance of Equitable Considerations Strongly Favors EPI.**

The second part of the two-part test is "whether the plaintiff is entitled to such an award based upon a balancing of equitable considerations." *GMRI*, 149 F.3d at 452 (citation omitted). The court must determine whether a FOIA complainant is entitled to fees by considering at least the following factors: "the benefit to the public deriving from the case; the commercial benefit to the complainant and the nature of its interest in the records; and whether the agency's withholding had a reasonable basis in law." *Am. Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109, 1111 (6th Cir. 1985). *See also Davy II*, 550 F.3d at 1158 (discussing how this balancing test can "assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage").

It is within the discretion of the district court to decide whether a FOIA requester is entitled to a fee award, but the decision should be made "against the backdrop of the treble policies of the FOIA attorneys'-fees provision . . ." *Batton*, 718 F.3d at 527 (discussing the policy goals of (1) incentivizing litigation and providing a means for requesters to overcome barriers to disclosure put up by the government, (2) deterring the government from "opposing justifiable requests," and (3) "punish[ing] the government where such opposition is unreasonable") (quoting *Cazalas v. DOJ*,

709 F.2d 1051, 1057 (5th Cir. 1983)). *See also Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) ("FOIA's attorney's fees provision . . . was designed to lower the often insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA. . . ."). EPI is entitled to an award of fees and costs where each factor weighs in favor of EPI.

### 1. There is a public benefit deriving from the case.

The first factor examines the benefit to the public and weighs heavily in favor of EPI. An assessment of the first factor requires consideration of "'the potential public value of the information sought,' . . . not the public value of the information received." *Davy II*, 550 F.3d at 1159. *See also Detroit Free Press*, 73 F.3d 93 at 98 (finding a public benefit in providing "further insight into the criminal justice administration conducted in this district"); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C. 2016) (finding that a group's request was "likely to generate new and useful information" about the government's cyber surveillance program). The emphasis here is on "potential," with this factor requiring "an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Morley*, 810 F.3d at 844 ("[I]f it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there."). Courts have also recognized that the public has "a unique interest in the enforcement and vindication of the FOIA," noting that "[e]ach time an agency disregards its obligation to diligently answer and provide information in response to FOIA requests, the public is harmed," and that "the public interest is served when . . . a court refuses to condone the agency's behavior by ignoring its unreasonable conduct." *AutoAlliance Int'l, Inc. v. U.S. Customs Serv.*, 300

F. Supp. 2d 509, 514 (E.D. Mich. 2004) (quoting *Comer v. I.R.S.*, 2002 U.S. Dist. LEXIS 22891, *2 (E.D. Mich. Oct. 31, 2002)).

EPI is a nonprofit watchdog organization whose sole mission is to conduct research that benefits the public, with a particular focus on actions that pose a threat to the health and welfare of communities. ECF No. 19 at 2; Tait Decl., ECF No. 27, at 1-2, 5. EPI submitted the FOIA requests at issue in this case in order to obtain information showing how TVA, a government agency funded by taxpayers, is involved in special-interest trade groups that oppose environmental laws protecting regulations for clear air and clean water. *Id*. Over the past several years, EPI has documented TVA's membership in utility trade groups, including the Utility Air Regulatory Group ("UARG"), which later disbanded under public pressure, and the Climate Legal Group, which is a primary focus of FOIA Request 109. *Id*. EPI's findings have been published on its website as well as in national news sources. *See, e.g.*, Zack Colman and Alex Guillen, "Documents detail multimillion-dollar ties involving EPA official, secretive industry group," Politico (Feb. 2, 2019), *available at* https://www.politico.com/story/2019/02/20/epa-air-pollutionregulations-wehrum-ll 91258; EPI, "UARG, The Sequel" (Apr. 7, 2021), *available at* https://www.energyandpolicy.org/uarg-the-sequel-clean-air-act-monitoringservice-and-climate-legal-group/; Sean Reilly, "Emails, docs show TVA's ties to fight against federal regs," E&E News (Sept. 13, 2021), *available at* https://www.eenews.net/articles/emails-docs-show-tvas-ties-to-fight-against-federal-regs/.

