UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION


ENERGY AND POLICY INSTITUTE

Plaintiff

      v.                            No. 3:22-cv-00220-TAV-DCP

TENNESSEE VALLEY AUTHORITY

Defendant

---

**TVA'S RESPONSE IN OPPOSITION TO PLAINTIFF ENERGY AND POLICY
INSTITUTE'S MOTION FOR ATTORNEY'S FEES AND COSTS**

---

David D. Ayliffe
Associate General Counsel
Lane E. McCarty
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

Attorneys for Tennessee Valley Authority

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................1

    FOIA Request 109 ..........................................................................................................2

    FOIA Request 208 ..........................................................................................................4

    TVA Prevailed on Summary Judgment as to Both EPI's FOIA Requests ........................5

LEGAL STANDARD.............................................................................................................6

ARGUMENT ..........................................................................................................................7

    I.     EPI is Neither Eligible Nor Entitled to Fees and Costs for FOIA Request
          109.......................................................................................................................9

          A.     EPI is not eligible for fees because TVA did not change its position
                  as to documents for which McGuireWoods withdrew its Exemption
                  4 objections. ..........................................................................................9

          B.     EPI is not entitled to fees for the release of documents for which
                  McGuireWoods withdrew its Exemption 4 objections. ...........................12

                1.     EPI has not shown public benefit from this litigation...................12

                2.     TVA's withholding had a reasonable basis in law........................15

           C.     EPI is not entitled to fees and costs for the 9 documents for which
                  TVA determined that Exemption 5 did not apply......................................17

    II.    EPI's Fee Demand is Unreasonable........................................................................20

          A.     EPI is seeking reimbursement at inflated billing rates.............................21

          B.     Any hours attributable to work on FOIA Request 208 should be
                  deducted. ..............................................................................................23

          C.     Other excludable time ..........................................................................23

    III.   The Equities Do Not "Entitle" EPI to Attorney's Fees..........................................24

CONCLUSION.....................................................................................................................25

i

# TABLE OF AUTHORITIES

| **Cases** | **Page** |
|---|---|

*Almanza v. Barr*,
    No. 3:15-CV-389-TAV-HBG, 2019 WL 13159729 (E.D. Tenn. Aug. 5, 2019) ............ 22

*ACLU of Ariz. v. U.S. Dep't of Homeland Sec.*,
    No. CV-17-01083-PHX-DJH, 2020 WL 1494328 (D. Ariz. Mar. 27, 2020) ................. 24

*Assassination Archives & Rsch. Ctr. v. CIA*,
    No. 1:17-cv-00160 (TNM), 2019 WL 1491982 (D. D.C. Apr. 4, 2019) .................. 15, 19

*AutoAlliance Intern., Inc. v. U.S. Customs Service*,
    300 F. Supp. 2d 509 (E.D. Mich. 2004) ........................................................ 21

*Aviation Data Serv. v. FAA*,
    687 F.2d 1319 (10th Cir. 1982) ................................................................... 13

*Blum v. Stenson*,
    465 U.S. 886 (1984) .................................................................................. 21

*Brayton v. Office of the U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) ........................................................... *passim*

*Buckhannon Bd. & Care Home, Inc. W.Va. Dep't of Health & Hum. Res.*,
    532 U.S. 598 (2001) .................................................................................. 10

*Chesapeake Bay Found. v. Dep't of Agric*,
    108 F.3d 375 (D.C. Cir. 1997) ..................................................................... 13

*Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*,
    142 F. Supp. 3d 1 (D.D.C. 2015) ................................................................. 25

*Citizens for Resp. & Ethics in Wash. V. U.S. DOJ*,
    No. 10-cv-750, 2011 WL 5830746 (D.D.C. Nov. 21, 2011) ........................... 24

*Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*,
    2016 WL 4098772 (D.C. Cir. 2016) ............................................................. 25

*Conservation Force v. Jewell*,
    160 F. Supp. 3d 194 (D. D.C. 2016) ............................................................ 11

*Cotton v Heyman*,
    63 F.3d 1115 (D.C. Cir. 1995) ..................................................................... 13

*Davy v. CIA*,
    550 F.3d 1155 (D.C. Cir. 2008) ................................................................... 17

*Dorsen v. SEC*,
    15 F. Supp. 3d 112 (D.D.C. 2015) ..................................................... 15, 16, 20

*Dowling v. Litton Loan Servicing LP*,
    320 F. App'x. 442 (6th Cir. 2009) ................................................................. 8

*Edelman v. SEC*,
    356 F. Supp. 3d 97 (D.D.C. 2019) .............................................................. 15

*Elec. Priv. Info. Ctr. v. F.B.I.*,
    72 F. Supp. 3d 338 (D.D.C. 2014) .............................................................. 21

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
    811 F. Supp. 2d 216 (D.D.C. 2011) ............................................................ 24

*EPIC v. DHS*,
    982 F. Supp. 2d 56 (D.D.C. 2013) .............................................................. 23

*ERMC v. Millertown*,
    3:19-cv-407 & 408 (E.D. Tenn. Aug. 1, 2022) ........................................... 22

*EEOC v. Dolgencorp, LLC*,
    No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513 (E.D. Tenn. Aug. 7, 2017) .............. 22

*EEOC v. Dolgencorp, LLC*,
    277 F. Supp. 3d 932 (E.D. Tenn. 2017) ..................................................... 22

*EEOC v. Dolgencorp, LLC*,
    899 F.3d 428 (6th Cir. 2018) ...................................................................... 22

*Fenster v. Brown*,
    617 F.2d 740 (D.C. Cir. 1979) .................................................................... 13

*Food Mktg. Inst. v. Argus Leader Media*,
    588 U.S. 427 (2019) .................................................................................... 11

*Geier v. Sundquist*,
    372 F.3d 784 (6th Cir. 2004) ...................................................................... 22

*GMRI, Inc. v. E.E.O.C.*,
    149 F.3d 449 (6th Cir. 1998) ........................................................................ 7

*Grand Canyon Tr. v. Bernhardt*,
    947 F.3d 94 (D.D.C. 2016) ................................................................... 10, 18

*Grand Canyon Tr. v. Zinke*,
    311 F. Supp. 3d 381 (D.D.C. 2018) ....................................................... 7, 18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................................................... 23

*Hull v. U.S. Dep't of Lab.*,
    No. 04-1264, 2006 WL 8454017 (D. Colo. May 30, 2006) ......................... 25

*Institute for Energy Rsch. v. FERC*,
  No. CV 22-3420 (BAH), 2024 WL 3327369 (D.D.C. May 22, 2024) ........................... 18

*Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*,
  No. 3:11-CV-00531-PLR-HBG, 2016 WL 4691294 (E.D. Tenn. Aug. 8, 2016) ........... 22

*Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*,
  2016 WL 4690398 (E.D. Tenn. Sept. 7, 2016) ................................................. 22

*Jud. Watch v. U.S. Dep't of Com.*,
  470 F.3d 363 (D.C. Cir. 2006) ...................................................................... 23

*Jud. Watch, Inc. v. U.S. Dep't of Just.*,
  878 F. Supp. 2d 225 (D.D.C.2012) ................................................................ 13

*Knisley v. Johnson*,
  No. 3:21-cv-420 (E.D. Tenn. Aug. 10, 2022) ................................................. 22

*Knox Trailers, Inc. v. Clark*,
  No. 3:20-CV-137-TRM-DCP, 2022 WL 4372350 (E.D. Tenn. Sept. 21, 2022) ............ 22

*Long v. IRS*,
  932 F.2d 1309 (9th Cir. 1991) ........................................................................ 7

*Malone v. U.S. Pat. & Trademark Off.*,
  No. 1:23-CV-1050, 2024 WL 3030650 (E.D. Va. June 17, 2024) ................................ 18

*McDonnell v. U.S.*,
  870 F. Supp. 576 (D.N.J. 1994) ..................................................................... 25