The records requested in FOIA Requests 109 and 208 have similar potential public benefits. Indeed, emails that were partially released in response to FOIA Request 109 revealed, for the first time, the extent of TVA's coordination with the Power Generators Air Coalition ("PGen"), including a current TVA staff member who was a founding board member of PGen. ECF No. 27

at 4-5. PGen has submitted comments on emissions rules contemplated by the Environmental Protection Agency to reduce greenhouse gas emissions, and TVA's association with PGen is therefore notable to the public. *Id*. EPI recently published an article on its website that includes analysis built upon prior research and based on documents released over the course of this litigation. Daniel Tait and Matt Kasper, EPI, "TVA Documents Reveal New Details About How America's Major Utilities Fight Clean Air Act Regulations" (Nov. 15, 2024), *available at* https://energyandpolicy.org/tva-pgen-fight-clean-air-regulations/.

In the course of this litigation, TVA has released many new documents, some of which have already produced new information that has public value, but regardless of how many records TVA eventually disclosed and what those records contained, the potential public benefit of the information requested was significant and the public interest is served by enforcement and vindication of FOIA.

> **2. EPI does not commercially benefit from the documents, and its interest is in informing the public on matters that are of potential interest to the public.**

The second factor is used to "assess whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees." *Davy II*, 550 F.3d at 1160 (internal citation omitted) (considering this factor in two parts). It weighs in favor of journalist plaintiffs, because "news interests should not be considered commercial interests." *Detroit Free Press*, 73 F.3d 93 at 98 (quoting *Fenster v. Brown*, 617 F.2d 740, 742 n.4 (D.C. Cir. 1979)). *See also Kwoka*, 989 F.3d at 1064 (discussing the public benefit of journalistic information gathering, analysis, and dissemination of matters of potential interest to the public). "Congress did not intend for scholars (or journalists and public interest groups) to forgo compensation when acting within the scope of

their professional roles." *Davy II*, 550 F.3d at 1161 (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 35-36 (D.C. Cir. 1998)).

EPI is a nonprofit, public-interest organization that has no commercial interest in the requested documents. EPI is made up of researchers who inform the public, the media, and policymakers on energy and utility issues, including special-interest influence on energy policy and its impact on citizens and utility ratepayers. EPI serves the public interest by disseminating information that enhances public understanding of these types of energy and utility issues. Daniel Tait, who submitted the FOIA requests to TVA on behalf of EPI, was acting within the scope of his professional role to gather information for future stories on TVA's involvement in trade groups and those groups' influence on environmental protection laws. These "news interests" are not commercial or frivolous, and the second factor therefore weighs heavily in favor of EPI. *Detroit Free Press*, 73 F.3d 93 at 98.

### 3. TVA engaged in obdurate behavior without a reasonable basis in law when it applied unsupported FOIA exemptions, wrongfully withheld material in full, and removed redactions without informing the Court or EPI on its final *Vaughn* index.

The final factor assesses "whether the agency's withholding had a reasonable basis in law." *Am. Commercial Barge Lines Co.* 758 F.2d at 1111. With FOIA's policy goals in mind, a court will examine "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy II*, 550 F.3d at 1162 (internal citation omitted). *See also AutoAlliance*, 300 F. Supp. 2d at 515 (holding that agency did not have reasonable basis where large percentage of records were released in full or in part either during the administrative process or in the course of litigation); *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 525 (D.C. Cir. 2011) (question is whether government's initial decision to withhold was justified). The burden is on the government to demonstrate that its conduct was reasonable. *Davy II*, 550 F.3d at

1162-63. If the agency demonstrates that it had a colorable basis in law for not disclosing the records until after the plaintiff filed the lawsuit, "that will be weighed along with other relevant considerations in the entitlement calculus." *Id*. at 1162. *Cf. Detroit Free Press*, 73 F.3d at 98-99 (6th Cir. 1996) (Sixth Circuit declined to overturn the district court decision to award attorney fees after considering all factors but, noting that the exemption issue was one of first impression, found that final factor weighed in favor of agency).

FOIA "mandates" that agencies disclose records on request unless the government can prove that one of nine "narrowly construed" exemptions applies. *Milner v. Dep't of Navy* , 562 U.S. 562, 565 (2011). FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). "Under this principle of segregability, an agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 553 (6th Cir. 2001).