*Mich. Immigrant Rts. Ctr.*,
  No. 16-14192, 2021 WL 855468 (E.D. Mich. Mar. 8, 2021) ........................................ 11

*Mobley v. Dep't of Homeland Sec.*,
  908 F. Supp. 2d 42 (D.D.C. 2012) ................................................................. 18

*Morley v. CIA*,
  894 F.3d 389 (D.C. Cir. 2018) ........................................................... 6, 15, 20

*Nat'l Sec. Archive v. U.S. Dep't of Def.*,
  530 F. Supp. 2d 198 (D.D.C. 2008) ................................................................ 23

*Nw. Coalition for Alt. to Pesticides v. EPA*,
  275 F. App'x 10 (D. D.C. 2008) ..................................................................... 11

*Or. Nat. Desert Ass'n v. Locke*,
  2010 WL 56111 (D. Or. 2010) ................................................................ 23, 25

*Pub. Emps. for Env't Resps. v. EPA*,
  211 F. Supp. 3d 227 (D.D.C. 2016) ................................................................ 20

iv

*Roberts v. Principi*,
No. 2:02-CV-166, 2006 WL 1696726 (E.D. Tenn. June 16, 2006) ................................ 10

*Roberts v. Principi*,
283 F. App'x 325 (6th Cir. 2008) .................................................................................... 10

*Schoenberg v. FBI*,
No. LA CV18-01738 JAK (AGRx), 2020 WL 4937813 (C.D. Cal. May 8, 2020) ... 15, 19

*Smith v. Ashcroft*,
No. 1:02-0043, 2005 WL 1309149 (W.D. Mich. May 25, 2005) .................................... 23

*S. Env't L. Ctr. v. TVA*,
659 F. Supp. 3d 902 (E.D. Tenn. 2023) .......................................................................... 11

*Systematic Power Sols., LLC v. Fullriver Battery Mfr. Co., LTD.*,
No. 3:19-CV-277-KAC-DCP, 2023 WL 6518861 (E.D. Tenn. Aug. 18, 2023) ............ 22

*Systematic Power Sols., LLC v. Fullriver Battery Mfr. Co., LTD.*,
No. 3:19-CV-277-KAC-DCP, 2023 WL 5938187 (E.D. Tenn. Sept. 12, 2023) ............ 22

*Tax Analysts v. IRS*,
117 F.3d 607 (D.C. Cir. 1997) ........................................................................................ 20

*Tax Analysts v. U.S. Dep't of Just.*,
965 F.2d 1092 (D.C. Cir. 1992) ...................................................................................... 14

*Tchefuncta Club Estate v. U.S. Army Corps of Eng'r*,
No. 10-1637, 2011 WL 2037667 (E.D. La. May 24, 2011) ............................................ 12

*United Am. Fin. Inc. v. Potter*,
770 F. Supp. 2d 252 (D. D.C. 2011) ............................................................................... 19

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
141 S. Ct. 777 (2021) ...................................................................................................... 20

*Upjohn v. United States*,
449 U.S. 383 (1981) ........................................................................................................ 20

*Valencia v. U.S. Citizenship & Immigr. Serv.*,
No. 12-102, 2012 WL 3834938 (D. Utah Sept. 4, 2012) .................................................. 9

*Vaughn v. Parkwest Med. Ctr.*,
No. 3:15-CV-228 (E.D. Tenn. Feb. 15, 2019) ................................................................ 22

*Walters v. TVA*,
503 F. Supp. 111 (E.D. Tenn. 1980) ............................................................................... 25

*Walters v. TVA*,
698 F.2d 1225 (6th Cir. 1982) ........................................................................................ 25

*Warren v. Colvin*,
    744 F.3d 841 (2d Cir. 2014) ......................................................................... 10

*Weisner v. Animal & Plant Health Inspection Serv.*,
    No. 5:10-CV-00568, 2012 WL 2525592 (E.D.N.C. June 29, 2012) .............................. 12

*Zynovieva v. U.S. Dep't of State*,
    No. CV 19-3445 (RDM), 2023 WL 2755599 (D.D.C. Mar. 31, 2023) ......................... 17

*Zynovieva v. U.S. Dep't of State*,
    No. 23-5120, 2024 WL 1946592 (D.C. Cir. Apr. 30, 2024) ........................................ 17

**Statutes, Regulations, and Other Authorities**                                **Page**

5 U.S.C. § 552 ............................................................................................... *passim*

18 C.F.R. 1301.8 ................................................................................................ 2, 5, 9

17 OXFORD ENGLISH DICTIONARY 68 (2d ed. 1989) ...................................................... 18

Black's Law Dictionary (12th ed. 2024) ...................................................................... 11

H.R.Rep. No. 110–45 (2007) ..................................................................................... 12

Pub. L. No. 110–175, 121 Stat. 2524 (codified at 5 U.S.C. § 552 (Supp. III 2009) ................... 12

# INTRODUCTION

This is a closed Freedom of Information Act ("FOIA") case in which the Court entered judgment in favor of TVA as to both FOIA requests at issue. (Doc. 48.) TVA is the prevailing party on all claims—not Plaintiff Energy and Policy Institute ("EPI"). Despite that reality, EPI has filed a motion claiming that it "substantially prevailed" and, therefore, should be awarded attorney fees and costs totaling roughly $150,000. (Doc. 52.) Not so. Under FOIA, a plaintiff is eligible for attorney's fees only when the plaintiff "substantially prevailed" by obtaining the relief sought in the complaint through either (1) a judicial order or enforceable written consent decree; or (2) if the agency *voluntarily or unilaterally* changed its position and the plaintiff's claim was not insubstantial. The first eligibility option does not apply because EPI lost, and the second eligibility option does not apply because TVA did not voluntarily or unilaterally change its position as to any substantial claim. But even if EPI were eligible for fees, EPI has not—and cannot—demonstrate that it is entitled to attorney's fees due to the lack of any discernible public benefit achieved from this litigation and because TVA had a reasonable basis in law for withholding the information that it did. Finally, even if the Court were to find EPI eligible for and entitled to fees, EPI has not shown that the $150,000 it seeks is reasonable or compensable. EPI's motion should be denied.

# BACKGROUND

This case involves two separate FOIA requests submitted by EPI: FOIA Request 109 sought records relating to law firm McGuireWoods LLC's ("McGuireWoods") legal representation of TVA as well as correspondence between TVA personnel and McGuireWoods attorneys who represent TVA in various legal matters. FOIA Request 208 sought TVA's "in-effect" liability (operations) policy. (Doc. 48 at PageID##932-33; Eller Decl. Doc. 33 ¶¶ 8, 32.)

1

**FOIA Request 109**

TVA FOIA Officer Denise Smith processed FOIA Request 109 and received a total of 369 documents, consisting of emails and attachments to emails, related to that request. (Eller Decl., Doc. 33 ¶ 9.) Ms. Smith determined that some documents, or portions thereof, may contain privileged or confidential commercial or financial information of McGuireWoods, a third-party submitter, that may be exempt under FOIA Exemption 4. (*Id.* ¶ 10.) As required by TVA's FOIA regulations, 18 C.F.R. § 1301.8(d)–(e), Ms. Smith notified McGuireWoods of EPI's request and the documents she had identified as responsive. (*Id.* ¶ 11.) Of the 369 documents, McGuireWoods objected to the disclosure of certain documents in full and others in part on the ground that the documents, or portions thereof, contained privileged or confidential commercial or financial information of McGuireWoods within the scope of Exemption 4. (*Id.* ¶ 12.)

On March 22, 2022, based on what TVA determined were good-faith objections by McGuireWoods and because of Ms. Smith's own determination that certain documents and information were exempt, Ms. Smith responded to FOIA Request 109 with the non-exempt documents and segregable information and informed EPI that documents and information were being withheld under FOIA Exemptions 4, 5 and 6. (*Id.* ¶¶ 13, 14.) EPI appealed and TVA affirmed Ms. Smith's determination. (*Id.* ¶¶ 40-43.) On June 23, 2022, EPI filed its initial complaint challenging TVA's final determination with respect to FOIA Request 109. (Doc. 1.)