 TVA initially withheld 157 records in full and heavily redacted many of the documents it produced to EPI. TVA then defended each of those withholdings during the administrative appeal process, only to immediately withdraw some exemption claims once EPI filed the complaint in this case. As discussed above, between the date that EPI filed its complaint and the date that EPI filed its opposition to TVA's motion for summary judgment, TVA released more than 145 additional documents in their entirety. ECF No. 33 ¶ 25; ECF No. 38-1 ¶ 4. TVA also "determined on a re-review" for the first time in its cross-motion for summary judgment, ECF No. 33, ¶ 16 n.1 and ECF No. 38-1 ¶ 5, that the deliberative process privilege did not apply to any of the responsive records after previously claiming the privilege in its initial denial of EPI's request, ECF No. 33 ¶ 10, in the administrative appeal determination by Mr. Eller, *id*. at ¶ 16, in the draft *Vaughn* index

provided January 13, 2023, ECF No. 47-1 ¶ 5, and in the revised draft *Vaughn* index provided April 4, 2023, *id*. Then, on the day of its supplemental filing, TVA released more material and withdrew Exemption 5 attorney-client privilege claims for 67 other documents. ECF No. 45-1 at 15; ECF No. 47. This Court noted in its Memorandum Opinion that "the removal of certain invocations of the attorney-client privilege was among the most significant revisions between the original and newly submitted *Vaughn* Index." ECF No. 48 at 25. Indeed, throughout EPI's interactions with TVA related to these two FOIA requests, TVA has repeatedly claimed to have conducted line-by-line reviews of records to determine whether any reasonably segregable portions can be disclosed, only to then later conclude that more portions are reasonably segregable. *See* ECF No. 31 at 35; ECF No. 33 ¶ 32.

In addition, TVA maintained that the government confidential commercial privilege applies to the redacted portions of the contract provided in response to FOIA Request 208 despite clear case law indicating that such a privilege no longer applies once a contract is awarded, as it has been in this case. This Court did not reach that argument in ruling on the motions for summary judgment, but EPI was still obligated to repeatedly address the claim that has no reasonable basis in law.

### C.    EPI's Request for Fees Is Reasonable.

When a court determines that a plaintiff is both eligible for and entitled to a fee award, the court must then evaluate the reasonableness of the plaintiff's calculation of attorney fees and other litigation costs. *See, e.g.*, *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) ("The primary concern in an attorney fee case is that the fee awarded be reasonable."). An award of attorney fees is normally based on the lodestar. *U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1048 (6th Cir. 1994). The lodestar is "the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 552 (6th Cir. 2008). Modifications to the lodestar "are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings . . ." *Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

To demonstrate that the number of hours included in the calculation is reasonable, a plaintiff must "maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), abrogated on other grounds by *Buckhannon*, 532 U.S. at 598. *See also Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). The standard for whether the number of hours spent is reasonable "is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge*, 898 F.2d at 1177. "The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved." *Id*. "When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 823 (6th Cir. 2013). *See also Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 448 (6th Cir.

2009) (holding that all claims, successful and unsuccessful, "arose out of the same nucleus of facts" and were "factually and legally interwoven").

A reasonable hourly rate is then determined "according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Louisville Black Police Officers Org., Inc. v. Louisville*, 700 F.2d 268, 277 (6th Cir. 1983). "District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Id*. at 278. *See also Black Hills Clean Water All. v. U.S. Forest Serv*., 2024 U.S. Dist. LEXIS 85193 at *16-17 (D. S. Dak. 2024) (acknowledging that hourly rates for FOIA cases properly exceed local market rate where expertise of non-local FOIA experts reduced total amount of time expended and "awarding South Dakota rates to these lawyers 'could threaten to chill public interest litigation that seeks to vindicate Congress's intent in ensuring the public can use FOIA effectively to shed light on governmental activities,' especially when the case could have been filed in Washington, D.C. where the Fitzpatrick Matrix hourly rates would apply").

### 1. EPI expended a reasonable number of hours on this litigation.

EPI seeks compensation for X hours of work by its attorneys. Counsel for EPI has litigated this case in an efficient manner, appropriately dividing work on the case and avoiding duplicative efforts. Moreover, fee sheets submitted by EPI attorneys have been reviewed to eliminate any potentially duplicative work. In addition, Ms. Kole's and Ms. Robbins's expertise with FOIA resulted in a lower total number of hours than would have been expended by attorneys who are less familiar with FOIA.