On January 13, 2023, before any motion practice, TVA released 166 documents for which McGuireWoods had made the independent decision to withdraw its Exemption 4 objections and for which TVA did not assert (and did not have) any separate objections to disclosure based on a FOIA exemption. (Attach. 1 – Jan. 13, 2023 ltr.; Eller Decl., Doc. 33 ¶ 25; Jaber Decl., Doc. 34 ¶

13.)[1] TVA simultaneously provided EPI with a draft *Vaughn* index to assist with review and to potentially narrow the scope of the dispute. (Attach. 1; Eller Decl., Doc. 33 ¶ 25.)

On April 4, 2023, following EPI's request *that TVA ask McGuireWoods* to review certain documents to determine whether *McGuireWoods'* objections could be withdrawn, TVA released 6 additional documents for which McGuireWoods had made the independent decision to withdraw its Exemption 4 objections and for which TVA did not assert (and did not have) any separate objections to disclosure based on a FOIA exemption. (Attach. 2 – Apr. 4, 2023 ltr.; Eller Decl., Doc. 33 ¶ 27; Jaber Decl., Doc. 34 ¶ 13.) TVA simultaneously provided EPI a revised draft *Vaughn* index to reflect any new disclosures and/or redactions made to documents for which information was reasonably segregable. (Attach. 2; Eller Decl., Doc. 33 ¶ 27.)

On June 9, 2023, TVA disclosed 4 additional documents for which McGuireWoods again had made the independent decision to withdraw its Exemption 4 objections and for which TVA did not assert (and did not have) any separate objections to disclosure based on a FOIA exemption. (Attach. 3 – Jun. 9, 2023 ltr.; Eller Decl., Doc. 33 ¶ 29; Jaber Decl., Doc. 34 ¶ 13.)

On November 23, 2023, TVA disclosed 9 documents for which TVA had determined FOIA Exemption 5 no longer applied with respect to certain information in the documents, which allowed reasonably segregable portions of the documents to be disclosed. (Attach. 4 – Nov. 28. 2023 ltr.; Supp. Jaber Decl., Doc. 46 ¶ 36(i) &(j).) Three of the documents TVA disclosed were drafts of a legal services contract between TVA and McGuireWoods with red-line edits by an attorney in TVA's Office of General Counsel ("OGC"). (Attach. 4.) The remaining 6 documents

---

[1]     Mr. Eller's declaration states that this number was 181. This number included the 25 documents Ms. Smith produced in March 2022 to EPI. (Attach. 1.) This means that 166 new documents were disclosed on January 13, 2023, for which McGuireWoods had withdrawn its objections and for which TVA did not assert (and did not have) any separate objections.

were an email chain between McGuireWoods' attorneys and TVA OGC attorneys concerning the finalization of that same draft contract. (*Id.*; Gillen Decl., Doc. 35 ¶¶ 17-19.) As reflected in TVA's April 2023 letters, TVA determined that the final version of the contract had been produced to EPI before EPI filed this lawsuit in response to a separate FOIA request not at issue in this case, and TVA's initial position was that the deliberative process privilege applied to these draft documents under Exemption 5. (*See* Attach. 2 at p. 2.) Thus, as to the 9 documents released on November 23, 2023, TVA determined that it could withdraw its assertion of Exemption 5. (*See* Attach. 4.)

In sum, after EPI's complaint was filed, TVA released 166 documents because McGuireWoods re-reviewed the documents and made the independent decision to withdraw its Exemption 4 objection to the documents or portions thereof. Because TVA's initial withholding was based entirely on McGuireWoods' assertion that a particular document, or portion(s) thereof, was confidential commercial or financial information within the meaning of Exemption 4, McGuireWoods' independent decision to withdraw its objections allowed TVA to release the documents, or portions thereof. In other words, TVA never asserted its own separate FOIA objection to the disclosure of any of these 166 documents. (Attachs. 1-3.) TVA also released 9 documents on November 23, 2023, for which TVA determined that it could withdraw its assertion of Exemption 5 *(*Attach. 4), and the release of these 9 documents (i.e., 2.5% of the 369 responsive documents) is the only instance where TVA voluntarily or unilaterally changed its position.

### FOIA Request 208

Ms. Smith processed FOIA Request 208 and identified TVA's Excess Liability Insurance Policy No. XL5045111P with Associated Electric & Gas Insurance Services ("AEGIS") as responsive. (Eller Decl., Doc. 33 ¶ 34.) Ms. Smith determined that portions of the policy contained confidential government commercial information exempt under FOIA Exemption 5. (*Id.* ¶ 35.)

She also determined that certain portions of the policy may contain privileged or confidential commercial or financial information of AEGIS, a third-party submitter, that may be exempt under FOIA Exemption 4. (*Id.*) As required by TVA's FOIA regulations, 18 C.F.R. § 1301.8(d)–(e), Ms. Smith notified AEGIS of the request. (*Id.* ¶ 36.) AEGIS responded to TVA that it objected to the disclosure of portions of the policy because it considered certain information competitively sensitive and commercial and financial information of AEGIS that is confidential or privileged within the scope of Exemption 4. (*Id.* ¶ 37.) On May 16, 2022, based on what TVA determined was AEGIS' good-faith objection and because of her own determination that certain information was exempt under FOIA, Ms Smith provided EPI with a redacted copy of the AEGIS Policy and informed EPI that information redacted from the policy was being withheld under FOIA Exemptions 4 and 5. (*Id.* ¶¶ 38-39.)

EPI appealed and TVA affirmed Ms. Smith's determination. (*Id.* ¶¶ 40-43.) On September 8, 2022, EPI amended its complaint to add a claim challenging TVA's final determination with respect to FOIA Request 208. (Doc. 19.) Neither AEGIS nor TVA changed or withdrew any assertion that Exemptions 4 and 5 applied to information redacted from AEGIS Policy.

**TVA Prevailed on Summary Judgment as to Both EPI's FOIA Requests**

EPI filed a summary judgment motion as to both FOIA Requests. (Doc. 24.) TVA filed a response and its own cross summary judgment motion. (Doc. 30.) TVA supported its motion with a *Vaughn* index and declarations, including one from Makram Jaber on behalf of McGuireWoods and from Martin Gaffney on behalf of AEGIS. (Docs. 30-37.) On October 6, 2023, the Court ordered TVA to provide additional explanations and context regarding FOIA Request 109 withholdings through either a supplemental *Vaughn* index and/or declarations. (Doc. 44 at PageID#814.) On November 28, 2023, TVA filed a supplemental brief, a supplemental *Vaughn*

5

Case 3:22-cv-00220-TAV-DCP    Document 59    Filed 12/10/24    Page 12 of 34
PageID #: 1054

index, and a supplemental declaration on behalf of McGuireWoods. (Docs. 45; 45-1, 46.) The Court did not order any supplementation related to FOIA Request 208. (Doc. 44 at PageID#805 n.1.)

On October 21, 2024, the Court held that TVA had demonstrated the applicability of Exemptions 4 and 6 to documents and information withheld in response to FOIA Request 109, had shown that the disclosure of the exempt documents and information risks reasonably foreseeable harm, and that TVA had disclosed all reasonably segregable portions of the documents. (Doc. 48 at PageID##936-60.) The Court also found that because TVA's withholdings pursuant to Exemption 5 for FOIA Request 109 were concurrent with its withholdings pursuant to Exemption 4, the Court need not reach the issue of Exemption 5's applicability. (*Id.* at PageID#957.)

As to the AEGIS Policy produced in response to FOIA Request 208, the Court held that TVA had demonstrated the applicability of Exemption 4 to the information redacted from the Policy, had shown that the disclosure of the Policy beyond the present redactions risks reasonably foreseeable harm, and that TVA had disclosed all reasonably segregable portions of the Policy. (*Id.* at PageID##960-63, 965.) The Court also found that because any redactions in the Policy for Exemption 5 were concurrent with redactions made for Exemption 4, the Court need not reach the issue of Exemption 5's applicability. (*Id.* at PageID##964-65.)