Although EPI did not prevail on all claims, EPI was successful in this litigation as contemplated by the Act where it obtained disclosure of hundreds of pages of records as well as the removal of redactions and exemption claims that were inappropriately applied by TVA. Given the nature of a FOIA lawsuit, all of EPI's claims "arose out of the same nucleus of facts" and unsuccessful claims were "factually and legally interwoven" with EPI's successful claims. *Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 448 (6th Cir. 2009). This is particularly true where EPI had to brief TVA's Exemption 5 claims even though this Court ultimately did not reach those questions, where EPI had to draft an additional brief after this Court ordered TVA to provide supplemental filings to support its original, inadequate filings, and where EPI had to address claims that were ultimately dropped by TVA throughout the course of litigation.

## 2. EPI has calculated reasonable hourly rates based on its attorneys' level of experience.

Because this is a FOIA case and TVA is a federal agency, this case could have been brought in Washington, DC, where the *Fitzpatrick* Matrix hourly rates are widely accepted and not challenged by the U.S. Department of Justice. *See* The Fitzpatrick Matrix, n.3, https://www.justice.gov/usao-dc/page/file/1504361/dl ("For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires."). *See also Black Hills Clean Water All.*, 2024 U.S. Dist. LEXIS 85193, at *16-17 ("awarding South Dakota rates to these lawyers 'could threaten to chill public interest litigation that seeks to vindicate Congress's intent in ensuring the public can use FOIA effectively to shed light on governmental activities,' especially when the case could have been filed in Washington, D.C. where the Fitzpatrick Matrix hourly rates would apply"). The reasonable hourly rates for EPI's counsel

are therefore calculated using the *Fitzpatrick* Matrix that is promoted by the U.S. Attorney's Office for the District of Columbia, where most federal FOIA cases are pursued.

Chris Irwin is a private attorney with extensive experience, appearing in approximately 45 cases before the Eastern District of Tennessee. He has also utilized the Freedom of Information Act in his work. Exhibit C, Irwin Decl., ¶¶ 2-5. Mr. Irwin's local knowledge and experience contributed to the efficiency of EPI in litigating this case. A reasonable hourly rate for his time is reduced to 2022 rates according to the *Fitzpatrick* Matrix of $656 per hour. From 2022 to 2024, he spent 57 hours on core litigation work for this case. *Id.* at ¶ 10.

Allison Kole and Zehava Robbins are attorneys at EPI who were previously employed for most of this litigation by a nonprofit called Essential Information, Inc., which is based in Washington, District of Columbia. Both Ms. Kole and Ms. Robbins focus particularly on FOIA in their practice, bringing numerous formal challenges against federal agencies each year. Exhibit A, Kole Decl,. ¶ 4; Exhibit B, Robbins Decl., ¶¶ 2-4. Pursuant to the *Fitzpatrick* Matrix, the fee award for Ms. Kole's time in 2022 was $563 per hour, a reasonable hourly rate for her time in 2023 was $576 per hour, and a reasonable hourly rate for her time in 2024 is $612 per hour. Exhibit A, Kole Decl., ¶ 4. Ms. Kole spent 67.3 hours on necessary litigation tasks for this case. *See* Exhibit A-1. Pursuant to the *Fitzpatrick* Matrix, the fee award for Ms. Robbins's time in 2022 was $521 per hour, a reasonable hourly rate for her time in 2023 was $568 per hour, and a reasonable hourly rate for her time in 2024 is $584 per hour. *See* Exhibit B, Robbins Decl., ¶ 7. Ms. Robbins spent 130.5 hours on this case. *See* Exhibit B-1.

## IV.   CONCLUSION

EPI therefore respectfully requests that the Court grant this motion for a fee award where EPI is eligible for and entitled to attorney fees and costs and has requested a reasonable amount of

attorney fees and costs, including $149,675.10 in attorney fees, a filing fee of $402, and $180 in *pro hac vice* application fees, for a total of $150,257.10.

Dated November 18, 2024

Respectfully submitted,

By:    */s/ Zehava Robbins*
Zehava Robbins
*Pro Hac Vice*
Counsel
Energy and Policy Institute
P.O. Box 337
El Verano, CA 95433
(202) 643-6267
zehava@energyandpolicy.org

Chris Irwin
BPR# 025478
PO Box 9682
Knoxville, TN 37940
(865) 257-4029
christopherscottirwin@yahoo.com

Allison Kole
*Pro Hac Vice*
General Counsel
Energy and Policy Institute
P.O. Box 337
El Verano, CA 95433
(202) 596-7540
allison@energyandpolicy.org

*Attorneys for Plaintiff*