**LEGAL STANDARD**

Under FOIA, a court "*may* assess . . . reasonable attorney's fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (emphasis added). The decision to award attorney's fees and costs is entirely discretionary, *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018) (citing 5 U.S.C. § 552(a)(4)(E)), and courts apply a two-part test in determining whether to award fees and costs, *GMRI, Inc. v.*

*E.E.O.C.*, 149 F.3d 449, 451 (6th Cir. 1998). First, the court must "decide whether the plaintiff 'substantially prevailed' and is thus *eligible* for such an award." *Id.* A FOIA plaintiff has substantially prevailed and, thus, is eligible for an award of fees and costs if relief has been obtained "through either [] a judicial order, or an enforceable written agreement or consent decree; or a voluntary or unilateral change in position by the agency, if the [plaintiff's] claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II).

A determination of eligibility does not automatically result in fees. *See Long v. IRS*, 932 F.2d 1309, 1313-14 (9th Cir. 1991) (per curium). Only if the Court finds the plaintiff eligible for attorney's fees, does the court then "proceed[] to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees[,]" *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011) (emphasis in original), including whether the public derived a benefit from the litigation and the reasonableness of the agency's withholding of the requested documents. *GMRI*, 149 F.3d at 452. No single factor is dispositive, and the weighing of these factors is committed to the sound discretion of the district court. *Id.* If a plaintiff "establish[es] both eligibility and entitlement, the plaintiff must then show the reasonableness of the fee request." *Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381, 386 (D.D.C. 2018).

## ARGUMENT

The Court should deny EPI's motion because EPI has failed to show eligibility for *and* entitlement to an award of fees and costs. The first eligibility factor does not apply because the Court entered judgment for TVA as to EPI's claims with regard to both FOIA Requests (Doc. 48), and EPI does not claim otherwise. Rather, EPI rests its eligibility claim solely on the spurious argument that TVA voluntarily and unilaterally changed its position when it released documents, or portions thereof, initially withheld but later released in response to FOIA Request 109. EPI is

wrong. For 166 of the 175 documents released after EPI filed its complaint, TVA did not *voluntarily or unilaterally* change its position; instead, these documents were released because McGuireWoods made the independent decision to withdraw its objection that Exemption 4 applied. Indeed, only 9 documents were disclosed because TVA itself withdrew a claimed FOIA exemption. EPI's brief contains no substantive argument related to these documents so any claim that EPI is entitled to fees for them is waived. Moreover, EPI's claims with regard to the withheld documents was insubstantial. As to entitlement, EPI has not demonstrated any public benefit derived from this case, nor can it show that any position TVA took throughout this litigation was unreasonable.

As to FOIA Request 208, EPI makes no argument (because they cannot) that TVA voluntarily and unilaterally changed position with regard to the redactions in the AEGIS Policy and no argument that it is entitled to fees for this request. Accordingly, EPI is not due any fees or costs for work related to FOIA Request 208.[2]

Finally, even if EPI were eligible for and entitled to fees (it is not), the basis for EPI's fee calculation is not reasonable because EPI's claimed billing rates are excessive, fees for work done with regard to FOIA Request 208 and clerical and administrative work are non-compensable, and because EPI's vague time entries do not support the claimed fees.

---

[2]     EPI argues that its claims "arose out of the same nucleus of facts" and EPI's unsuccessful claims were "factually and legally interwoven" with EPI's successful claims. (Doc. 53 at PageID#996.) Not so. FOIA Requests 109 and 208 involve completely differently information, documents, and submitters. Further, the case EPI cites for this proposition, *Dowling v. Litton Loan Servicing LP*, 320 F. App'x. 442 (6th Cir. 2009), is a Fair Debt Collection Practices case, and is not relevant or helpful to the Court's analysis of this FOIA case.

## I.     EPI is Neither Eligible Nor Entitled to Fees and Costs for FOIA Request 109

TVA first addresses eligibility and entitlement for the 166 documents released because McGuireWoods withdrew its Exemption 4 objections and, second, addresses eligibility and entitlement for the 9 documents released because TVA determined Exemption 5 no longer applied.

### A.     EPI is not eligible for fees because TVA did not change its position as to documents for which McGuireWoods withdrew its Exemption 4 objections.

TVA did not voluntarily or unilaterally change its position as to the 166 documents disclosed to EPI for which McGuireWoods, the submitter, made the independent decision to withdraw its Exemption 4 objections. On the contrary, TVA maintained the same position on Exemption 4 withholdings with regard to McGuireWoods' information throughout this litigation, and the Court ultimately affirmed that TVA's withholding of documents and information was proper under Exemption 4. (Doc. 48 at PageID#960.)

When an agency "follow[s] its own normal procedures in producing the documents," courts have found that the agency did not voluntarily or unilaterally change its position. *Valencia v. U.S. Citizenship & Immigr. Serv.,* No. 12-102, 2012 WL 3834938, at *2 (D. Utah Sept. 4, 2012). TVA followed its own normal regulatory procedures with regard to the documents and information for which McGuireWoods withdrew its objections. *See* 18 C.F.R. 1301.8. TVA's FOIA Officer reviewed the responsive records to determine whether documents may contain information within the scope of Exemption 4 and, finding that the documents could contain such information, she provided McGuireWoods with notice and copies of those records. (Eller Decl., Doc. 33 ¶¶ 10-11.) She then considered the submitter's written objections to disclosure based on Exemption 4 before making her initial determination, which was affirmed by TVA and ultimately, this Court. (*Id.* ¶¶ 12-13, 16; Doc. 48 at PageID#960.) Likewise, when the submitter advised TVA that it was withdrawing its Exemption 4 objections, TVA promptly produced the documents and information.

(Eller Decl., Doc. 33 ¶¶ 25, 27, 29; Jaber Decl., Doc. 34 ¶ 13.) The only change in position with regard to these 166 documents was on the part of the submitter—McGuireWoods.

In 2001, the Supreme Court rejected the "catalyst theory" as insufficient to confer prevailing party status in fee shifting cases. *Buckhannon Bd. & Care Home, Inc. W.Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 600 (2001). And courts applied the *Buckhannon* rule in FOIA cases. *See, e.g.*, *Brayton*, 641 F.3d at 525; *Roberts v. Principi*, No. 2:02-CV-166, 2006 WL 1696726, at *11 (E.D. Tenn. June 16, 2006), *aff'd*, 283 F. App'x 325 (6th Cir. 2008). Congress "abrogated the rule of *Buckhannon* in the FOIA context" by passing the OPEN Government Act of 2007, which "revived the possibility of FOIA fee awards in the absence of a court decree" by redefining "substantially prevailing" to include a FOIA complainant who obtains relief through "'a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.'" *Brayton*, 641 F.3d at 525 (quoting 5 U.S.C. § 552(a)(4)(E)(ii)). As amended, this second prong of the statute codified the catalyst theory. *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020). The purpose of this amendment was to prevent federal agencies from "stonewall[ing] valid FOIA claims but prevent[ing] an award of attorney fees by disclosing the documents at the last moment before judgment" because "[a]n agency could simply refuse a FOIA request, wait for a lawsuit to be filed, drag its heels through the litigation process, and then release the requested documents at the last moment if the plaintiff appeared likely to win a judgment"). *Brayton*, 641 F.3d at 525; *see also Warren v. Colvin*, 744 F.3d 841, 845 (2d Cir. 2014) (same).

The litigation tactics that motivated the 2007 amendment are not remotely present in this case. Here, TVA responded to FOIA Request 109 by withholding documents as to which McGuireWoods asserted the applicability of Exemption 4. The original decision by TVA to withhold was based on McGuireWoods' good faith assertion, and when McGuireWoods later

made the independent decision to release 166 documents, or portions thereof, TVA accepted that decision and released documents or portions thereof that had originally been withheld. Thus, TVA's mere "pass through" of McGuireWoods' independent decision to release these documents does not entitle EPI to an award of fees or costs under a catalyst theory.[3]

FOIA does not define "voluntary or unilateral change in position by the agency" with respect to "substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "So, as usual," the Court must ask what those terms "ordinary, contemporary, common meaning was when Congress enacted" the FOIA amendments in 2007. *Food Mktg. Inst. v. Argus Leader Media* ("*Argus Leader*"), 588 U.S. 427, 433–34 (2019) (internal quotation marks omitted); *see also S. Env't L. Ctr. v. TVA*, 659 F. Supp. 3d 902, 915 (E.D. Tenn. 2023) (same). Just like they did in 2007, the term "voluntary" means "not impelled by outside influence" (i.e., a voluntary statement), and the term "unilateral" means "One-sided; relating to only one of two or more persons or things" (i.e., unilateral mistake). Black's Law Dictionary (12th ed. 2024). *See Argus Leader*, 588 U.S. at 434 (looking to dictionary definitions of FOIA terms). Thus, a third party's change of position in no way qualifies as a "voluntary or unilateral change in position" by the agency under § 552(a)(4)(E)(ii)(II) where the third party is outside the agency's control. And EPI has cited no case stating otherwise.

---

[3]     To the extent EPI argues that the Court's order directing TVA to file a supplemental *Vaughn* index and/or declarations make EPI eligible for fees, that argument is without merit. A court order to aid a determination of whether FOIA exemptions are properly asserted does not give rise to a finding of eligibility for attorney's fees. *See Mich. Immigrant Rts. Ctr.*, No. 16-14192, 2021 WL 855468, at *4 n.4 (E.D. Mich. Mar. 8, 2021) ("Plaintiffs cannot be found to have substantially prevailed based on orders requiring Defendants to produce *Vaughn* indices . . . ."); *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203-204 (D. D.C. 2016) (court order denying in part the government's summary judgment motion on the grounds that claimed exemptions were insufficiently explained and permitting a supplemental *Vaughn* index or declaration does not give rise to eligibility for attorney's fees); *Nw. Coalition for Alt. to Pesticides v. EPA*, 275 F. App'x 10 (D. D.C. 2008) (plaintiff did not substantially prevail when district court ordered agency to provide explanation regarding third-party redactions).

*Tchefuncta Club Estate v. U.S. Army Corps of Eng'r*, No. 10-1637, 2011 WL 2037667(E.D. La. May 24, 2011), is instructive. There, the agency withheld documents based on a third party's claim that the requested records contained proprietary information. While the suit was pending, the third-party publicly released the requested information as part of a separate process, thus waiving any proprietary claims, and the agency released the requested records. *Id.* The court held that where, as here, an intervening event outside the agency's control results in the release of records, there is no change in agency position under the statute. *Id.* at *2. *See also Weisner v. Animal & Plant Health Inspection Serv.*, No. 5:10-CV-00568, 2012 WL 2525592, at *2 (E.D.N.C. June 29, 2012) (no eligibility where "the records were not released as a result of the instant action but were identified and withheld pursuant to an applicable exemption until such time as the exemption ceased to apply"). Here, McGuireWoods, a third-party submitter outside of TVA's control, changed its position that certain documents and/or information was exempt under Exemption 4. Because something other than a change in TVA's position caused the release of the 166 documents, EPI is not eligible for fees.

**B.**   **EPI is not entitled to fees for the release of documents for which McGuireWoods withdrew its Exemption 4 objections.[4]**

**1.**   **EPI has not shown public benefit from this litigation**

---

[4]      The term "not insubstantial," which was added as part of the FOIA amendments in the OPEN Government Act of 2007, is not defined in the statute. *See* Pub. L. No. 110–175, 121 Stat. 2524 (codified at 5 U.S.C. § 552 (Supp. III 2009)) ["2007 Act"]. The House-passed version of these FOIA amendments did not use this term and, instead, provided that a claimant qualified for attorneys' fees upon a "voluntary or unilateral change in position by the opposing party, in a case in which the complainant's claim or defense was not frivolous." H.R.Rep. No. 110–45, at 15 (2007) (Report by House Committee on Oversight and Government Reform). The Senate-passed version of the bill, which was ultimately enacted as the 2007 Act, adopted the current language, 153 CONG. REC. S15702 (2007), which the lead sponsor of the legislation, Senator Patrick Leahy, explained "would not allow the requester to recover attorneys' fees if the requester's claim is wholly insubstantial," *Id.* at S15704 (statement of Sen. Leahy). Inquiry as to whether the claim is

"[T]he public benefit criterion speaks for an award (of attorneys' fees) where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979) (internal quotation marks and citation omitted). The mere release of information pursuant to a court order is insufficient for this factor to weigh in favor of a fee award. *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). Therefore, in considering the public benefit, courts must evaluate the specific information ordered released, *Cotton*, 63 F.3d at 1120, and whether the litigation advanced the public interest. *Chesapeake Bay Found. v. Dep't of Agric*, 108 F.3d 375, 377 (D.C. Cir. 1997). "Minimal, incidental, and speculative benefit will not suffice." *Aviation Data Serv. v. FAA*, 687 F.2d 1319, 1323 (10th Cir. 1982).

EPI relies for its public benefit argument upon the existence of articles published in 2021 about TVA's past membership in the Utility Air Regulatory Group ("UARG"), presumably using information from a previous FOIA request. (Doc. 53 at PageID#989.) Each of these articles were published before FOIA Request 109 was even submitted to TVA. EPI then equates these articles about TVA and UARG with information obtained from FOIA Request 109 and claims, without explaining, that the records requested in FOIA Request 109 "have similar potential public benefits." (Doc. 53 at PageID#989.)[5] Assuming *arguendo* that information about TVA and UARG is relevant to this litigation and/or of public benefit, EPI fails to show how any particular piece of information disclosed in response to FOIA Request 109 adds or may add to the public benefit.

"not insubstantial" is therefore "properly considered under the entitlement prong of the fee analysis, not the eligibility prong." *Jud. Watch, Inc. v. U.S. Dep't of Just.,* 878 F. Supp. 2d 225, 233 (D.D.C.2012) (citing *Brayton*, 641 F.3d at 526).

[5]      EPI includes FOIA Request 208 in this statement but includes no explanation for how any public benefit was derived from a request for which EPI received no information apart from what TVA initially disclosed. Because EPI has failed to argue, let alone demonstrate, eligibility for fees for FOIA Request 208, the Court need not reach the entitlement factors as to FOIA Request 208.

EPI also claims that emails released in response to FOIA Request 109 "reveal[], for the first time, the extent of TVA's coordination with [Power Generators Air Coalition ("PGen")], including a current TVA staff member who was a founding member." (*Id.* at PageID##989-90.) But this information was in the public domain prior to EPI's FOIA request. PGen's founding documents, which list the founding members, including the referenced TVA employee, are public documents filed with the Virgina Secretary of State and accessible to anyone. EPI also claims that released emails show that "PGen has submitted comments on emissions rules contemplated by the [EPA] . . . TVA's association with PGen is therefore notable to the public." But TVA is listed as a member of PGen on its public website, *see* https://pgen.org/, and comments submitted by PGen are publicly available. (Attach. 2 at p. 2.)[6] Accordingly, this merely confirms facts as to which there has never been any real issue: that TVA is a member of PGen, and that PGen submits comments on EPA rulemaking. Both of these facts were public knowledge prior to any disclosure as part of this lawsuit. Simply put, EPI cannot claim to have obtained a benefit to the public as a result of this case based on articles concerning documents EPI already obtained through prior FOIA requests or information which was already in the public domain. *See Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092, 1094-95 (D.C. Cir. 1992) (upholding denial of fees based on District Court's determination that "the information obtained was previously available publicly").

Finally, EPI asserts that TVA disregarded obligations under FOIA and that "the public interest is served when . . . a court refuses to condone the agency's behavior by ignoring its unreasonable conduct." (Doc. 53 at PageID#988.) No such finding or determination was made by

---

[6]    For the one article EPI references that was published after FOIA Request 109 was submitted, EPI fails to identify or explain how any information in that article was derived from information disclosed as part of this litigation.

this Court, nor does EPI identify any information that could support such an assertion. This is wholly insufficient to meet EPI's burden to satisfy the public benefit factor.

### 2. TVA's withholding had a reasonable basis in law[7]

Under the fourth factor, the question for a district court is not whether the agency's legal and factual positions were correct. Rather, the question is whether the agency's positions were reasonable." *Morley*, 894 F.3d at 393. This factor evaluates "whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Dorsen v. SEC*, 15 F. Supp. 3d 112, 123 (D.D.C. 2015) (citation omitted). It "asks not whether 'the agency acted correctly' but 'whether the agency has shown that it had any colorable or reasonable basis for not disclosing' the relevant material.'" *Assassination Archives & Rsch. Ctr. v. CIA*, No. 1:17-cv-00160 (TNM), 2019 WL 1491982, at *4 (D. D.C. Apr. 4, 2019). "The government's decision to withhold documents does not have to 'be 'completely' or 'entirely' reasonable, . . . instead, courts "require only that 'the agency's decision . . . be based upon legal authority that reasonably supports its position that the documents should be withheld.'" *Schoenberg v. FBI*, No. LA CV18-01738 JAK (AGRx), 2020 WL 4937813, at *15 (C.D. Cal. May, 8, 2020). "[T]he rule applied in [the D.C. Circuit] avoids penalizing agencies that 'choose to relent for the sake of transparency and release requested documents without exposing themselves to monetary penalties: the fact that their initial nondisclosure decision rested on a solid legal basis creates a safe harbor against the assessment of attorney fees.' Otherwise, 'agencies with legal authority to withhold requested documents would

---

[7] Consideration of the second and third entitlement factors do not weigh strongly in favor of fees or are neutral. These factors are 'often combined . . . into a single factor assessing whether a plaintiff 'ha[d] sufficient private incentive to seek disclosure' of the documents without expecting to be compensated." *Edelman v. SEC*, 356 F. Supp. 3d 97, 106 (D.D.C. 2019) (citation omitted).

have no such safe harbor' and 'might hesitate to release the documents, since doing so would risk creating a 'substantially prevail[ing]' plaintiff who might be entitled to fees.'" *Dorsen*, 15 F. Supp. 3d at124-25 (quoting *Brayton*, 641 F.3d at 524).

As an initial matter, EPI's assertion that TVA "engaged in obdurate behavior without a reasonable basis in law when it applied unsupported FOIA exemptions, wrongfully withheld material in full, and removed redactions without informing the Court or [EPI] on its final *Vaughn* index" (Doc. 53 at PageID#991), is incorrect, based on no determination or finding by the Court, and, frankly, is absurd. Most importantly, the initial determinations by TVA's FOIA Officer, that Exemptions 4 and 6 applied to information in response to FOIA Request 109, was confirmed by the Court (Doc. 48 at PageID##950, 956), and therefore EPI's claim that TVA applied incorrect FOIA exemptions is simply wrong. Further, throughout this litigation, and as reflected in the Eller and Jaber declarations and in the parties' correspondence (Attachs. 1-4), counsel for TVA and EPI engaged in an ongoing dialogue about the documents, issues, and draft *Vaughn* indices, including additional details about the documents in a good-faith attempt to put into context the large number of redundant and similar documents (a number of duplicative emails and documents) which ultimately made up a complex *Vaughn* index and declarations. (Doc. 33-2 at PageID##438-40.)**8**

---

8       EPI's repeated assertions that TVA "quietly dropped" exemption claims (Doc. 53 at PageID#987) also ignores the iterative nature of ***draft Vaughn*** indices as TVA disclosed additional documents after McGuireWoods withdrew objections as well as the declarations that explain and provide context to the documents and information at issue. As the Court noted, many of the documents "rais[e] similar and coextensive arguments as to the confidentiality of each document," as the question of whether a document is "privileged" or "confidential" comes into play in FOIA Exemption 4 as well as FOIA Exemption 5 particularly when the business and financial information at issue is submitted by a law firm which raises both confidentiality and privilege concerns. (Doc. 48 at PageID#957; *see also* (Doc. 45 at PageID##820-24 (discussing case law on Exemption 4 and the business of providing legal services).)

EPI's attempt to characterize this as TVA "wrongfully" withholding material or removing redactions without informing the Court or EPI is wholly unsupported and should be rejected.

TVA's position as to the 166 documents for which McGuireWoods withdrew its Exemption 4 objections also had a reasonable basis in law. As explained in the Eller and Jaber declarations, TVA's FOIA Officer followed TVA's regulations for engaging the submitter when documents responsive to FOIA Request 109 appeared to contain communications between McGuireWoods attorneys and clients at TVA, the Climate Legal Group ("CLG") and PGen. The majority of these communications were marked "PRIVILEGED" "CONFIDENTIAL" or "ATTORNEY CLIENT PRIVILEGE." Such attorney-client communications are generally privileged or confidential and protected from disclosure by Exemptions 4 or 5. (Doc. 45 at PageID##820-24.) This, coupled with confidentiality agreements in the CLG's bylaws (Jaber Decl., Doc. 34 ¶ 18) and PGen's Structures and Procedures document (*id.* ¶ 20), as well as McGuireWoods' Exemption 4 objection, supports the FOIA Officer's determination that the documents and information were exempt. Finally, and most critically, the Court found that TVA's position as to Exemption 4 with regard to McGuireWoods documents was correct. For this entitlement factor, "[i]f the Government's position is correct as a matter of law, that will be dispositive." *Davy v. CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008).

### C.     EPI is not entitled to fees and costs for the 9 documents for which TVA determined that Exemption 5 did not apply.

TVA's release of 9 documents—2.5% of the documents responsive to FOIA Request 109— does not confer "substantially prevailing" status on EPI. Although "[t]here is no bright-line rule defining just what it means to 'substantially prevail' in a FOIA case under the "catalyst theory," *Zynovieva v. U.S. Dep't of State*, No. CV 19-3445 (RDM), 2023 WL 2755599, at *2–3 (D.D.C. Mar. 31, 2023), *aff'd sub nom. Zynovieva v. U.S. Dep't of State*, No. 23-5120, 2024 WL

1946592 (D.C. Cir. Apr. 30, 2024), a few key points are well-settled in the case law. EPI has the burden to show that its lawsuit "substantially caused" the agency to release the documents at issue; correlation is not enough. *Grand Canyon*, 947 F.3d at 96, *aff'g*, *Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381, 388 (D.D.C. 2018) ("causation requires more than correlation."). And "[a] FOIA case must be viewed in its totality in determining whether a plaintiff has 'substantially prevailed.'" *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012); *see also Inst. for Energy Rsch. v. FERC*, No. CV 22-3420 (BAH), 2024 WL 3327369, at *4 (D.D.C. May 22, 2024) (same).

Further, "[t]he word 'substantially' means 'in a sound or solid manner' or 'in all essential characters or features." *Mobley*, 908 F.Supp.2d at 48. (quoting 17 OXFORD ENGLISH DICTIONARY 68 (2d ed. 1989) (alterations omitted)). But where, as here, a plaintiff obtained "only one small piece of the relief it seeks in its complaint . . . calling such prevalence 'substantial' is clearly incorrect." *Id.* Instead, "a FOIA plaintiff must obtain the essential elements of the relief that it seeks in its complaint in order to substantially prevail." *Id.* This did not happen here, so EPI did not substantially prevail. Indeed, when "viewing the case in its totality," the release of 9 documents is "relatively *insignificant*." *Malone v. United States Pat. & Trademark Off.*, No. 1:23-CV-1050, 2024 WL 3030650, at *4 (E.D. Va. June 17, 2024) (emphasis added) (a release of 14 pages out of 1,505 pages is relatively insignificant).

The primary catalyst for disclosure of these 9 documents is attributable to TVA's determination that the final copy of the legal services contract had been disclosed to EPI through a previous FOIA request and TVA's determination that it would not pursue its claim for attorney-client privilege with regard to red-line edits in the draft documents or communications between McGuireWoods and TVA attorneys regarding the finalization of the contract. (Attachs. 2 & 4.) TVA's withdrawal of its Exemption 5 assertion (which covers drafts and privileged information)

with regard to these 9 documents was distinct from TVA's other assertions of Exemption 5 as this small category of documents dealt solely with this legal services contract, not privileged or confidential information relevant to the CLG or PGen, and EPI makes no argument that any public benefit whatsoever was derived from any information in these 9 documents. Nor can it. EPI had already been provided the final contract through a previous FOIA request (*see* Attach. 2), and the public benefit of internal discussions about language in this draft contract is minimal to none. "[R]eleased documents have an insufficient public benefit when they pertain to such highly particularized interactions with an agency that non-participants would have only a limited interest in the records as a means of learning what the agency was doing." *Dorsen*, F. Supp. 3d at 121.

TVA's position as to the 9 documents for which TVA withdrew its Exemption 5 objections also had a reasonable basis in law. As discussed above, the question is not "whether 'the agency acted correctly' but 'whether the agency has shown that it had any colorable or reasonable basis for not disclosing' the relevant material.'" *Assassination Archives*, 2019 WL 1491982, at *4; *see also United Am. Fin. Inc. v. Potter*, 770 F. Supp. 2d 252, 257 (D. D.C. 2011) (same). In other words, "[t]he government's decision to withhold documents does not have to 'be 'completely' or 'entirely' reasonable, . . . instead, courts "require only that 'the agency's decision . . . be based upon legal authority that reasonably supports its position that the documents should be withheld.'" *Schoenberg*, 2020 WL 4937813, at *15.

TVA initially withheld these documents in full because it was TVA's position that communications in them were protected by the attorney-client privilege, including confidential communications between McGuireWoods and TVA attorneys. (Gillen Decl., Doc. 35 ¶ 19.) This position has a reasonable basis in law because documents which reveal the nature of legal services provided, such as documents which reveal work and research into a particular area, typically fall

within the attorney client privilege. It is well-settled that the attorney-client privilege applies to communications between an attorney and entities like corporations and government agencies and their employees. *See Upjohn v. United States*, 449 U.S. 383 at 390 (1981); *Pub. Emps. for Env't Resps. v. EPA*, 211 F. Supp. 3d 227, 231 (D.D.C. 2016) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("[T]he 'client' is the agency and its officials.").) Thus, TVA's position that these attorney-client communications were protected by Exemption 5 was reasonable. *See, e.g., Dorsen*, 15 F. Supp. 3d at 124 (agency had a colorable basis in law in its belief that Exemption 5 applied since the requested records contained attorney-client communications). Moreover, there is clear legal authority which holds that the deliberative process exemption protects drafts, and therefore TVA's position that the draft contracts were protected under Exemption 5 was also reasonable. (Attach. 2 (discussing *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,* 141 S. Ct. 777 (2021) (FOIA's deliberative process exemption protects drafts))

Finally, the Court may and should conclude that, even if some of the entitlement criteria favor EPI with regard to these 9 documents, that is not sufficient to render it entitled to fees. To the contrary, the Court retains discretion to deny fees so long as any of the four criteria favor a defendant. *See Morley*, 894 F.3d at 396. Put simply, deeming a plaintiff entitled to attorney's fees in a FOIA action is not an arithmetic exercise of adding up the number of entitlement criteria favoring each side and then ruling accordingly. *See id*. at 391. Here, EPI has not shown the kind of outcome that courts have deemed sufficient to entitle a FOIA plaintiff to fees.

## II.     EPI's Fee Demand is Unreasonable[9]

EPI requests roughly $150,000 in attorney's fees and costs. Should this Court determine

---

[9]     EPI has failed to submit a timely and sufficient bill of costs as required by Local Rule 54.1. EPI has therefore waived any argument that it is entitled to costs and this request should be denied.

that EPI is entitled to and eligible for any award of attorney fees, EPI's request must be substantially reduced. The hourly rates EPI claims for its attorneys are well over the customary hourly rates charged by attorneys practicing in the Eastern District of Tennessee. EPI is also not entitled to receive any fees for legal services rendered with respect to its counsel's work on FOIA Request 208. Finally, EPI's counsel's billing records contain multiple entries that should be excluded because they reflect non-compensable work, are for clerical or administrative tasks, or are so vague as to what particular work was being performed so as to be non-reimbursable.

A.     **EPI is seeking reimbursement at inflated billing rates**

Assuming without conceding the reasonableness of the attorney hours expended by EPI's counsel, EPI claims entitlement to hourly rates of $656 for Mr. Irwin, between $563 and $612 for Ms. Kole, and between $521 and $584 for Ms. Robbins. These hourly rates are not reasonable because they are inconsistent with the prevailing rate for similarly experienced attorneys practicing in the Eastern District of Tennessee.

A reasonable hourly fee in a FOIA case is determined "according to the prevailing market rates in the relevant community[.]" *Elec. Priv. Info. Ctr. v. F.B.I.*, 72 F. Supp. 3d 338, 349 (D.D.C. 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). EPI claims entitlement to an hourly rate for each of its attorneys based on the Washington, D.C. legal market; however, EPI filed this case in the Eastern District of Tennessee where the prevailing rates are much lower. *See AutoAlliance Intern., Inc. v. U.S. Customs Service*, 300 F. Supp. 2d 509, 515 (E.D. Mich. 2004) ("[W]hile [the plaintiff] has asserted that its billing rates are reasonable for attorneys in Washington D.C., it has not shown that the rates are reasonable in the Eastern District of Michigan."). In the Sixth Circuit, "courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command *within*

*the venue of the court of record.*" *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (emphasis

added). "In determining the appropriate hourly rate to apply, the district court must consider the

prevailing market rate in the relevant community, which for fee purposes, is the legal community

within the *Court's territorial jurisdiction or venue.*" *Systematic Power Sols., LLC v. Fullriver*

*Battery Mfr. Co.*, LTD., No. 3:19-CV-277-KAC-DCP, 2023 WL 6518861, at \*24 (E.D. Tenn.

Aug. 18, 2023), report and recommendation adopted, No. 3:19-CV-277-KAC-DCP, 2023 WL

5938187 (E.D. Tenn. Sept. 12, 2023) (citations omitted) (emphasis added).

  *Systematic Power* is directly pertinent here because Magistrate Judge Poplin carefully

examined a collection of recent cases and concluded that the prevailing rates in the *territorial*

*jurisdiction* of East Tennessee were within the range of about \$230/hour to \$350/hour. *Id.* at n.17.[10]

Based on the large sample of recent cases in the Eastern District of Tennessee on the issue of

---

[10]   *See Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 4372350, at \*4
(E.D. Tenn. Sept. 21, 2022) (awarding \$325 per hour for an attorney who had 17 years' experience
in a case alleging breach of fiduciary duty, intentional interference with business relations, unfair
competition, misappropriation of trade secrets, and civil conspiracy); *Knisley v. Johnson*, No. 3:21-
cv-420, Doc. 24 (E.D. Tenn. Aug. 10, 2022) (in an unjust enrichment case, awarding an attorney
with 14 years of experience \$300 per hour given that he provided no details regarding his
professional experience); *ERMC v. Millertown*, 3:19-cv-407 & 408, Doc. 75 (E.D. Tenn. Aug. 1,
2022) (explaining that an attorney who practiced for 7 years charged \$228.26, \$260.60, and
\$298.90 from 2019 to 2021 in a breach of contract case); *Almanza v. Barr*, No. 3:15-CV-389-
TAV-HBG, 2019 WL 13159729, at \*9 (E.D. Tenn. Aug. 5, 2019) (recommending an attorney who
graduated law school in 2006 but had been practicing employment law for 8 years be awarded
\$260.00 per hour); *Vaughn v. Parkwest Med. Ctr.*, No. 3:15-CV-228, Doc. 117 (E.D. Tenn. Feb.
15, 2019) (recommending award of \$290 per hour for worked performed 2014 through 2018 for
an attorney who had practiced approximately 12 years), report and recommendation adopted by
2019 WL 1290877, at \*1 (E.D. Tenn. Mar. 20, 2019); *EEOC v. Dolgencorp, LLC*, No. 3:14-CV-
441-TAV-HBG, 2017 WL 9517513, at \*5 (E.D. Tenn. Aug. 7, 2017) (recommending \$350.00 per
hour for a litigator with 24 years of experience and \$250.00 per hour for an attorney who graduated
law school in 2006), report and recommendation adopted by 277 F. Supp. 3d 932 (E.D. Tenn.
2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018); *Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*,
No. 3:11-CV-00531-PLR-HBG, 2016 WL 4691294, at \*1 (E.D. Tenn. Aug. 8, 2016)
(recommending award of \$345.00 per hour in a civil rights case where the attorney had 38 years
of experience), report and recommendation adopted by 2016 WL 4690398 (E.D. Tenn. Sept. 7,
2016).

prevailing hourly rates, a reasonable rate for attorneys with the experience claimed by EPI's attorneys in a straightforward FOIA case such as this one would not exceed $250 to $300/hour.

**B.     Any hours attributable to work on FOIA Request 208 should be deducted.**

"[W]here litigation involves more than one claim, 'these unrelated claims [are to] be treated as if they have been raised in separate lawsuits, and therefore no fee may be awarded for services on unsuccessful claim.'" *Jud. Watch v. U.S. Dep't of Com.*, 470 F.3d 363, 369 (D. C. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)); *see also Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 204-205 (D.D.C. 2008) (in assessing a reasonable number of hours, time incurred for unsuccessful claims or filings should be excluded). Here, no fees should be awarded for EPI's counsel's work with regard to FOIA Request 208. *See, e.g., EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. 2013) (FOIA fee award reduced by 6/7 due to limited success); *Smith v. Ashcroft*, No. 1:02-0043, 2005 WL 1309149, at *3 (W.D. Mich. May 25, 2005) (where claims are unrelated to FOIA claim or unsuccessful on the merits, "the[] court may attempt to identify specific hours that should be eliminated"); *Or. Nat. Desert Ass'n v. Locke*, 2010 WL 56111, at *1 (D. Or. 2010) (because the plaintiff was only successful on one of its four claims, the court awarded it one-fourth of the fees it sought for time spent on its initial claims). EPI has made no attempt to segregate out unsuccessful work it did in attempting to obtain the information withheld with regard to FOIA Request 208. (Kole Aff., Doc. 54 at PageID#1006; Robbins Aff., Doc. 58-1 at PageID#1039; Irwin Aff., Doc. 56 at PageID#1022.) Thus, in the event the Court finds that that EPI is eligible and entitled to attorney's fees, the Court should order EPI to resubmit its invoices to reflect separately the hours and work spent on FOIA Requests 109 and 208.

**C.     Other excludable time**

**1. Time related to document review and nonrelevant entries.** The cost of reviewing

documents produced in FOIA is simply the price of making such a request and is not compensable. *Citizens for the Resp. & Ethics in Wash. V. U.S. DOJ*, No. 10-cv-750, 2011 WL 5830746, at *4 (D.D.C. Nov. 21, 2011); *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 240 (D.D.C. 2011) (reviewing documents is compensable when related to a government claim of exemption withholding). (Kole Aff., Doc. 54 at PageID#1006 (entry for review of TVA document production).) Moreover, permissive joinder was not an issue in this case. (Irwin Aff., Doc. 55 at PageID#1023 ("[c]hecking out local rules permissive joinder").) Whether this is an error or an issue counsel researched and decided not to pursue, it should be excluded.

**2. Vague entries.** This Court should exclude all vague billing entries and/or apply an across-the board reduction due to vague entries. *ACLU of Ariz. v. U.S. Dep't of Homeland Sec.*, No. CV-17-01083-PHX-DJH, 2020 WL 1494328, at *6 (D. Ariz. Mar. 27, 2020) (where "insufficient information is provided for the Court to determine whether a time-entry was necessary for this action, the Court will decline to award the claimed fees"). (Kole Aff., Doc. 54 at PageID#1006 (vague entries for "research" and "research-memo prep" with no additional explanations); Irwin Aff., Doc. 55 at PageID#1025 (entries for "getting ready for lawyer meeting"; "research"; and "new filings review")).

**3. Excessive internal meeting and clerical time.** EPI claims fees for internal communications and clerical work such as downloading documents from Pacer and fixing a Pacer problem. A reduction of these hours is also warranted. *ACLU of Ariz.*, 2020 WL 1494328 (15% reduction). (Irwin Aff., Doc. 56 at PageID##1022, 1024 ("fixed ECF" and "looking up deadlines"); Robbins Aff., Doc. 58-1 at PageID##1039-40 ("copy edits" of briefs).)

## III. The Equities Do Not "Entitle" EPI to Attorney's Fees.

Courts have used a "general reduction method" based on approximations for "substantially

prevailing" that is commensurate with the relative success of the parties when awarding reasonable attorney's fees.[11] Even if EPI were considered as "substantially prevailing," the "general reduction method" should apply here. As discussed above, TVA changed its position with regard to only 9 documents or 2.5% of the 369 documents responsive to FOIA Request 109. Thus, even if EPI's claims concerning these documents were not insubstantial (they are) and if TVA did not have a reasonable basis in law (it did), the general reduction method would entitle EPI to a fee award of 2.5% based on its relative success. *See Brayton*, 641 F.3d at 525-26 ("For purposes of fee entitlement, the rule remains that if the government was correct as a matter of law to refuse a FOIA request, "that will be dispositive.") (internal quotation marks and citation omitted); *see also Walters v. TVA*, 503 F. Supp. 111, 114–15 (E.D. Tenn. 1980) (declining to award fees in FOIA lawsuit where TVA's initial refusal to disclose the requested record was reasonable), *aff'd*, 698 F.2d 1225 (6th Cir. 1982).

## CONCLUSION

For the reasons stated and upon the authorities cited above, EPI's motion for attorney's fees and costs should be denied.

---

[11]    *McDonnell v. U.S.*, 870 F. Supp. 576, 589 (D.N.J. 1994) (describing its approach as "[r]ather than attempting to apply a mechanical formula, this Court has exhaustively reviewed plaintiff's relative success and finds that the accepted lodestar figure should be reduced by sixty percent" because "the amount of relief denied was greater than that awarded"); *see, e.g., Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*, 142 F. Supp. 3d 1, 14 (D.D.C. 2015), dismissed, 2016 WL 4098772 (D.C. Cir. 2016) (reducing fees by 18% due to "deficiencies" in the fee petition that "make the exact calculation of [plaintiff's] time difficult"); *Or. Nat. Desert Ass'n v. Locke*, 2010 WL 56111, at *3 (D. Or. 2010) (awarding 25% of fees given plaintiff's success on only one of its four claims and noting it was "impossible" to determine amount of time spent on successful claim with time sheets provided); *Hull v. U.S. Dep't of Lab.*, No. 04-1264, 2006 WL 8454017, at *6 (D. Colo. May 30, 2006) (reducing number of hours for which plaintiff may recover fees by 60%, because she was only "about [40%] successful").

Respectfully submitted,

*s/Lane E. McCarty*
David D. Ayliffe (TN BPR 024297)
Associate General Counsel
Lane E. McCarty (TN BPR 028340)
OFFICE OF THE GENERAL COUNSEL
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

*Attorneys for Tennessee Valley Authority*

128146864

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*s/Lane E. McCarty*
Attorney for Tennessee Valley Authority
